**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| Oberweis Dairy, Inc., *et al.*,[1] | ) | Case No. 24-05385 |
| | ) | (Joint Administration Requested) |
| Debtors. | ) | |
| | ) | Honorable David D. Cleary |
| | ) | |
| | ) | **Hearing Date: Thursday, April 18, 2024** |
| | ) | **Hearing Time: 9:00 a.m.** |

<u>**NOTICE OF MOTION**</u>

PLEASE TAKE NOTICE that on Thursday, April 18, 2024 at 9:00 a.m. CDT we will appear before the Honorable David D. Cleary, or any judge sitting in that judge's place, **either** in courtroom 644 of the Dirksen Federal Building, 219 S. Dearborn Street, Chicago, Illinois, 60604 **or** electronically as described below, and present the **MOTION FOR ORDER: (I) AUTHORIZING (A) SECURED POST-PETITION FINANCING ON A SUPER PRIORITY BASIS PURSUANT TO 11 U.S.C. § 364, (B) USE OF CASH COLLATERAL PURSUANT TO 11 U.S.C. § 363 AND (C) GRANT OF ADEQUATE PROTECTION PURSUANT TO 11 U.S.C. §§ 363 AND 364; (II) SCHEDULING A FINAL HEARING PURSUANT TO BANKRUPTCY RULE 4001(C); AND (III) SHORTENING NOTICE**, a copy of which is attached.

**Important: Only parties and their counsel may appear for presentment of the motion electronically using Zoom for Government. All others must appear in person.**

**To appear by Zoom using the internet**, go to this link: https:// www.zoomgov.com/. The enter the meeting ID and passcode.

**To appear by Zoom using a telephone**, call Zoom for Government at 1-669-254-5252 or 1-646-828-7666. Then enter the meeting ID and passcode.

**Meeting ID and passcode.** The meeting ID for this hearing is **161 122 6457**, and the passcode is **Cleary644**. The meeting ID and passcode can also be found on the judge's page on the court's web site.

**If you object to this motion** and want it called on the presentment date above, you must file a Notice of Objection no later than two (2) business days before that date. If a Notice of Objection is timely filed, the motion will be called on the presentment date. If no Notice of Objection is timely filed, the court may grant the motion in advance without calling it.

---

[1] The Debtors in these cases, and the last four digits of their respective federal employer identification numbers, are Oberweis Dairy, Inc. ('7516); The Oberweis Group, Inc. ('1378); North Aurora Ice Cream, LLC ('8506); TOGI RE I, LLC ('5952); Third Millennium Real Estate L.L.C. ('1589); and TOGI Brands, LLC ('7072).

By: /s/Adam P. Silverman
Proposed Counsel for the Debtors

HOWARD L. ADELMAN, ESQ. (ARDC# 0015458)
HENRY B. MERENS, ESQ. (ARDC #6181695)
ADAM P. SILVERMAN, ESQ. (ARDC #6256676)
ALEXANDER F. BROUGHAM, ESQ. (ARDC #6301515)
TEVIN D. BOWENS, ESQ. (ARDC #6338559)
ADELMAN & GETTLEMAN, LTD.
53 West Jackson Blvd., Suite 1050
Chicago, Illinois 60604
Tel (312) 435-1050
Fax (312) 435-1059
**Proposed Counsel for the Debtors and Debtors in Possession**

## <u>CERTIFICATE OF SERVICE</u>

The undersigned, an attorney, certifies that he served a copy of this notice and the attached motion on each entity shown on the attached list at the address shown and by the method indicated on the list on April 15, 2024, at or before 11:59 p.m.

By: /s/Henry B. Merens
Henry B. Merens

# SERVICE LIST

**Via CM/ECF**

Patrick Layng
Office of The U.S. Trustee for Region 11

Eric Rein
Counsel for CIBC Bank USA

***Via Overnight Delivery***
*Secured Creditors*

Associated Material Handling Industries Inc.
7954 Solution Center,
Lockbox Number 777954
Chicago, IL 60677

Banc of America Leasing & Capital, LLC
c/o Patricia James
2059 Northlake Parkway, 3North
Tucker, GA 30084

BMO Harris Bank N.A.
320 S Canal Street
Chicago, IL 60606

CIBC Bank USA
c/o Rick Rein
500 West Madison Street
Suite 3700
Chicago, IL 60661

Daimler Truck Financial Services USA LLC
14372 Heritage Pkwy, Suite 400
Fort Worth, TX 76177

DariFill,Inc.
750 Green Crest Drive
Westerville, OH 43081

First Commonwealth Equipment Finance
601 Philadelphia St
Indiana, PA 15701

GM Financial
801 Cherry Street
Ste 3600
Fort Worth, TX 76102

TSC Equipment Finance LLC
PO Box 536705
Pittsburg, PA 15253

Wells Fargo Equipment Finance, Inc.
600 South 4th Street
Minneapolis, MN 55415

1836 Farms
1149 S. Virginia Street
Terrell, TX 75160

Altium Packaging
2500 Windy Ridge Pkwy,
Suite 1400
Atlanta, GA 30339

Associated Electrical Contractors, LLC
319 Lamb Road
Woodstock, IL 60098

Cook County Treasurer
118 N. Clark Street
Unit 112
Chicago, IL 60602

Ecolab
26252 Network Place
Chicago, IL 60673

Greco & Sons
1550 Hecht Road
Bartlett, IL 60103

Hiretech
200 Westlake Park Blvd #501
Houston, TX 77079

International Food Products
29205 Network Place
Chicago, IL 60602

Katies Pizza And Pasta
10650 Gateway Blvd
St Louis, MO 63132

Labrynth Ventures, LLC
Attn: Patrick McCoy
6942 N Keystone
Lincolnwood, IL 60712

Nussbaum Transportation Services
19336 N. 1425 E Road
Hudson, IL 61748

Pearl Valley Eggs
968 S. Kent Rd.
Pearl City, IL 61062

Penske Truck Leasing Co. L.P.
13690 Lakefront Drive
Earth City, MO 63045

Plymouth Foam Inc.
1800 Sunset Drive
Plymouth, WI 53073

QCS Purchasing Cooperative
901 Warrenville Road Unit 405
Lisle, IL 60532

RSM McGladrey
5155 Paysphere Circle
Chicago, IL 60674

Senscient Flavors
2800 W. Higgins Rd.
Hoffman Estates, IL 60169

St Charles Trading
1400 Madeline Lane
Elgin, IL 60124

Stanpac
C/O Adriana Lopez
801 Mangrum Street
Brenham, TX 77833

Tocco-Greco
3850 Mueller Rd.
Suite 200
St Charles, MO 63301

Trico Mechanical Inc.
1980 Rt 30 Suite 11
Sugar Grove, IL 60554

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| Oberweis Dairy, Inc., *et al.*,[1] | ) | Case No. 24-05385 |
| | ) | (Joint Administration Requested) |
| Debtors. | ) | |
| | ) | Honorable David D. Cleary |
| | ) | |
| | ) | **Hearing Date: Thursday, April 18, 2024** |
| | ) | **Hearing Time: 9:00 a.m.** |

**MOTION FOR ORDER (I) AUTHORIZING (A) SECURED POST-PETITION
FINANCING ON A SUPER PRIORITY BASIS PURSUANT TO 11 U.S.C. § 364, (B) USE
OF CASH COLLATERAL PURSUANT TO 11 U.S.C. § 363 AND (C) GRANT OF
ADEQUATE PROTECTION PURSUANT TO 11 U.S.C. §§ 363 AND 364;
(II) SCHEDULING A FINAL HEARING PURSUANT TO BANKRUPTCY RULE
4001(C); AND (III) SHORTENING NOTICE**

NOW COME NOW COME Oberweis Dairy, Inc., an Illinois corporation ("**ODI**"); The

Oberweis Group, Inc., a Delaware corporation ("**TOGI**"); North Aurora Ice Cream, LLC, an

Illinois limited liability company ("**NAIC**"); TOGI RE I, LLC, an Illinois limited liability

company ("**TRI**"); Third Millennium Real Estate L.L.C., an Illinois limited liability company

("**TMRE**"); and TOGI Brands, LLC, an Illinois limited liability company ("**Brands**" and,

together with ODI, TOGI, NAIC, TRI, and TMRE, the "**Debtors**"), by and through their

undersigned proposed counsel and, upon their motion (the "**Motion**") for the entry of orders

pursuant to sections 105, 361, 363, 364, 506 and 507 of title 11 of the United States Bankruptcy

Code, 11 U.S.C. §§ 101 et seq. (the "**Bankruptcy Code**") and Rules 2002, 4001, and 9014 of the

Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"): (1) authorizing the Debtors

to incur post-petition secured financing on an interim and final basis from CIBC Bank USA (the

---

[1] The Debtors in these cases, and the last four digits of their respective federal employer identification numbers, are Oberweis Dairy, Inc. ('7516); The Oberweis Group, Inc. ('1378); North Aurora Ice Cream, LLC ('8506); TOGI RE I, LLC ('5952); Third Millennium Real Estate L.L.C. ('1589); and TOGI Brands, LLC ('7072).

1

"**Lender**"); (2) authorizing the Debtors to use cash collateral; (3) granting adequate protection; (4) setting a final hearing on the Motion to consider the entry of a final order; and (5) shortening notice of the Motion. In support of the Motion, the Debtors respectfully state as follows:

## I.      STATEMENT PERTAINING TO BANKRUPTCY RULE 4001 DISCLOSURES

This Motion seeks authority for the Debtors to obtain post-petition asset-based financing (the "**Post-Petition Financing**") that will have a maximum borrowing limit in the principal amount of $1,000,000, consisting of $400,000 on an interim basis and an additional $600,000 upon the approval of the Post-Petition Financing on a final basis.  The Post-Petition Financing will bear interest at the rate of ten percent (10%) per annum and will be secured by liens on substantially all assets of the Debtors, which liens will be senior to the pre-existing secured debt of the Debtors.   In addition, the Motion seeks authority to allow the Debtors to use cash collateral, and to provide adequate protection to the Lender.

For ease of reference, the specific disclosures required for this Motion by Bankruptcy Rule 4001(c)(1)(B) and Local Bankruptcy Rule 4001 are set forth in Section IV below on pages 11– 14.

## II.      FACTUAL BACKGROUND

### A.      Chapter 11 Case

1.      On April 12, 2024 (the "**Petition Date**"), the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code, commencing the above-captioned chapter 11 case (the "**Chapter 11 Cases**").   Since the Petition Date, the Debtors have remained in possession of their assets and have continued to operate their businesses as debtors in possession in accordance with sections 1107(a) and 1108 of the Bankruptcy Code.

1308424v3

2.     Neither a trustee nor a committee of unsecured creditors has been appointed in the Chapter 11 Cases.

3.     The Court has jurisdiction over this Motion pursuant to 28 U.S.C. § 1334.  Venue lies properly in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.   This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (D), (K), (M) and (O). The Debtors consent to the entry of a final order or judgment by the Court with respect to this Motion in the event it is determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution. The statutory predicates for the relief requested herein are sections 105, 361, 363, 364, 506 and 507 of the Bankruptcy Code.

4.     The nature of the Debtors' businesses, the factual background relating to the commencement of the Chapter 11 Cases, and further factual support for this Motion, are set forth in more detail in the *Declaration of Adam Kraber in Support of Chapter 11 Petitions* and *First-Day Motions* (the "**Kraber Declaration**") filed on April 12, 2024, and incorporated herein by reference.

**B.     Financing Prior to the Chapter 11 Case**

5.     The Debtors have previously entered into two separate lending arrangements with the Lender (the "**CIBC Loans**").  The CIBC Loans are broken down into the "Dairy Loan" and the "TMRE Loan" as those terms are further defined and described below.

6.     **Dairy Loan**

a.     Parties.  Lender; ODI; TOGI, NAIC, TRI and Brands (collectively, the "**Dairy Borrowers**").

b.      Operative Documents.

(i)      Second Amended and Restated Loan and Security Agreement dated as of February 24, 2022 (the "**Dairy LSA**");

(ii)      First Amendment to the Dairy LSA dated as of November 4, 2022;

(iii)      Second Amendment to the Dairy LSA dated as of December 21, 2022;

(iv)      Third Amendment to Second Amended and Restated Loan and Security Agreement dated as of March 20, 2023;

(v)      Revolving Loan Note dated February 21, 2022, **("Dairy Revolving Note**");

(vi)      Term Loan Note dated February 24, 2022 ("**Dairy Term Note**");

(vii)      CapEx Loan Note dated February 24, 2022 ("**Dairy Cap-Ex Note**");

(viii)      2022 DDT Loan Note dated February 24, 2022 ("**Dairy DDT Note**");

(ix)      Master Letter of Credit Agreements dated March 9, 2009 ("**Dairy MLCA**");

(x)      Trademark Security Agreements dated March 9, 2009;

(xi)      Mortgage dated March 29, 2016, as amended, for the property commonly known as 929 Burlington, Western Springs, Illinois ("**Burlington Mortgage**");

(xii)      Mortgage dated March 9, 2002, as amended, for the property commonly known as 951 Ice Cream Drive, North Aurora, Illinois (the "**Ice Cream Drive Mortgage**");

(xiii)      Mortgage dated October 29, 2012, as amended, for the property commonly known as 4811 Dempster, Skokie, Illinois (the "**Dempster Mortgage**");

(xiv)      Mortgage dated March 1, 2022, as amended, for the property commonly known as 860 E. Boughton, Bolingbrook, Illinois (the "**Boughton Mortgage**");

1308424v3

(xv)   Mortgage dated February 24, 2022 and recorded March 1, 2022, as amended, for the property commonly known as 515 Roosevelt, Glen Ellyn (the "**Roosevelt Mortgage**");

(xvi)   Mortgage dated May 2, 2012 and recorded May 10, 2012, as amended, for the property commonly known as 9 E. Dundee Rd., Arlington Heights, Illinois dated May 2, 2012 (the "**Dundee Mortgage**");

(xvii)   Mortgage dated May 2, 2012 and recorded May 10, 2012, as amended, for the property commonly known as 967 Waukegan Rd, Glenview, Illinois dated May 2, 2012 (the "**Waukegan Mortgage**");

(xviii)  Mortgage dated October 27, 2021 and recorded October 27, 2021, as amended, for the property known as 6469 and 6485 N. Lincoln Ave, Lincolnwood, Illinois (the "**Lincoln Mortgages**");

(The Burlington Mortgage, the Ice Cream Drive Mortgage, the Dempster Mortgage, the Boughton Mortgage, the Roosevelt Mortgage, the Dundee Mortgage, the Waukegan Mortgage, and the Lincoln Mortgages shall be referred to collectively, as the "**Dairy Mortgages**.");

(xix)   Forbearance Agreement dated as of August 31, 2023 (the "**Original Forbearance Agreement**");

(xx)   First Amended Forbearance Agreement dated as of October 31, 2023 (the "**First Amended Forbearance Agreement**");

(xxi)   Second Amended Forbearance Agreement dated December 15, 2023 (the "**Second Amended Forbearance Agreement**");

(xxii)   Third Amended Forbearance Agreement dated as of January 12, 2024 but effective as of January 5, 2024 (the "**Third Amended Forbearance Agreement**");

(xxiii)  Fourth Amended Forbearance Agreement dated February 28, 2024 but effective as of February 9, 2024 (the "**Fourth Amended Forbearance Agreement**");

(the Original Forbearance Agreement, the First Amended Forbearance Agreement, the Second Amended Forbearance Agreement, the Third Amended Forbearance Agreement and the Fourth Amended Forbearance Agreement shall be referred to collectively as the "**Forbearance Agreements**");

(xxiv)  Collateral Access Agreement dated as of February 22, 2023;

1308424v3

(xxv)   Letter from the Lender to TOGI, ODI, NAIC, Brands, and TRI dated August 1, 2023;

(xxvi)  UCC-1 Financing Statement filed with the Delaware Secretary of State on March 9, 2009 as Filing No. 0735883, as amended and continued from time to time;

(xxvii) UCC-1 Financing Statement filed with the Illinois Secretary of State on March 10, 2009 as Filing No. 14103597, as amended and continued from time to time;

(xxviii)UCC-1 Financing Statement filed with the Illinois Secretary of State on May 1, 2014 as Filing No. 19234126, as amended and continued from time to time;

(xxix)  UCC-1 Financing Statement filed with the Illinois Secretary of State on July 31, 2020 as Filing No. 26216478, as amended and continued from time to time; and

(xxx)   UCC-1 Financing Statement filed with the Illinois Secretary of State on April 28, 2017 as Filing No. 22332767, as amended and continued from time to time

(collectively, the "**Dairy Loan Documents**")

c.      Loan Status. The outstanding balances under the Dairy Loans as of April 4, 2024 were as follows:

(i)      Dairy Revolving Note - $456,900.00;

(ii)     Dairy Term Note - $7,361,400.00;

(iii)    Dairy Cap-Ex Note - $0.00;

(iv)     Dairy DDT Note - $2,972,800.00; and

(v)      Dairy MLCA – $1,508,000.00

(collectively, the "**Dairy Loan Balances**").

d.      Collateral.

(i)      Blanket lien on all or substantially all of the tangible and intangible personal property assets of the Dairy Borrowers;[2]

---

[2] Under Section 6.1 of the Dairy LSA, each of the Borrowers granted a lien and security interest in favor of the Lender in and to the following described assets:

(ii)     Separate liens on specified trademarks of the Dairy Borrowers; and

(iii)     The Dairy Mortgages.

(collectively, the "**Dairy Collateral**")

7.     **TMRE Loan**

a.     Parties:  Lender; TMRE[3];

b.     Operative Documents:

(i)     Promissory Note dated May 2, 2012, in the original principal amount of $4,184,000 (the "**TMRE Note**");

(ii)     Loan and Security Agreement dated May 2, 2012 (the "**TMRE LSA**");

(iii)     First Amendment to TMRE LSA, dated as of April 28, 2017;

(iv)     Second Amendment to TMRE LSA dated as of October 27, 2021;

(v)     Third Amendment to TMRE LSA, dated as of December 21, 2022;

---

(a)     Accounts, Certificated Securities, Chattel Paper, Commercial Tort Claims which are listed on <u>Schedule 6.9,</u> Deposit Accounts, Documents, Electronic Chattel Paper, Equipment, Farm Products, Financial Assets, Fixtures, General Intangibles, Goods, Health Care Insurance Receivables, Instruments, Intellectual Property, Inventory, Investment Property, Leases, Letter-of-Credit Rights, money (of every jurisdiction whatsoever), Payment Intangibles, Securities, Security Entitlements, Securities Accounts, Supporting Obligations, Tangible Chattel Paper and Uncertificated Securities;

(b)     All Software and computer programs;

(c)     All books and records pertaining to any of the foregoing (regardless of the medium of recording or storage), together with all of the Borrower's right, title, and interest in and to all computer software required to utilize, create, maintain, and process any such records or data on electronic media; and

(d)     All Proceeds (whether Cash Proceeds or Noncash Proceeds), products, offspring, rents, issues, profits and returns of and from any of the foregoing of the foregoing property, including all insurance policies and proceeds of insurance payable by reason of loss or damage to the foregoing property, including unearned premiums, and of eminent domain or condemnation awards.

[3] Presently the guarantors of the TMRE Loan include TOGI, ODI, NAIC, TRI, and Brands.

1308424v3

(vi)     Guaranty dated as of May 2, 2012;

(vii)    Amended and Restated Guaranty dated as of April 28, 2017;

(viii)   Second Amended and Restated Guaranty dated as of October 27, 2021;

(ix)     The Forbearance Agreements; and

(x)      UCC-1 Financing Statement filed with the Illinois Secretary of State on May 3, 2012 as Filing No. 17254804, as amended and continued from time to time

(collectively, the "**TMRE Loan Documents**")

c.       <u>Loan Status</u> – The outstanding balances under the TMRE Loan as of April 4, 2024 was $1,915,066.76 (the "**TMRE Loan Balance**").

d.       <u>Collateral</u>

(i)      Blanket Lien on all or substantially all of the tangible and intangible personal property assets of TMRE;[4] and

(ii)     The Dundee Mortgage; the Lincoln Mortgages, and the Waukegan Mortgage.

---

[4] Under Section 6.1 of the TMRE LSA, TMRE granted a lien and security interest in favor of the Lender in and to the following described assets:

(e)      Accounts, Certificated Securities, Chattel Paper, Commercial Tort Claims which are listed on <u>Schedule 6.9,</u> Deposit Accounts, Documents, Electronic Chattel Paper, Equipment, Farm Products, Financial Assets, Fixtures, General Intangibles, Goods, Health Care Insurance Receivables, Instruments, Intellectual Property, Inventory, Investment Property, Leases, Letter-of-Credit Rights, money (of every jurisdiction whatsoever), Payment Intangibles, Securities, Security Entitlements, Securities Accounts, Supporting Obligations, Tangible Chattel Paper and Uncertificated Securities;

(f)      All Software and computer programs;

(g)      All books and records pertaining to any of the foregoing (regardless of the medium of recording or storage), together with all of the Borrower's right, title, and interest in and to all computer software required to utilize, create, maintain, and process any such records or data on electronic media; and

(h)      All Proceeds (whether Cash Proceeds or Noncash Proceeds), products, offspring, rents, issues, profits and returns of and from any of the foregoing of the foregoing property, including all insurance policies and proceeds of insurance payable by reason of loss or damage to the foregoing property, including unearned premiums, and of eminent domain or condemnation awards.

1308424v3

(collectively, the "**TMRE Collateral**")[5]

**C.     Need for Post-Petition Financing**

8.     The Debtors require immediate access to Post-Petition Financing and use of "cash collateral" as that term is defined under section 363 of the Bankruptcy Code ("**Cash Collateral**") pursuant to section 364 of the Bankruptcy Code and Bankruptcy Rule 4001.  In the absence of this immediate access, the Debtors will be unable to continue operating their business, causing immediate and irreparable loss or damage to the Debtors' estate, to the detriment of the Debtors, their creditors, and other parties in interest.  The Debtors do not have sufficient unrestricted cash and other financing available to operate their businesses, maintain the estates' properties, and administer the Chapter 11 Cases with a view toward a going-concern sale of substantially all of the Debtors' assets, absent the relief provided in this Motion.

9.     The use of Cash Collateral alone would be insufficient to meet the Debtors' post-petition operating needs.  Due to the Debtors' overall precarious financial position, the Debtors are unable to obtain (1) adequate unsecured credit allowable under sections 503(b)(1) or 364(c)(1) of the Bankruptcy Code as an ordinary administrative expense, (2) unsecured credit allowable under section 364(a) or (b) of the Bankruptcy Code, (3) unsecured credit entitled to priority under section 364(c)(1) of the Bankruptcy Code, or (4) adequate secured credit under section 364(c)(2), (c)(3) or (d)(1), from any source other than the Lender that would be sufficient to enable the Debtors to continue their business operations.  The only feasible source of secured credit available to the Debtors is the Post-Petition Financing.  The Debtors require the Post-Petition Financing to satisfy their immediate critical post-petition liquidity needs.

---

[5] The Dairy Loan Documents and the TMRE Loan Documents shall be referred to collectively as the "**Pre-Petition Loan Documents**;" the Dairy Loan Balances and the TMRE Loan Balance shall be referred to collectively as the "**Pre-Petition Obligations**; and the Dairy Collateral and the TMRC Collateral shall be referred to collectively as the "**Pre-Petition Collateral**".

## III.    RELIEF REQUESTED

### A.    Interim Post-Petition Financing

10.    By this Motion, the Debtors request the entry of an interim order substantially in the proposed form filed herewith (the "**Interim Order**")[6], approving the agreement of the Lender to advance post-petition funds to the Debtors in the aggregate amount of up to $400,000 (the "**Interim Post-Petition Financing**"). The Interim Post-Petition Financing would be governed by: (a) that certain *Secured Super-Priority Post-Petition Credit Agreement* between the Debtors and the Lender (the "**DIP Credit Agreement**") attached as Exhibit A to the Interim Order and incorporated herein by reference; and (b) the Interim Order.[7]

11.    The Debtors request authority to use the Interim Post-Petition Financing and/or any Cash Collateral pursuant to the budget (the "**Initial Budget**") attached as Exhibit B to the Interim Order and incorporated herein by reference, from the date of the Interim Order through the date of the entry of a Final Order (as hereafter defined), as more fully set forth in the Interim Order (the "**Interim Period**").

### B.    Post-Petition Financing Beyond the Interim Period

12.    The Debtors further request the entry of a final financing order (the "**Final Order**") in form and substance acceptable to the Debtors and the Lender, authorizing continued Post-Petition Financing through at least the week ending June 30, 2024, to be considered at a final hearing to be scheduled by the Court.

---

[6] Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Interim Order.

[7] In the event of any inconsistency between the DIP Credit Agreement and the Interim Order, the Interim Order will control.

1308424v3

C.    **Budget for Post-Petition Financing**

13.    The Initial Budget sets forth all projected cash receipts, sales, and cash disbursements (by line item) on a weekly basis for the time period from the Petition Date through and including the date this Court enters the Final Order. The Initial Budget may be modified or supplemented from time to time by additional budgets (covering any time period covered by a prior budget or covering additional time periods) to which the Lender and the Debtors agree in their respective discretion (the "**Supplemental Approved Budgets**").

D.    **Negotiations in Good Faith**

14.    Prior to the filing of the Motion, the Lender and the Debtors conducted lengthy, good-faith negotiations with respect to the terms and conditions of the DIP Credit Agreement, the Interim Order, and the Initial Budget.

E.    **Final Hearing**

15.    The Debtors further request that the Court set a final hearing on the Motion pursuant to Rule 4001(c)(2) of the Bankruptcy Rules, to consider the entry of the Final Order.

## IV.    **FED. R. BANKR. PROC. 4001(c)(1)(B) AND L.R. 4001-2 DISCLOSURES**[8]

16.    The following disclosures are made pursuant to Bankruptcy Rule 4001(c)(1)(B) with respect to the terms of the Post-Petition Financing and/or the impact of the relief sought by this Motion:

> a.    _Material Repayment Terms of Post-Petition Financing_. The borrowing limit under the Post-Petition Financing is $1,000,000, of which $400,000 will be available to be advanced to the Debtors during the Interim Period. **Interim Order ¶ 2; Approved Budget.** The Post-Petition Financing will bear interest at ten per cent (10%) per annum; **Interim Order ¶ 5.** The Lender may terminate the Post-Petition Financing as a result of certain enumerated events of default stated in the Interim Order, subject to notice and cure rights and the right to challenge whether a default occurred. **Interim**

---

[8] References herein to the terms of the Post-Petition Financing, the DIP Credit Agreement or the Interim Order are merely a summary, and to the extent of any conflict between the summaries contained herein and the DIP Credit Agreement or the Interim Order, those latter documents shall control.

1308424v3

**Order ¶¶ 6, 11(b).** The Post-Petition Financing shall be repaid through all cash receipts and the net proceeds of section 363 sales being conducted in the Chapter 11 Cases before repayment of any of the Pre-Petition Obligations but subject to the prior payment or funding of the "Carve-Out" and "Approved Budget Expenses" (as defined below). **Interim Order ¶¶ 15, 17.** In consideration of the Post-Petition Financing, the Lender shall receive a commitment fee of $20,000, payable upon termination of the Post-Petition Financing. **Interim Order ¶ 5.**

b. <u>Grant of Priority or Liens under § 364 for Post-Petition Financing</u>. Upon entry of the Final Order, the Lender will receive post-petition priming liens and security interests (the "**DIP Liens**") on substantially all of the assets and properties of the Debtors, to secure the Post-Petition Financing (collectively, the "**DIP Collateral**"). **Interim Order ¶ 7.** Under the Interim Order, the DIP Liens exclude avoidance actions arising under chapter 5 of the Bankruptcy Code or the proceeds thereof (the "**Avoidance Actions**"). *Id.* The DIP Liens are subject to the Carve-Out (defined below), including Supplemental Fees and Expenses (defined below), and the Approved Budget Expenses. **Interim Order ¶ 13(a).** Upon entry of the Final Order, all obligations under the Post-Petition Financing shall also constitute allowed super-priority claims under section 364(c)(1) of the Bankruptcy Code (the "**Superpriority Claim**"). Under the Interim Order, any Superpriority Claim shall not be payable from Avoidance Actions. **Interim Order ¶ 7(b).** The Superpriority Claim shall be subordinate to the following (the collectively: (i) the carve-out for fees required to be paid pursuant to 28 U.S.C. § 1930(a)(6), fees payable to the Clerk of the Bankruptcy Court, and professional fees (the "**Carve-Out**"), **Interim Order ¶¶ 7(b), 13(a)**; (ii) the carve-out for all other expenses under the approved budget(s) (the "**Approved Budget Expenses**"), **Interim Order ¶¶ 7(b), 15**; and, (iii) in the event of termination of the Post-Petition Financing, a carve-out of $225,000.00 for Supplemental Fees and Expenses, **Interim Order ¶¶ 7(b), 13(a).**

c. <u>Adequate Protection</u>. The Lender is granted valid, binding, continuing, enforceable, fully perfected, first-priority replacement liens on and a senior security interest in and to all of the DIP Collateral, subject only to the Carve-Out, the Approved Budget Expenses and the DIP Liens, for any diminution in the value of the Lender's interest in the Pre-Petition Collateral resulting from the sale, lease or use of the Pre-Petition Collateral from and after the Petition Date, other than the priming of the Pre-Petition Collateral by the DIP Collateral. **Interim Order ¶ 8**.

d. <u>Validity of Pre-Petition Obligations and Pre-Petition Collateral</u>. The Debtors stipulate to the validity of the Pre-Petition Obligations, to the validity of the Pre-Petition Loan Documents and to the validity and first priority of the liens in the Pre-Petition Collateral to secure the Pre-Petition Obligations. **Interim Order, Recital C(ii).**

e. <u>Automatic Stay Modification</u>. The Interim Order provides for the modification of the automatic stay upon the Post-Petition Termination Date but subject to notice and cure rights and the right to challenge the occurrence of a post-petition default. **Interim Order ¶¶ 6, 11(b).**

1308424v3

f.     <u>No Plan of Reorganization Deadlines</u>.  The Interim Order does not seek relief to establish deadlines for filing a plan or disclosure statement.

g.     <u>Certain Waivers in Interim Order</u>.  The Interim Order waives certain perfection requirements that may exist under applicable non-bankruptcy law pertaining to the priority, perfection and/or validity of the DIP Liens and the Adequate Protection Liens. **Interim Order ¶ 9.**

h.     <u>Deadlines to Challenge Pre-Petition Obligations or Liens</u>. The ability to challenge the validity, perfection and amount of the liens or claims of the Lender or to otherwise assert any claims against such parties shall be forever discharged and released if such challenge is not initiated by a creditors' committee within 60 days of formation of such committee, or by any party-in-interest within 75 days from entry of the Interim Order. **Interim Order ¶ 25**.

i.     <u>Indemnification of Lender</u>.  The Interim Order does not include any indemnification provisions.  The Pre-Petition Loan Documents may contain certain indemnification provisions.

j.     <u>No § 506(c) Waiver</u>.  The Interim Order does not include a waiver of any rights under 11 U.S.C. § 506(c) with respect to the Pre-Petition Obligations, the DIP Obligations, or the Collateral.

k.     <u>No Liens on Avoidance Actions.</u> The Interim Order excludes any liens on or recovery on any Superiority Claim from Avoidance Actions or any proceeds thereof. **Interim Order ¶ 7**.

17.    To the extent not otherwise already disclosed herein, the following are additional disclosures required by Local Bankruptcy Rule 4001-2(A)(2) of certain terms to be contained subject to further negotiation in the Interim Order or the DIP Credit Agreement:

a.     <u>Cross-Collateralization</u>.  Other than with respect to the adequate protection described above, the Pre-Petition Obligations are not secured by the DIP Collateral.

b.     <u>Roll-Up</u>.  All proceeds of Pre-Petition Collateral will be used to pay, in order: (i) payment of any DIP Obligations; and (ii) payment of any Pre-Petition Obligations.  The Interim Order does not deem the Pre-Petition Obligations to be post-petition debt or use the Post-Petition Financing to pay part or all of the Pre-Petition Obligations, other than as provided in 11 U.S.C. § 552(b).  **Interim Order ¶¶ 15, 17.**

c.     <u>Carve-Out Limitations</u>.  The Interim Order does not provide for different treatment of professionals relative to one another or limit a committee counsel's use of a professional fee carve-out, except that no portion of the Carve-Out, the Obligations, Cash Collateral, Pre-Petition Collateral or DIP Collateral, may be used to contest in any

manner, or raise any defenses to, the amount, validity, perfection, priority, extent or enforceability of the Pre-Petition Obligations or Post-Petition Obligations or the liens securing the Pre-Petition Obligations or Post-Petition Obligations, or to prosecute or assert any claims or causes of action against the Lender, other than the use of $25,000 by the Committee for investigatory purposes. **Interim Order ¶ 13(b).**

    d.    <u>Non-Consensual Priming Liens</u>. The Interim Order does not prime any secured liens to the extent that such liens are senior to the Pre-Petition Liens under applicable law as of the Petition Date. **Interim Order ¶ 7**.

    e.    <u>No Lender Liability Declaration</u>. The Interim Order contains a declaration that the Post-Petition Financing shall not create liability of the Lender to any third parties as a joint venturer with the Debtors. **Interim Order ¶ 24.**

    f.    <u>Joint and Several Liability of Multiple Debtors</u>. The Debtors and jointly and severally liable for the amounts advanced under the DIP Credit Agreement. **Interim Order ¶ 2.**

    g.    <u>Sale Milestones</u>. The DIP Credit Agreement contains certain milestones in the Chapter 11 Cases related to the sale of substantially all of the Debtors' assets as a going concern. The failure to achieve the milestone constitutes a default under the Post-Petition Financing which is subject to an automatic 5(5) business day cure period. **Interim Order ¶ 6(b)(xvi).**

18.    Pursuant to Local Bankruptcy Rule 4001-(2)(A)(3) and (A)(4), and to the extent not otherwise described herein, the following is a summary of other essential provisions of the Interim Order:

    a.    <u>Use of Post-Petition Financing and the Budget</u> - The proceeds of the Post-Petition Financing shall be used exclusively for the expenditures set forth in the Initial Budget attached to the Interim Order as Exhibit B. **Interim Order ¶ 15.** Under the DIP Credit Agreement, the Initial Budget will be subject to a Permitted Variance. **Interim Order ¶ 15.**

    b.    <u>Release</u>. The Interim Order provides that, conditioned upon entry of a Final Order and subject to the contest period under ¶ 25(a), the Debtors and their estate release the Lender from all claims and actions relating to Pre-Petition Obligations and the Pre-Petition Loan Documents. **Interim Order ¶ 23**.

## V. APPLICABLE AUTHORITY AND JUSTIFICATION FOR RELIEF REQUESTED

19.     If a debtor is unable to obtain unsecured credit allowable as an administrative expense under section 503(b)(1) of the Bankruptcy Code, then the court, after notice and a hearing, may authorize the debtor to obtain credit or incur debt:

>       (i)     with priority over any or all administrative expenses of the kind specified in sections 503(b) or 507(b) of the Bankruptcy Code;
>
>       (ii)    secured by a lien on property of the estate that is not otherwise subject to a lien; or
>
>       (iii)   secured by a junior lien on property of the estate that is subject to a lien.

11 U.S.C. § 364(c).

20.     Further, if a debtor is unable to obtain credit otherwise, the debtor may obtain credit secured by a senior or equal lien on property of the estate that is already subject to a lien, commonly called a "priming lien."  11 U.S.C. § 364(d).

21.     Rule 4001(c)(2) of the Bankruptcy Rules governs the procedures for obtaining authorization to obtain post-petition financing and provides, in relevant part:

>       The court may commence a final hearing on a motion for authority to obtain credit no earlier than 14 days after service of the motion.  If the motion so requests, the court may conduct a hearing before such 14-day period expires, but the court may authorize the obtaining of credit only to the extent necessary to avoid immediate and irreparable harm to the estate pending a final hearing.

Fed. R. Bankr. P. 4001(c).  Accordingly, the Court is authorized to grant the relief requested herein.

22.     The terms and provisions of the Post-Petition Financing have been negotiated at arms' length and in good faith.  In addition, the terms and provisions of the Post-Petition

1308424v3

Financing are fair and reasonable under the circumstances and reflect the most favorable terms upon which the Debtors could obtain the needed post-petition financing.

23.     As is described in the Kraber Declaration, the Debtors, having determined that financing was available only under section 364(c) and (d) of the Bankruptcy Code, negotiated the Post-Petition Financing pursuant to their respective business judgment. *See* Kraber Declaration ¶¶ 81-85. Provided that this judgment does not run afoul of the provisions of and policies underlying the Bankruptcy Code, courts grant a debtor considerable deference in acting in accordance with its business judgment. *See In re AMR Corp.*, 485 B.R. 279, 287 (Bankr. S.D.N.Y. 2013) ("In determining whether to approve a debtor's request under section 364, a Court must examine whether the relief requested is an appropriate exercise of the debtor's business judgment."); *see also, e.g., In re UAL Corp.*, No. 02-B-48191, 2002 WL 34344253 (Bankr. N.D. Ill. Dec. 11, 2002); *cf. In re Olde Prairie Block Owner, LLC*, 448 B.R. 482, 492 (Bankr. N.D. Ill. 2011) (observing that section 364 does not impose a specific standard, but due to the eventual need to use borrowed funds under section 363 of the Bankruptcy Code, the debtor must provide an "articulated business justification") (internal citation omitted).

24.     As is described in the Kraber Declaration, the Post-Petition Financing provides significant additional liquidity to the Debtors and thus will enable the Debtors, among other things, to (a) maintain the continuity of their operations, and (b) maximize the value of their businesses and properties. Such financing is the sole means of preserving and enhancing the Debtors, their businesses, and their assets as a going concern.

25.     Accordingly, the Debtors believe that the approval of the Post-Petition Financing is in the best interests of their estate, their creditors, and all parties-in-interest, and that the Court should therefore approve the Interim Order and schedule a final hearing to consider the entry of

16

the Final Order.  Moreover, for the reasons hereinabove stated, the Lender should be accorded the benefits and protections inuring under sections 361 and 364 of the Bankruptcy Code.

### A.    <u>NOTICE OF THE MOTION</u>

26.    Notice of the filing of this Motion and the hearing scheduled therefor has been provided by CM/ECF, overnight delivery, and/or facsimile to (a) the Office of the United States Trustee for Region 11; (b) each of the Debtors' 20 largest unsecured creditors pursuant to Bankruptcy Rule 1007(d); (c) counsel to the Debtors' senior secured lender, CIBC Bank USA; and (d) all other parties who have requested service of all filings via the Court's CM/ECF system. In light of the nature of the relief requested, the Debtors submit that no other or further notice is required.

27.    Given the critical nature of the relief requested in the Motion, that such relief is only being sought at the preliminary hearing on an interim basis, and in light of the irreparable harm the Debtors would suffer absent such relief, the Debtors request that the Court deem the notice provided hereof as sufficient and/or the notice requirements under Local Bankruptcy Rule 9013-1 waived or reduced accordingly.

WHEREFORE, the Debtors respectfully request that the Court authorize the Interim Post-Petition Financing, enter the Interim Order, set a final hearing to consider the entry of the Final Order approving the Post-Petition Financing *in toto*, and grant such other and further relief as is just and proper.

Respectfully Submitted,

OBERWEIS DAIRY, INC., *et al*.,

By:/s/Henry B. Merens
        Proposed Counsel for the Debtors

1308424v3

HOWARD L. ADELMAN, ESQ. (ARDC# 0015458)
HENRY B. MERENS, ESQ. (ARDC #6181695)
ADAM P. SILVERMAN, ESQ. (ARDC #6256676)
ALEXANDER F. BROUGHAM, ESQ. (ARDC #6301515)
TEVIN D. BOWENS, ESQ. (ARDC #6338559)
ADELMAN & GETTLEMAN, LTD.
53 West Jackson Blvd., Suite 1050
Chicago, Illinois 60604
Tel (312) 435-1050
Fax (312) 435-1059
**Proposed Counsel for the Debtors and Debtors in Possession**

1308424v3