**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| Oberweis Dairy, Inc., *et al.*,[1] | ) | Case No. 24-05385 |
| | ) | (Jointly Administered) |
| Debtors. | ) | |
| | ) | Honorable David D. Cleary |
| | ) | |

<u>**NOTICE OF FILING – REDLINE OF SALE PROCEDURES ORDER**</u>

**PLEASE TAKE NOTICE** that on May 3, 2024, we caused to be filed a redlined copy (the "**Redlined Proposed Order**") of the proposed *Order: (a) Approving Sale Process, Including a Stalking Horse Asset Purchase Agreement; (b) Approving Procedures for Assumption and Assignment of Executory Contracts and Unexpired Leases; (c) Approving Form Notices; (d)) Excusing Page Limit; and (e) Scheduling a Public Auction and a Sale Approval Hearing* (the "**Proposed Order**") in the above-captioned bankruptcy case, a copy of which is attached hereto as <u>**Exhibit A**</u>.

**PLEASE TAKE FURTHER NOTICE** that the Redlined Proposed Order shows changes between the version of the Proposed Order filed on April 30, 2024 (ECF No. 81), and the version of the Proposed Order filed on May 3, 2024 (ECF No. 94).

Respectfully Submitted,

By: /s/ Alexander F. Brougham
Proposed counsel for the Debtors

HOWARD L ADELMAN, ESQ. (ARDC #0015458)
ADAM P. SILVERMAN, ESQ. (ARDC #6256676)
TEVIN D. BOWENS, ESQ. (ARDC # 6338559)
ADELMAN & GETTLEMAN, LTD.
53 West Jackson Blvd., Suite 1050
Chicago, Illinois 60604
Tel (312) 435-1050
Fax (312) 435-1059
**Proposed Counsel for the Debtors**

---

[1] The Debtors in these cases, and the last four digits of their respective federal employer identification numbers, are Oberweis Dairy, Inc. ('7516); The Oberweis Group, Inc. ('1378); North Aurora Ice Cream, LLC ('8506); TOGI RE I, LLC ('5952); Third Millennium Real Estate L.L.C. ('1589); and TOGI Brands, LLC ('7072).

1320912_1

## <u>CERTIFICATE OF SERVICE</u>

The undersigned, an attorney, certifies that, on May 3, 2024, he served a copy of the foregoing **Notice of Filing - Redline** upon the following parties via the Court's CM/ECF system:

- Patrick Layng, U.S. Trustee for Region 11;
- Steve Jakubowski and Carolina Sales, counsel for the Official Committee of Unsecured Creditors;
- Eric S. Rein and Nathan Delman, counsel for CIBC Bank USA;
- Charles Stahl, Jr., counsel for Associated Material Handling Solutions, Inc.;
- R. Scott Alsterda, counsel for Ecolab, Inc;
- Joseph Allen Archambeau and Travis Eliason, counsel for TSC Equipment Finance LLC;
- Debra Devassy Badu, counsel for Wells Fargo Equipment Finance, Inc.;
- Aaron Chapin, counsel for BMO Bank N.A.;
- Jeffrey Kurtzman, counsel for Wheaton Plaza Wheaton, IL LLC;
- Bryan Minier and Robert Jeffrey Haupt, counsel for Osprey Capital, LLC;
- Justin Mertz, counsel for Foremost Farms USA;
- Raymond Ostler, counsel for Associated Electrical Contractors, LLC;
- Richard Perna, counsel for Park Ridge Plaza, LLC;
- Paul Poracky, counsel for Schererville Main Street, LLC; and
- Edmund Urban, counsel for Urban Communications, Inc.

By: /s/ Alexander F. Brougham
Proposed counsel for the Debtors

HOWARD L ADELMAN, ESQ. (ARDC #0015458)
ADAM P. SILVERMAN, ESQ. (ARDC #6256676)
TEVIN D. BOWENS, ESQ. (ARDC # 6338559)
ADELMAN & GETTLEMAN, LTD.
53 West Jackson Blvd., Suite 1050
Chicago, Illinois 60604
Tel (312) 435-1050
Fax (312) 435-1059
**Proposed Counsel for the Debtors**

# <u>Exhibit A</u> to

## *Notice of Filing – Redline*:

# **Redlined Proposed Order**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| Oberweis Dairy, Inc., *et al.*,[1] | ) | Case No. 24-05385 |
| | ) | (Jointly Administered) |
| Debtors. | ) | |
| | ) | Honorable David D. Cleary |
| _____ | ) | |

**ORDER: (a) APPROVING SALE PROCESS, INCLUDING A STALKING HORSE
ASSET PURCHASE AGREEMENT; (b) APPROVING PROCEDURES FOR
ASSUMPTION AND ASSIGNMENT OF EXECUTORY CONTRACTS
AND UNEXPIRED LEASES; (c) APPROVING FORM NOTICES; (d) EXCUSING
PAGE LIMIT; AND (e) SCHEDULING A PUBLIC AUCTION
AND A SALE APPROVAL HEARING**

Upon the motion (the **"Sale Motion"**) of Oberweis Dairy, Inc., The Oberweis Group,

Inc., North Aurora Ice Cream, LLC, TOGI RE I, LLC, Third Millennium Real Estate L.L.C., and

TOGI Brands, LLC, debtors and debtors in possession (collectively, the "**Debtors**") in the

above-captioned chapter 11 case (the **"Chapter 11 Case"**), for the entry of: (i) an order (the

"**Sale Procedures Order**"): (a) establishing procedures for the sale of all, or substantially all, of

the Debtors' assets (the "**Asset Sale**"), including a stalking horse asset purchase agreement with

bid protection and a break-up fee, together with a form asset purchase agreement for

non-stalking-horse bidders in bulk or in lots; (b) establishing procedures relating to the

assumption and assignment of executory contracts and unexpired leases; (c) approving form

notices of the sale and other form notices; (d) excusing the page limit under the Court's local

rules; and (e) scheduling a public auction and sale approval hearing; and (ii) an order (the "**Sale**

---

[1] The Debtors in these cases, and the last four digits of their respective federal employer identification numbers, are Oberweis Dairy, Inc. ('7516); The Oberweis Group, Inc. ('1378); North Aurora Ice Cream, LLC ('8506); TOGI RE I, LLC ('5952); Third Millennium Real Estate L.L.C. ('1589); and TOGI Brands, LLC ('7072).

**Approval Order**"): (x) approving the sale of the Debtors' assets free and clear of claims, liens, and encumbrances; (y) approving the assumption and assignment of certain executory contracts and unexpired leases; and (z) granting related relief (the "**Motion**"); it appearing that the relief requested in the Sale Motion seeking entry of the Sale Procedures Order is in the best interest of the Debtors' estates and their creditors; this Court having jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334; the Sale Motion and the opportunity to object to entry of the Sale Procedures Order being a core proceeding pursuant to 28 U.S.C. § 157; adequate notice of the Sale Motion's request for entry of the Sale Procedures Order having been given to all parties entitled thereto; and it appearing that no other notice need be given or is required under the circumstances except as set forth herein; and after due deliberation and sufficient cause appearing therefor;

**THE COURT HEREBY FINDS AND DETERMINES THAT:** [2]

A.      The Debtors have articulated good and sufficient reasons for approval of the Approved Bidding Procedures, and the Break-Up Fee and Initial Overbid Amount (collectively, the "**Bid Protection**"), in connection with the sale of the Sale Assets.

B.      The Approved Bidding Procedures and the Bid Protection are reasonable and appropriate to maximize the return for the Sale Assets;

C.      The Break-Up Fee is:

i.      A fair and reasonable inducement for the Stalking Horse to submit the Stalking Horse Bid as a minimum bid on which the Debtors, their creditors, and other Bidders can rely to create a market for the Sale Assets;

---

[2]  Capitalized terms not otherwise defined herein shall have the respective meanings ascribed thereto in the Approved Bidding Procedures (as defined below), attached hereto as <u>Exhibit A</u>.

    ii.     Commensurate to the real and substantial benefit that the Stalking Horse Bid will confer upon the estates of the Debtors;

    iii.    Reasonable and appropriate, considering the size and nature of the proposed sale and comparable transactions, the commitments to be made, and the efforts expended and to be expended by the Stalking Horse in connection with the Stalking Horse APA;

    iv.    Necessary to induce the Stalking Horse to pursue the Asset Sale and to be bound by the Stalking Horse APA; and

    v.    A necessary cost of the sale.

**NOW, THEREFORE, IT IS HEREBY ORDERED, EFFECTIVE IMMEDIATELY:**

1.    The request in the Sale Motion seeking entry of the Sale Procedures Order and other relief is hereby granted in the manner and to the extent provided herein, with this Order serving as the entered and approved Sale Procedures Order.

2.    The Stalking Horse APA filed on the docket as ECF No. 56 is hereby deemed to be and shall constitute the Stalking Horse Bid under the Approved Bidding Procedures and the Bid Protection described in the Stalking Horse Bid be and is hereby approved.

3.    The Form APA filed on the docket as ECF No. 57 is hereby deemed to be and shall constitute the Form APA under the Approved Bidding Procedures. The Debtors are authorized but not directed in their reasonable discretion (after consultation with the Constituent Parties), to revise the Form APA.  Notwithstanding the foregoing, should a Constituent Party object to the actions taken by the Debtors hereunder, such Constituent Party shall have the right to seek expedited relief before the Bankruptcy Court to present its objection (the "**Constituent Party Objection Rights**").

4.      The bidding procedures set forth in the *Approved Bidding Procedures* attached hereto as **Exhibit A** and expressly made a part hereof and incorporated herein (the "**Approved Bidding Procedures**") are hereby approved. The Debtors are hereby permitted, in their reasonable discretion, to revise the Approved Bidding Procedures (after consultation with the Constituent Parties, subject to the Constituent Party Objection Rights), or further Order of Court. The Debtors shall file a notice of any amendment to the Approved Bidding Procedures with the Court within 24 hours after such authorization or order of the Court; provided, however, that for any authorized amendment occurring within 24 hours of the commencement of the Auction or at the Auction itself, it shall be sufficient for such amendment to be announced at the Auction and no notice of such amendment need be filed with the Court.

5.      All persons or entities who submit a Qualified Bid for any of the Sale Assets shall be deemed to have read and understood the terms and conditions of the Approved Bidding Procedures and must comply with, and will be bound by, the Approved Bidding Procedures.

6.      The *Summary Notice of Sale of All or Substantially All Assets of Debtors* attached hereto as **Exhibit B** and expressly made a part hereof and incorporated herein (the "**Summary Sale Notice**") is hereby approved.

7.      All objections to the Sale Motion or the relief requested therein, to the extent they pertain to the entry of this Sale Procedures Order, that have not been withdrawn, waived or settled, and all reservations of rights included therein, are hereby denied and overruled.

8.      The Debtors are hereby authorized and empowered to take such steps and perform such actions as may be necessary to implement and effect the sale process contemplated by, and consistent with, this Sale Procedures Order.

9.      The deadline for the submission of the Qualified Bids (the **"Bid Deadline"**) shall be on or before 5:00 p.m. (prevailing Central time) on May 24, 2024; provided, however, that the Debtors may (after consultation with the Constituent Parties, subject to the Constituent Party Objection Rights) consider and accept late bids received prior to or at the Auction.

10.     The auction (the **"Auction"**) for the Sale Assets shall take place on May 29, 2024, at 10:00 a.m. (prevailing Central time) at the offices of Adelman & Gettleman, Ltd., 53 West Jackson Blvd., Suite 1050, Chicago, Illinois 60604, or such later time or other place as the Debtors (after consultation with the Constituent Parties, subject to the Constituent Party Objection Rights) shall notify all Qualified Bidders and all Noticed Parties (as defined below). In the event that the Stalking Horse is the only Qualified Bidder, or the Debtors receive one or more Qualified Bids for a sale in one or more Lots which the Debtors in their reasonable discretion (after consultation with the Constituent Parties, subject to the Constituent Party Objection Rights) do not believe to be a higher or otherwise better bid than the Stalking Horse Bid when taking into account the Break-Up Fee, then the Debtors (after consultation with the Constituent Parties, subject to the Constituent Party Objection Rights) shall have the right, but not the obligation, to cancel the Auction and proceed directly to the Sale Hearing (as defined below) to seek entry of the Sale Approval Order approving the Stalking Horse APA.

11.     In the event the Debtors are obligated to pay the Break-Up Fee, such fee shall be paid at closing only out of the Debtors' proceeds from the sale of the Sale Assets. The Break-Up Fee shall not be entitled to treatment as an allowed administrative priority claim under sections 503(b)(1)(A) and 507(a)(2) of the Bankruptcy Code.

12.     In the event the Debtors are not obligated to pay the Break-Up Fee as a result of a Prevailing Bidder's Failure to Close, no claim against any of the Debtors' estates will arise on account of the Break-Up Fee.

13.     The Court shall conduct a hearing to consider approval of the Asset Sale (the "**Sale Hearing**") and entry of the Sale Approval Order, on June 5, 2024 at ~~10:30 a~~1:00 p.m. at the United States Bankruptcy Court, Northern District of Illinois, Eastern Division, Dirksen Federal Building, 219 S. Dearborn Street, Courtroom ~~615~~644, Chicago, Illinois 60604, or such later time or other place as the Debtors shall notify all Qualified Bidders and all Noticed Parties, to consider the sale and enter the Sale Approval Order.

14.     All objections to the sale of the Sale Assets and entry of the Sale Approval Order must: (a) be in writing; (b) comply with the Bankruptcy Rules and the Local Rules for the U.S. Bankruptcy Court for the Northern District of Illinois, Eastern Division; (c) be filed on or before 5:00 p.m. (prevailing Central time) on June 3, 2024 (the "**Sale Objection Deadline**"), with the Clerk of the United States Bankruptcy Court, Northern District of Illinois, Eastern Division, Dirksen Federal Building, 219 S. Dearborn Street, Room 713, Chicago, Illinois 60604 (the "**Court Clerk**"), so as to be received on or before the Sale Objection Deadline by, the following parties (collectively, the "**Noticed Parties**"): (i) counsel to the Debtors, Howard L. Adelman, Adam P. Silverman, and Alexander F. Brougham of Adelman & Gettleman, Ltd., 53 West Jackson Boulevard, Suite 1050, Chicago, Illinois, 60604; (ii) counsel to CIBC Bank USA ("**CIBC**"), Eric S. Rein of Kilpatrick Townsend & Stockton, LLP, 500 West Madison Street, Suite 3700, Chicago, Illinois 60661; (iv) the Office of the United States Trustee, 219 S. Dearborn Street, Room 873, Chicago, Illinois 60604; (v) counsel for the Committee, Steve Jakubowski and Carolina Y. Sales, Robbins DiMonte, Ltd., 180 N. LaSalle St., Suite 3300, Chicago, Illinois

60601. For avoidance of doubt, service to the Noticed Parties through the Court's CM/ECF system shall expressly satisfy the service requirement. To be heard by the Court at the Sale Hearing, all objections must be timely filed and state with reasonable specificity the nature of each objection to the sale of the Sale Assets or entry of the Sale Approval Order.

15.     No later than 11:59 p.m. (prevailing central time) on May 21, 2024, the Debtors shall file Schedule H to the Stalking Horse APA (the "**Stalking Horse Executory Contract Assumption Schedule**").

16.     No later than 11:59 p.m. (prevailing central time) on the first business day immediately following the filing of the Stalking Horse Executory Contract Assumption Schedule, the Debtors shall file a notice with the Court and serve same, by facsimile, overnight delivery, or such other form of notice authorized by the recipient (including CM/ECF and/or email), to any non-Debtor party to any executory contract or unexpired lease whose assumption and assignment is contained in the Stalking Horse Executory Contract Assumption Schedule (collectively, the "**Executory Contracts/Leases**," and each, an "**Executory Contract/Lease**"), substantially in the form attached hereto as **Exhibit C,** which is expressly made a part hereof, and incorporated herein (the "**Assumption Notice**"). The Assumption Notice shall (a) state the cure amounts that the Debtors reasonably believe are necessary to assume and assign each such Executory Contracts/Leases pursuant to Section 365 of the Bankruptcy Code (the "**Cure Amount(s)**"); and (b) notify the non-Debtor party that such party's Executory Contract/Lease may be assumed and assigned to any purchaser of the Sale Assets who (i) is the Prevailing Bidder or Back-Up Bidder at the Auction, and (ii) agrees (x) to the Cure Amount to such Executory Contract/Lease set forth in the Assumption Notice or provides reasonable evidence of a contrary amount(y) to such other amount that is acceptable to the Debtors (after consultation

with the Constituent Parties, subject to the Constituent Party Objection Rights) (the **"Proposed Assumption/Assignment"**). In addition, on or before 11:59 p.m. on May 26, 2024, the Debtors shall promptly send a supplemental notice (a "**Supplemental Assumption Notice**") by facsimile, overnight delivery, or such other form of notice authorized by the recipient (including CM/ECF and/or email) to the applicable counterparties to any additional Executory Contracts/Leases not included on the Stalking Horse Executory Contract Assumption Schedule that are proposed to be assumed as of the Qualified Bid Deadline by the Stalking Horse Bidder or any other Qualified Bidder. This Supplemental Assumption Notice shall set forth for such applicable counterparties the same information as is required by the Assumption Notice. A Supplemental Assumption Notice shall also be sent to any applicable counterparties to Executory Contracts/Leases ~~where the Cure Amount contained~~identified in any Qualified Bid received by the Debtors as of 11:59 p.m. on May 26, 2024, where such counterparties' Cure Amount contained in that Qualifying Bid (which amount shall be specifically quantified in the Supplemental Assumption Notice) is less than the Cure Amount set forth in the Assumption Notice.

17.     The deadline for a non-Debtor party to an Executory Contract/Lease (a "**Contract/Lease Counterparty**") to file and serve an objection (a "**Cure Amount/Assignment Objection**") to the Cure Amount or Proposed Assumption/Assignment of such Executory Contract/Lease in an Assumption Notice or Supplemental Assumption Notice shall be 5:00 p.m. prevailing Central time, on ~~May 28~~June 4, 2024 (the "**Cure Amount/Assignment Objection Deadline**")~~; provided, however, that (x) the Debtors (after consultation with the Constituent Parties, subject to the Constituent Party Objection Rights) may accept and consider untimely Cure Amount/Assignment Objections at the Auction and (y) the Court may consider untimely objections for good cause shown if filed on or before 12:00 p.m. on June 3, 2024. The~~

non-Debtor party may further object to the Proposed Assumption/Assignment on the basis of the right to obtain adequate. A Cure Amount/Assignment Objection must include any objection relating to the adequacy of assurance of future performance from a given purchaser (anregarding such Executory Contract/Lease by the Prevailing Bidder(s) or the Back-Up Bidder(s) (the "**Adequate Assurance Objection**"), which shall also be filed by the Cure Amount/Assignment Objection Deadline. Parties to Executory Contracts/ Leases may obtain proof of adequate assurance of future performance by Qualified Bidders by written request to the Debtors' counsel after the Bid Deadline.

18.     Cure Amount/Assignment Objections and, including Adequate Assurance Objections, must be both (a) filed with the Court Clerk and (b) served upon all Noticed Parties on or before the Cure Amount/Assignment Objection Deadline.  For avoidance of doubt, service to the Noticed Parties through the Court's CM/ECF system shall expressly satisfy the service requirement.

19.     Subject to timely and effective service of the Assumption Notice (and if applicable the Supplemental Assumption Notice), then to the extent that a Contract/Lease Counterparty fails to timely file and serve a Cure Amount/Assignment Objection as provided herein, then such Contract/Lease Counterparty:

a.  Will be forever barred from objecting to the Cure Amount and from asserting any additional cure amounts with respect to such Executory Contract/Lease, and the Debtors shall be entitled to rely solely upon the Cure Amount; and

b.  Will be deemed to have consented to the assumption, assignment and/or transfer of such Executory Contract/Lease, and will be forever barred and

estopped from asserting or claiming against any of the Debtors, the Prevailing Bidder(s) and/or the Back-Up Bidder(s), or any other assignee of the relevant Executory Contract/Lease that any additional amounts are due or defaults exist, or conditions to assumption, assignment and/or transfer must be satisfied, under such Executory Contract/Lease.

      c.  Will be barred from asserting an Adequate Assurance Objection.

20.     If an objection challenges a Cure Amount, the objection must set forth the cure amount being claimed by the objecting party (the "**Claimed Cure Amount**") with the appropriate documentation in support thereof. Upon receipt of a Cure Amount/Assignment Objection, the Debtors are authorized, but not directed (after consultation with the Constituent Parties, subject to the Constituent Party Objection Rights) to resolve any Cure Amount/Assignment Objection by mutual agreement with the objecting party to any Executory Contract/Lease without further order of the Court. In the event that the Debtors and any objecting party are unable to consensually resolve any Cure Amount/Assignment Objection prior to the Sale Hearing, the Court will attempt to resolve any such Cure Amount/Assignment Objection at the Sale Hearing. To the extent necessary, the Debtors (after consultation with the Constituent Parties, subject to the Constituent Party Objection Rights) shall arrange for ~~either~~ the ~~Debtor~~Debtors, the Prevailing Bidder(s), the Back-Up Bidder(s), or any other party, as the case may be, to escrow all disputed Claimed Cure ~~Amount~~Amounts pending resolution with the Court.

21.     The Sale Hearing may be adjourned, from time to time, without further notice to creditors or other parties in interest by announcement of said adjournment in open court and

corresponding entry on the main docket of this jointly administered case identifying the next scheduled date(s) of the continued Sale Hearing.

22.    Pursuant to Bankruptcy Rules 2002(a) and 6004, and in lieu of notice of the Sale Motion being served by the Clerk of this Court, the Debtors be and are hereby ordered and directed to serve copies of ~~the Approved Bidding~~this Sale Procedures Order and its exhibits by regular United States mail within two (2) business days after entry of this Sale Procedures Order to the last known business address of the following parties, if such parties are not represented by counsel who has filed an appearance in the Chapter 11 Cases: (a) counsel for each of the Constituent Parties; (b) all known parties to the Debtors' executory contracts and unexpired leases; (c) the United States Trustee's Office for Region 11; (d) all entities reasonably known by the Debtors (or their representatives and retained professionals) to have ~~an~~asserted a lien or security interest in the Sale Assets; (e) the District Director of the Internal Revenue Service for the Northern District of Illinois; (f) the Office of the Attorney General of Illinois; (g) all taxing authorities identified in the creditor matrices filed in the Chapter 11 Cases; and (h) all equity security holders of the Debtors~~; and (i) all other entities that have filed requests for notices pursuant to Rule 2002 of the Bankruptcy Rules~~.  Additionally, in lieu of notice of the Sale Motion being served by the Clerk of this Court, the Debtors be and are hereby ordered and directed to serve copies of the Summary Sale Notice by regular United States mail within three (3) business days after entry of this Sale Procedures Order upon all known creditors in these Chapter 11 Cases  and all other persons or entities listed on the Debtors' filed matrices whose mail has not been returned as undeliverable~~,~~.  Notice provided in accordance with this Order is hereby found to be adequate and sufficient notice of the relief sought in the Sale Motion,

including the sale of the Sale Assets and the assumption and assignment of Executory Contracts/Leases.

23.     Any interested party may obtain a copy of the Stalking Horse APA, ~~The~~the Form APA, the Sale Motion, ~~and~~ any exhibits attached thereto, and/or any proposed Sale Approval Order~~,~~ upon written request directed to counsel for the Debtors, Adelman & Gettleman, Ltd., Attn: Howard L. Adelman, Adam P. Silverman, and Alexander F. Brougham, 53 West Jackson Blvd., Chicago, Illinois 60604 hadelman@ag-ltd.com; asilverman@ag-ltd.com; abrougham@ag-ltd.com).

24.     Except as otherwise provided in this Sale Procedures Order, the Debtors reserve the right, as they may reasonably determine to be in the best interests of their estates (after consultation with the Constituent Parties, subject to the Constituent Party Objection Rights) to: (a) determine which bidders are Qualified Bidders; (b) determine which bids are Qualified Bids; (c) determine which Qualified Bid or combination of Qualified Bids is the highest or otherwise best proposal and which is the next highest or otherwise best proposal; and (d) reject any bid that is: (i) inadequate or insufficient; (ii) not in conformity with the requirements of the Approved Bidding Procedures or the requirements of the Bankruptcy Code; or (iii) contrary to the best interests of the Debtors and their estates; provided, however, that no bid shall be rejected solely on the basis that it is a credit bid.  The Debtors (after consultation with the Constituent Parties, subject to the Constituent Party Objection Rights) further reserve all rights to impose, at or prior to the Auction, reasonable additional terms and conditions on the sale of the Sale Assets, to reasonably extend or adjourn any deadlines set forth herein (other than with respect to service of the Assumption Notice and the Supplemental Assumption Notice), and to take any other actions with respect to the Auction, the Sale Hearing, or the sale of the Sale Assets which in ~~its~~their

business judgment are reasonably necessary to preserve the  bankruptcy estate or maximize the value thereof.

25.     The stays provided for in Bankruptcy Rules 6004(h) and 6006(d) are waived and this Sale Procedures Order shall be effective immediately upon its entry.

26.     The fifteen-page limit under Local Rule 5005-3(D) is excused with respect to the Motion.

27.     This Court shall retain jurisdiction with respect to all matters arising from or related to the implementation or interpretation of this Sale Procedures Order.

28.     Absent further order of Court, non-public Financial Qualifications disclosed by any Bidder to the Debtors or the Constituent Parties in connection with bids for the Asset Sale may not be (a) used by any of the Debtors or the Constituent Parties, their agents, or representatives, for any purpose other than evaluating or comparing bids for the Sale Assets; or (b) disclosed by the Debtors or the Constituent Parties to any party that is not (i) another Constituent Party; (ii) the agent or representative of another Constituent Party; (iii) the Court; or (iv) a representative of the Office of the United States Trustee; or (v) a Contract/Lease Counterparty that has requested proof of adequate assurance of future performance under its Executory Contract/Lease.

29.     The Debtors shall file with the Court a proposed Sale Approval Order no later than 5:00 p.m. prevailing Central time on Friday, May 31, 2024.

Dated: May __, 2024                          ENTER:

1319021_4 1320697_3  13

_____
UNITED STATES BANKRUPTCY JUDGE

*This order prepared by:*
Howard L. Adelman, Esq. (ARDC #0015458)
Henry B. Merens, Esq. (ARDC # 6181695)
Adam P. Silverman, Esq. (ARDC #6256676)
Alexander F. Brougham, Esq. (ARDC #6301515)
ADELMAN & GETTLEMAN, LTD.
53 West Jackson Blvd., Suite 1050
Chicago, Illinois 60604
Telephone No. (312) 435-1050

1319021_4 1320697_3 14

## <u>Exhibit A</u> to

*Order: (a) Approving Sale Process, Including a Stalking Horse Asset Purchase Agreement; (b) Approving Procedures for Assumption and Assignment of Executory Contracts and Unexpired Leases; (c) Approving Form Notices; (d) Excusing Page Limit; and (e) Scheduling a Public Auction and a Sale Approval Hearing*:

## Approved Bidding Procedures

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| Oberweis Dairy, Inc., *et al.*,[1] | ) | Case No. 24-05385 |
| | ) | (Jointly Administered) |
| Debtors. | ) | |
| | ) | Honorable David D. Cleary |

**APPROVED BIDDING PROCEDURES**

TO:    ALL PARTIES IN INTEREST AND POTENTIAL BIDDERS FOR THE ASSETS OF OBERWEIS DAIRY, INC., THE OBERWEIS GROUP, INC., NORTH AURORA ICE CREAM, LLC, TOGI RE I, LLC, THIRD MILLENNIUM REAL ESTATE L.L.C., AND TOGI BRANDS, LLC:

PLEASE TAKE NOTICE that set forth below are the bidding procedures (the "**Approved Bidding Procedures**") to be employed with respect to the prospective sale of the business and assets of OBERWEIS DAIRY, INC., THE OBERWEIS GROUP, INC., TOGI BRANDS, LLC, NORTH AURORA ICE CREAM, LLC, THIRD MILLENNIUM REAL ESTATE L.L.C., AND TOGI RE I, LLC (collectively, the "**Debtors**"), debtors and debtors-in-possession in the above-captioned jointly administered chapter 11 bankruptcy cases (collectively, the "**Chapter 11 Cases**") pending in the U.S. Bankruptcy Court for the Northern District of Illinois, Eastern Division (the "**Bankruptcy Court**"). Upon the motion filed by the Debtors on April 24, 2024 (the "**Sale Motion**"), the Bankruptcy Court authorized a sale process and these Approved Bidding Procedures pursuant to ~~an order dated May [1], 2024 [Docket No. ___]~~its *Order: (a) Approving Sale Process, Including a Stalking Horse Asset Purchase Agreement; (b) Approving Procedures for Assumption and Assignment of Executory Contracts and Unexpired Leases; (c) Approving Form Notices; (d) Excusing Page Limit; and (e) Scheduling a Public Auction and a Sale Approval Hearing* (the "**Sale Procedures Order**"). The Debtors intend to seek the entry of the Sale Approval Order (as defined below) to the Qualified Bidder(s) (as defined below) submitting the highest and best offer(s) to purchase the Sale Assets, as determined by the Debtors, after consultation with the official committee of unsecured creditors appointed in the Chapter 11 Cases (the "**Committee**") and the Debtors' secured lender, CIBC Bank USA, an Illinois state banking association ("**CIBC**," and together with the Committee ~~and CIBC~~, the "**Constituent Parties**").

**(1)    Assets to be Sold and Form APA**

---

[1] The Debtors in ~~this case~~these cases, and the last four digits of their respective federal employer identification numbers, are Oberweis Dairy, Inc. ('7516); The Oberweis Group, Inc. ('1378); North Aurora Ice Cream, LLC ('8506); TOGI RE I, LLC ('5952); Third Millennium Real Estate L.L.C. ('1589); and TOGI Brands, LLC ('7072).

The Debtors' business consists of manufacturing, packaging, and distributing milk, ice cream, and other dairy and non-dairy foods and selling these products through both retail and wholesale channels, primarily in the Midwest. The Debtors' business is comprised of three distinct segments which operate as an integrated business enterprise: (a) the operation of forty (40) "Oberweis Dairy" branded retail stores in four states; (b) the servicing of customers through direct-to-doorstep home delivery in five states; and (c) direct sales to consumers in national grocery stores and regional supermarkets in seven states. The Debtors manufacture their products from a facility located at 951 Ice Cream Drive, North Aurora, Illinois, which also serves as the Debtors' operational headquarters. The nature and operations of the Debtors' business are described in more detail in the *Declaration of Adam Kraber in Support of Chapter 11 Petitions and First-Day Motions* (the "**Declaration**") as Docket No. 19 (which is available upon written request to the undersigned counsel to the Debtors).

The Debtors are offering for sale (a) substantially all of their collective real and personal property assets and business operations as a single enterprise, in bulk ("**Bulk**"); and (b) various divisions of their collective real and personal property assets and business operations in one or more lots ("**Lots**," and each of them, a "**Lot**"). The assets comprising a sale in Bulk or a sale in individual Lots are described comprehensively in that certain form of *Asset Purchase Agreement* approved by the Bankruptcy Court pursuant to the Sale Procedures Order (the "**Form APA**") (which ~~is available upon~~may be obtained by: (a) written request to the ~~undersigned~~Debtors' counsel ~~to the Debtors~~, Adelman & Gettleman, Ltd., 53 W. Jackson Blvd., Suite 1050, Chicago, IL 60604, Attn: Howard Adelman, Adam Silverman, and Alexander Brougham, or (b) at www.cptgroupcaseinfo.com/OberweisDairyInc/).

The Lots described in the Form APA are generally described as follows:

**LOT 1** – *All Sale Assets*

**LOT 2** – *ODI Business Segments – Dairy Store Assets, Home Delivery Assets, Grocery Retail Assets, and Intellectual Property*

**LOT 3** – Solely *North Aurora Manufacturing Assets*

**LOT 4** – Solely *Dairy Store Assets*

**LOT 5** – Solely *Home Delivery Assets*

**LOT 6** – Solely *Grocery Retail Assets*

**LOT 7** – Solely *Fleet of Vehicles* (other than *Home Delivery Vehicles*)

**LOT 8** – Solely *Intellectual Property*

**THE FOREGOING DESCRIPTION OF LOTS IS <u>NOT</u> INTENDED TO AMEND, SUPERSEDE, OR REPLACE THE DESCRIPTIONS OF THE ACTUAL PROPERTY LISTED IN THE FORM APA. BIDDERS MUST REFER TO THE PROPERTY SET**

**FORTH IN THE FORM APA AND BID ON ONE OR MORE OF THE FOREGOING LOTS BY CHECKING THE APPLICABLE BOX OR BOXES IN THE FORM APA, AND OTHERWISE COMPLYING WITH THESE APPROVED BIDDING PROCEDURES, TO BECOME A QUALIFIED BIDDER.**

The real and personal property assets for a bid in Bulk or in Lots as described under each applicable box or boxes referenced in Section 2 (titled "Purchase and Sale of Assets") of a Bidder's Form APA shall be referred to herein as the "**Sale Assets**". The sale of the Sale Assets shall be subject to the representations, warranties, covenants and other terms and conditions contained in the Form APA, and except as provided therein, on an "**AS IS, WHERE IS**" basis, with all faults of any kind or nature, including latent or patent defects, and without other representations and warranties, express, implied or statutory, written or oral of any kind, nature or description.

### (2)   Notice of Approved Bidding Procedures

Pursuant to the Sale Procedures Order, the Debtors are serving these Approved Bidding Procedures, by first-class mail or the Court's CM/ECF system, upon: (a) counsel for each of the Constituent Parties (or, if no appearance has been filed for a Constituent Party in the Chapter 11 Cases, the Constituent Party); (b) all currently known counterparties to the Debtors' executory contracts and unexpired leases (collectively, the "**Executory Contracts / Unexpired Leases**"); (c) the United States Trustee's Office for Region 11; (d) all entities reasonably known by the Debtors (or their representatives and retained professionals) to have an asserted a lien or security interest in the Sale Assets; (e) the District Director of the Internal Revenue Service for the Northern District of Illinois; (f) the Office of the Attorney General of Illinois; (g) all taxing authorities identified in the creditor matrices filed in the Chapter 11 Cases; (h) all equity security holders of the Debtors; and (i) all other entities that have filed requests for notices pursuant to Rule 2002 of the Bankruptcy Rules. The Debtors are also serving a *Summary Notice of Sale of All or Substantially All Assets of Debtor*, by first-class mail, upon all known creditors in the Chapter 11 Cases and all other persons or entities listed on the Debtor's filed matrices whose mail has not been returned as undeliverable.

### (3)   Confidentiality Agreement

Bidders for Sale Assets (the "**Bidders**") shall be required to complete and execute a confidentiality agreement in form and substance acceptable to the Debtors (the "**Confidentiality Agreement**").

### (4)   Due Diligence

Upon execution of a Confidentiality Agreement, potential bidders who desire to conduct due diligence on any of the Sale Assets will be granted access to the Debtors' electronic data room (the "**Data Room**") and to additional nonpublic information regarding the Debtors. All due diligence requests must be directed to Livingstone Partners LLC (Attn: Mr. Joseph Greenwood; email: greenwood@livingstonepartners.com). The Debtors and Livingstone Partners LLC will

make reasonable efforts to address all reasonable requests for additional information and due diligence access.

The due diligence period shall be open until the Bid Deadline. After the Bid Deadline, the Debtors shall have no obligation to furnish due diligence information. The Debtors may, in their reasonable discretion following consultation with the Constituent Parties, extend a party's time to conduct due diligence.  Notwithstanding the foregoing, should a Constituent Party object to the actions taken by the Debtors hereunder, such Constituent Party shall have the right to seek expedited relief before the Bankruptcy Court to present its objection (the "**Constituent Party Objection Rights**").

Bidders shall not, directly or indirectly, contact any customer, supplier, or contractual counterparty of the Debtors in respect of matters relating to the Debtors or a potential transaction with the Debtors (or otherwise initiate, participate in, or engage in such discussions with such parties) without the prior written consent of the Debtors.

By submitting a bid, each Bidder shall be irrevocably and conclusively deemed to acknowledge and represent that: (a) it has had the opportunity to conduct its due diligence on the Debtors and the Sale Assets prior to making its bid; (b) other than the representations, warranties and covenants in the Form APA, it has relied solely upon its own independent review, investigation, and/or inspection of any documents and information as to the Debtors and the Sale Assets in making its bid; (c) it has completed all due diligence it deems reasonable and necessary under the circumstances; and (d) it waives the right to conduct further due diligence from and after the Bid Deadline. For clarity, the deadline for conducting due diligence shall be the Bid Deadline.

### (5)    Criteria for Consideration to be Deemed a Qualified Bid

Only those bids that are in material compliance in the Debtors' reasonable discretion (after consultation with the Constituent Parties, subject to the Constituent Party Objection Rights) with these Approved Bidding Procedures (each a "**Qualified Bid**," and each Bidder submitting a Qualified Bid, a "**Qualified Bidder**") will be eligible to participate in the Auction. To be considered a Qualified Bid, a bid must comply with all of the following provisions of this section:

(a)    The bid must be delivered, in writing, via physical delivery or via e-mail, to Mr. Joseph Greenwood of Livingstone Partners, LLC, 443 N. Clark St., Chicago, IL 60654, greenwood@livingstonepartners.com, such that the bid is actually received by Mr. Greenwood no later than 5:00 p.m. (prevailing Central time) on Friday, May 24, 2024 (the "**Bid Deadline**"). Bids received after the Bid Deadline may be precluded or considered to be Qualified Bids in the reasonable discretion of the Debtors (after consultation with the Constituent Parties, subject to the Constituent Party Objection Rights).  No later than 5:00 p.m. (prevailing central time) on the next calendar day after the Bid Deadline, but sooner if practicable, Mr. Greenwood shall (i) circulate any bid he receives to the Committee and CIBC , and (ii) confirm receipt of such bid to the

applicable Bidder. Any Bidder submitting a bid shall be solely responsible for meeting the Bid Deadline and verifying that its bid was actually and timely received.

(b)      The bid must include: (i) an executed Asset Purchase Agreement ("**APA**") substantially similar to the Form APA; and (ii) a redlined version of the APA marked to show changes to the Form APA.

(c)      The bid must include an earnest money deposit equal to two and one-half percent (2.5%) of the purchase price set forth in the bid in immediately available U.S. funds (each, a "**Deposit**"). Prior to the Bid Deadline, the Deposit is to be tendered via wire transfer to Chicago Title Insurance Company, or such other depository account as designated by the Debtors, at the instruction to be provided by the Debtors.

The Deposit shall bear interest and shall be conclusively deemed subject to the exclusive jurisdiction of the Bankruptcy Court upon receipt. Such Deposit shall be applied to the cash purchase price for a Bidder who submits the Prevailing Bid (including Back-Up Bidder(s), as defined below, that are required to consummate the transaction contemplated hereunder with the Debtors). In the event of the Prevailing Bidder's Failure to Close (as defined below), or the failure of the Back-Up Bidder(s) to close as required under these Approved Bidding Procedures, such bidder(s) shall forfeit the Deposit(s).

(d)      The bid must be accompanied with information about the Bidder's financial qualifications and its ability to consummate its bid and provide adequate assurance of future performance under assumed Executory Contracts / Leases. Such information shall include such Bidder's current financial statements (audited if they exist) or other similar financial information reasonably acceptable to the Debtors (after consultation with the Constituent Parties, subject to the Constituent Party Objection Rights) (the "**Bidder's Financial Qualifications**"). To the extent reasonably requested by the Debtors (after consultation with the Constituent Parties, subject to the Constituent Party Objection Rights), each Bidder may be required to supplement or explain the Bidder's Financial Qualifications no later than one (1) business day prior to the Auction upon written request by the Debtors to facilitate the Debtors' evaluation of such Bidder's ability to close on the sale contemplated hereby. The Bidder's Financial Qualifications, any supplemental information related thereto, and any explanation thereof, may be disclosed to the Debtors' agents, the Committee, and CIBC, and non-Debtor parties to Executory Contracts / Unexpired Leases who have requested proof of adequate assurance of future performance, subject to the confidentiality provisions of the Sale Procedures Order. At the reasonable discretion of the Debtors (after consultation with the Constituent Parties, subject to the Constituent Party Objection Rights), any Qualified Bidder making a Qualified Bid may be required to further supplement the Bidder's Financial Qualifications in order to be permitted to increase its Qualified Bid at the Auction. Failure of the Qualified Bidder to supplement the Bidder's Financial Qualifications, in the reasonable discretion of the Debtors (after consultation with the Constituent Parties, subject to the Constituent Party Objection Rights), may result in such Qualified Bidder being precluded from increasing the amount of its Qualified Bid at the Auction.

(e)    The bid must: (i) represent that the Bidder is prepared to immediately initiate all actions necessary to obtain all other applicable regulatory approvals, if any, for the submitted bid; and (ii) provide to the Debtors its good faith estimate of the time within which such approvals will be obtained.

(f)    Each bid must include a written commitment by the Bidder to serve as a Back-Up Bidder in the event that such Bidder's bid is not selected as the Prevailing Bid but is the next highest or otherwise best bid.

(g)    The bid must unless otherwise reasonably determined by the Debtor (after consultation with the Constituent Parties, subject to the Constituent Party Objection Rights):

> (i)    remain irrevocable until the docketing entry of the Sale Approval Order;

> (ii)    if approved at the Sale Hearing as either the Prevailing Bid(s) or the Back-Up Bid(s), remain irrevocable until the earliest of: (A) the Prevailing Bid Closing Date (as defined below); (B) fourteen (14) days following the entry of the Sale Approval Order (as defined below) in the case of the Prevailing Bid(s); and (C) in the case of the Back-Up Bid, the earlier of June 26, 2024 and receipt of the Declination Notice (as defined below);

> (iii)    clearly state that all consideration to be paid shall be cash and cash equivalents, and if applicable, any assumed liabilities;

> (iv)    not contain any financing contingency, regulatory contingency, release of liability contingency, indemnification contingency, or be subject to further due diligence review, board approval, or the receipt of any non-governmental consents;

> (v)    if applicable, provide documentation and/or instruments which demonstrate that the Bidder or its representative is legally empowered, by power of attorney or otherwise, financially capable, and registered under § 415 of the Federal Food, Drug, and Cosmetic Act (21 U.S.C. § 350d.) or other applicable federal law ("**Government Registration**"), to both bid on behalf of the Bidder and also to complete and sign, on behalf of the Bidder, a binding and enforceable APA, including as such agreement may be amended at the Auction;

> (vi)    identify each and every of the Executory Contracts / Unexpired Leases, the assumption and assignment of which the Bidder requires as a condition to closing, and provide evidence of the Bidder's ability to comply with Section 365 of the Bankruptcy Code with respect to such Executory Contracts / Unexpired Leases. Each Qualified Bidder shall be required to cooperate with Debtors in facilitating Debtors' compliance with Section 365 of the Bankruptcy Code;

(vii)   be for one or more of the Lots identified in the Form APA in the amount equal to or in excess of the minimum bid applicable to each Lot severally as set forth in the Form APA (the "**Lot Offer Minimum Bid**"), or in the case of a bid for all of the Sale Assets in Bulk, be equal to or greater than the Bulk Offer Minimum Bid (*i.e.*, $21,250,000.00), as defined and described in section 6 below; provided, however, that Qualified Bids in an amount less that the minimum bid applicable to each Lot as set forth in the Form APA may be submitted ~~if when~~and aggregated with another Qualified Bid(s)~~,~~ in the reasonable discretion of the Debtors (after consultation with the Constituent Parties, subject to the Constituent Party Objection Rights) such that the combined Qualified Bids aggregate to a bid which is higher and better than the Bulk Offer Minimum Bid; and provided further that the Debtors (after consultation with the Constituent Parties, subject to the Constituent Party Objection Rights), shall be under no obligation to proceed with such Qualified Bid(s) whether individually or in the aggregate; and

(viii)   not request or entitle the Bidder to any termination or break-up fee, expense reimbursement, or similar type of payment, with the sole exception of the Stalking Horse APA (as defined below).

(h)   The bid must disclose (i) the identity of the Bidder and each entity participating in connection with such bid, and the complete terms of such participation, and (ii) any other agreements, term sheets or other written or oral understandings between the Bidder and its affiliates, on one hand, and any current or former insider (as defined in 11 U.S.C. § 101(31)) of the Debtors, on the other hand (the "**Insider Disclosure**").

(i)   Any Bidder seeking to make a Qualified Bid, in Bulk or by Lot, pursuant to rights provided under Section 363(k) of the Bankruptcy Code, must clearly indicate the amount of such bid which will constitute its credit bid. For purposes of making a credit bid at the Auction, CIBC shall be deemed a Qualified Bidder, subject to the validity, priority, and extent of its liens. Further, CIBC shall have the absolute right to credit bid up to the full amount of all Obligations described in that certain *Secured Super-Priority Post Petition Credit Agreement* in order to purchase (either directly or through one or more acquisition vehicles) all or any portion of the DIP Collateral or the Pre-Petition Collateral as defined and described therein. In connection with the foregoing, CIBC shall have the right to assign its right to purchase all or any portion of Debtors' assets in connection with any such "credit bid" to a newly-formed acquisition vehicle that is an affiliate of CIBC; provided, however, that any such assignee of CIBC shall not have any shareholder, member, officer, director, or any Insider (as defined in Bankruptcy Code Section 101(31)) of any of the foregoing in common with any of the management, member, officer, director or shareholders of any Debtor or any Insider of any of the foregoing. CIBC shall also have the right, but not the obligation, to extend a loan or credit commitment to any Qualified Bidder(s) in support of any Bid(s) for the Sale Assets.

**The Debtors reserve the right to communicate with any Bidder to facilitate the curing of any deficiencies in a bid that is not initially deemed to be a Qualified Bid.**

**(6)**    **Stalking Horse**

Pursuant to the Sale Procedures Order, the Debtors have received an offer in a cash amount of Twenty Million Dollars ($20,000,000.00) plus the assumption of certain liabilities and certain yet to be identified Executory Contracts / Unexpired Leases (the "**Stalking Horse Bid**") pursuant to the Asset Purchase Agreement filed on the docket as ECF No. 56 (the "**Stalking Horse APA**"). The party submitting the Stalking Horse APA shall be referred to in these Approved Bidding Procedures as the "**Stalking Horse**." The Stalking Horse APA provides for Bid Protection (defined below), such that any bid seeking to compete with the Stalking Horse Bid for the Sale Assets in Bulk must exceed the Stalking Horse Bid by: (a) an amount of Two Hundred Fifty Thousand Dollars ($250,000.00) (the "**Initial Overbid Amount**"); and (b) a termination fee and expense reimbursement in the amount of One Million Dollars ($1,000,000.00) (the "**Break-Up Fee**"). The sum of the Initial Overbid Amount and the Break-Up Fee shall be deemed the "**Bid Protection**." Accordingly, to be deemed a Qualified Bid for the Sale Assets in Bulk, a bid must equal or exceed Twenty-One Million Two Hundred Fifty Thousand Dollars ($21,250,000.00), comprised of the Stalking Horse Bid plus the Bid Protection (the "**Bulk Offer Minimum Bid**").

In the event of one of the following occurrences, the Stalking Horse shall be entitled to payment of the Break-Up Fee:

(a) the Stalking Horse is declared to be the Back-Up Bidder, and there is a Prevailing Bidder(s) Closing, in which case, the Break-Up Fee shall be paid to the Stalking Horse at the Prevailing Bidder(s) Closing; or

(b) one or more Qualified Bidders, whether or not including the Stalking Horse, is declared the Prevailing Bidder(s) and/or Back-Up Bidder(s) for a sale in one or more Lots, as opposed to in Bulk, closes, in which case, the Break-Up Fee shall be paid to the Stalking Horse at the Closing thereof, provided however that in order to be entitled to the Break-Up Fee:.

provided, however, in each case that:

(i) the Stalking Horse must otherwise not be in default under any of its obligations under the Stalking Horse APA  (including as modified at or before the Auction); and

(ii) the Stalking Horse was otherwise ready, willing, and able to close on the Stalking Horse APA (including as modified at or before the Auction).

The Break-Up Fee shall be paid only out of the proceeds of a sale of any higher or otherwise better bids and shall not constitute an administrative- expense claim against the Debtors' estates if for any reason the Closing does not occur. The Break-Up Fee shall be payable by, and an obligation of, any credit bidder who is(s) deemed the Prevailing Bidder(s) or the

Back-Up Bidder.(s) and who close on such Prevailing Bid(s) or Back-Up Bid(s), with the Break-Up Fee paid pro rata by such credit bidder closes on its bid(s) according to the proportionate amount of the credit bid(s) submitted by such credit bidder(s) in the aggregate.

### (7)    Auction and Selection of Prevailing Bid and Back-up Bid

An open-outcry auction sale of the Sale Assets in accordance with these Approved Bidding Procedures (the "**Auction**") will be held at 10:00 a.m. (Central time) on May 29, 2024, at the offices of Adelman & Gettleman, Ltd., 53 W. Jackson Blvd., Suite 1050, Chicago, Illinois 60604, or at such later time or other place as the Debtors shall advise all Qualified Bidders and the Constituent Parties, subject to the Constituent Party Objection Rights. The Auction shall be conducted in the presence of a certified court reporter, who shall transcribe the proceedings for purposes of creating and preserving a record of the Auction.

For a Qualified Bidder to participate in the Auction, the Qualified Bidder must appear in person at the Auction or through a duly authorized representative, unless reasonable alternative arrangements are made in advance with the Debtors and their counsel (after consultation with the Constituent Parties, subject to the Constituent Party Objection Rights). If multiple Qualified Bids are received, each Bidder shall have the right to continue to improve its Qualified Bid at the Auction, provided however, that the Debtors (after consultation with the Constituent Parties, subject to the Constituent Party Objection Rights) shall not be obligated to consider any increases to a Qualified Bid which are inconsistent with the Bidder's Financial Qualifications and the Bidder's ability to consummate the transaction contemplated hereby.

Any Qualified Bidder shall be required to confirm on the record at the Auction that it has not engaged in any collusion or other conduct having a chilling effect on the sale with respect to the Approved Bidding Procedures, the Sale Assets, or the Auction.

Any Qualified Bidder shall be required to ratify its Insider Disclosure on the record at the Auction.

Bidding will commence with the announcement of the opening bid and will proceed with open out-cry, subsequent overbids in an amount equal to Fifty Thousand Dollars ($50,000.00), but the Debtors may modify such increment(s) at the Auction (after consultation with the Constituent Parties, subject to the Constituent Party Objection Rights). When bidding at the Auction in Bulk, but not in Lots, the Stalking Horse shall receive a cash credit in the amount of the Break-Up Fee and shall be allowed to bid the Break-Up Fee.

The prevailing bid at the Auction shall be the bid(s) determined by the Debtors, in their reasonable discretion, in (after consultation with the Constituent Parties, subject to the Constituent Party Objection Rights), to be the highest and best offer for the Sale Assets (the "**Prevailing Bid(s)**"), with the Qualified Bidder(s) submitting such Prevailing Bid(s) being deemed the "**Prevailing Bidder(s)**." Additionally, (after consultation with the Constituent Parties, subject to the Constituent Party Objection Rights), the Debtors may (but are not required to) determine the second-highest-and-best offer for the Sale Assets (the "**Back-Up Bid(s)**"), with the Qualified Bidder(s) submitting such Back-Up Bid(s) being deemed the "**Back-Up Bidder(s).**" At the Debtors' option, the Debtors may accept the Back-Up Bid(s) in lieu of the

Prevailing Bid(s) if the Prevailing Bid(s) do not close on or before the designated closing date Prevailing Bid Closing Date (as defined in Section 10 below).

To determine the Prevailing Bid(s) and the Back-Up Bid(s), the Debtors (after consultation with the Constituent Parties, subject to the Constituent Party Objection Rights), may evaluate one or more bids for the Sale Assets in Lots that, when taken together, and after considering the risks associated with consummating bids for multiple Lots: (a) collectively constitute a higher or otherwise better bid than the Stalking Horse Bid, or (b) propose a purchase price for the Lots that, when taken together with the liquidation or alternative sale value of the Sale Assets to be acquired pursuant to the Stalking Horse APA exceeds the Stalking Horse Bid after taking into account the Break-Up Fee, as determined by the Debtors (after consultation with the Constituent Parties, subject to the Constituent Party Objection Rights).

The Debtors reserve the right (after consultation with the Constituent Parties, subject to the Constituent Party Objection Rights) to work with: (a) potential bidders to aggregate two or more bids into a single consolidated bid prior to the Bid Deadline and/or (b) Qualified Bidders to aggregate two or more Qualified Bids into one or more transaction(s) which collectively constitute a higher or otherwise better bid than the Stalking Horse Bid after considering the Break-Up Fee prior to the conclusion of the Auction.

If no other Qualified Bid is received by the Bid Deadline, or the Debtors receive one or more Qualified Bids for a sale in one or more Lots which the Debtors do not reasonably believe (after consultation with the Constituent Parties, subject to the Constituent Party Objection Rights) to be a higher or otherwise better bid than the Staking Horse Bid when taking into account the Break-Up Fee, then the Debtors reserve the right (after consultation with the Constituent Parties, subject to the Constituent Party Objection Rights). to cancel the Auction, and the Debtors shall, at the Sale Hearing, request: (a) that the Stalking Horse Bid be deemed the highest and best offer for the Sale Assets, and be deemed the Prevailing Bid; (b) authority to consummate the Stalking Horse APA, including the assumption and assignment of Executory Contracts / Unexpired Leases; and (c) entry of the Sale Approval Order.

**(8)**   **Sale Hearing**

Any Qualified Bids that are accepted by the Debtors at the Auction (after consultation with the Constituent Parties, subject to the Constituent Party Objection Rights), as the Prevailing Bid(s) and the Back-Up Bid(s) will be subject to approval by the Bankruptcy Court. Please be advised that the hearing to approve such bids will be held before the Honorable David D. Cleary, United States Bankruptcy Judge, in the United States Bankruptcy Court for the Northern District of Illinois, Eastern Division, Dirksen Federal Building, 219 S. Dearborn, Room 644, Chicago, Illinois 60604 (the "**Sale Hearing**") at 10:30 a1:00 p.m. (Central time) on June 5, 2024, or such later time and place as the Debtors shall notify all Qualified Bidders.

At the Sale Hearing, the Debtors shall request entry of one or more Orders (collectively, the "**Sale Approval Order**") approving the consummation of the sale contemplated hereby, in form and substance acceptable to the Debtor, the Constituent Parties, the Prevailing Bidder(s),

and the Back-Up Bidder(s), or as otherwise ordered by the Court in the absence of agreement by the each of the foregoing.

**(9)**     **Return of Deposits**

Except as otherwise set forth herein, as soon as practicable (but in no event later than five (5) business days) upon entry on the docket of the Sale Approval Order, the Debtors shall return to each unsuccessful Qualified Bidder (other than the Prevailing Bidder(s) and the Back-Up Bidder(s)) the Deposit submitted by such Qualified Bidder.

~~Upon the completion of~~Within three (3) business days following the Prevailing Bid Closing Date or the submission of a Declination Notice to the Back-Up Bidder(s), the Debtors shall return to the Back-Up Bidder(s) the Deposit(s) submitted by the Back-Up Bidder(s).

**(10)**     **Closing**

Upon entry on the docket of the Sale Approval Order, the Prevailing Bidder(s) and the Debtors shall consummate the Court-approved transaction on the latest of (i) June 12, 2024, (ii) five (5) calendar days after entry on the docket of the Sale Approval Order, and (iii) such other date as agreed between Purchaser and Debtors (after consultation with the Constituent Parties, subject to the Constituent Party Objection Rights) but in no event beyond June 19, 2024 (the "**Prevailing Bid Closing Date**").

~~At~~On the Prevailing Bid Closing Date, the Deposit(s) of the Prevailing Bidder(s) will be applied against the purchase price to be paid by the Prevailing Bidder(s).

**(11)**     **Failure of Prevailing Bidder(s) to Close**

If the Prevailing Bidder(s) fail to close on or before the Prevailing Bid Closing Date and the Debtors are otherwise able to consummate the sale (a "**Prevailing Bidder's Failure to Close**"), the Deposit(s) of the Prevailing Bidder(s), shall be conclusively and irrevocably forfeited to, and become property of, the Debtors.

In the event of a Prevailing Bidder's Failure to Close, the Back-Up Bidder(s) shall be required to consummate the transactions contemplated in the Back-Up Bid(s) at the purchase price so offered without further act, deed, or order of the Bankruptcy Court within five (5) business days following receipt of a notice from the Debtors of a Prevailing Bidder's Failure to Close, unless the Debtors (after consultation with the Constituent Parties, subject to the Constituent Party Objection Rights) provide written notice to the Back-Up Bidder(s) of their intent not to accept the Back-Up Bid(s) (a "**Declination Notice**"). In the event of a closing of the transaction under the Back-Up Bid, the Deposit(s) of the Back-Up Bidder(s) shall be applied against the purchase price to be paid by the Back-Up Bidder(s). If, in the event of a Prevailing Bidder's Failure to Close, and absent a Declination Notice, the Back-Up Bidder(s) fail to close timely and in accordance with the terms of the Back-Up Bid(s), the Deposit(s) of the Back-Up Bidder(s) shall be forfeited to, and become property of, the Debtors.

The Back-Up Bidder(s) shall be obligated to hold open the Back-Up Bid until the completion of the earliest of: (A) the Prevailing Bid Closing Date; (B) fourteen (14) days following the entry on the docket of the Sale Approval Order June 26, 2024; (C) receipt of a Declination Notice; or (D) such other date as may be agreed upon between the Debtors (after consultation with the Constituent Parties, subject to the Constituent Party Objection Rights) and the Back-Up Bidder.

### (12)    Reservation of Rights and Highest and Best Bids

Except as otherwise provided in the Sale Procedures Order, the Debtors reserve the right, as they may reasonably determine to be in the best interests of its estate (after consultation with the Constituent Parties, subject to the Constituent Party Objection Rights) to: (a) determine which Bidders Bidder(s) are Qualified Bidders Bidder(s); (b) determine which bids bid(s) are Qualified Bids Bid(s); (c) determine which Qualified Bid or combination of Qualified Bids is the highest or otherwise best proposal and which is the next highest or otherwise best proposal, and thus, determine the Prevailing Bid(s) and the Back-Up Bid(s) in Bulk or by Lots; and (d) reject any bid that is: (i) inadequate or insufficient; (ii) not in conformity with the requirements of these Approved Bidding Procedures or the requirements of the Bankruptcy Code; or (iii) contrary to the best interests of the Debtors and their estates, provided, however, that. Notwithstanding the foregoing, no bid shall be rejected solely on the basis that it is a credit bid. Nothing and nothing contained herein shall prejudice or impair rights under Section 363(k) of the Bankruptcy Code. The Debtors further reserve all rights (after consultation with the Constituent Parties, subject to the Constituent Party Objection Rights) to modify or impose, at or prior to the Auction, additional terms and conditions on the sale of the Sale Assets, to extend or adjourn any deadlines set forth herein, and to take any other actions with respect to the Auction, the Sale Hearing or the sale of the Sale Assets which in their business judgment, and (after consultation with the Constituent Parties, subject to the Constituent Party Objection Rights) are reasonably necessary to preserve the bankruptcy estates or maximize the value thereof.

In determining which Qualified Bid(s) is(are) the highest and best proposal, and which is(are) the next highest or otherwise best proposal, in connection with both the Auction, the Debtors (after consultation with the Constituent Parties, subject to the Constituent Party Objection Rights) will evaluate the Qualified Bid(s) for each Lot or Lots. It is expressly contemplated by these Approved Bidding Procedures that there may be a Prevailing Bid(s) and Back-Up Bid(s) for an applicable individual Lot or subset of multiple Lots. The Debtors (after consultation with the Constituent Parties, subject to the Constituent Party Objection Rights) may also consider factors other than the purchase price in determining the highest and best bid, including, but not limited to, each Bidder's: financial wherewithal, assumption of the Debtors' liabilities and Executory Contracts / Unexpired Leases, and ability to close in accordance with these Approved Bidding Procedures.

### (13)    Miscellaneous

Nothing contained in these Approved Bidding Procedures or in the Sale Procedures Order shall create any rights in any other person or Bidder (including without limitation rights as third-party beneficiaries or otherwise) other than the rights expressly granted to the Prevailing

Bidder(s) or the Back-Up Bidder(s) under the Sale Procedures Order, these Approved Bidding Procedures, and the Auction.

Except as provided in the Sale Procedures Order and these Approved Bidding Procedures, the Bankruptcy Court shall retain authority and jurisdiction to hear and determine all matters arising from or relating to the implementation of the Sale Procedures Order and any order entered in connection with the Sale Hearing.

## NOTICE REGARDING EXECUTORY CONTRACTS AND UNEXPIRED LEASES

PLEASE TAKE NOTICE that the Sale Procedures Order contains a process for fixing the cure amounts related to the Debtors' potential assumption, assignment, and/or transfer of executory contracts, unexpired leases, and other agreements ("**Executory Contracts / Unexpired Leases**"). Parties whose Executory Contracts / Unexpired Leases are designated for assumption and assignment in connection with a Qualified Bid will receive a *Notice of Potential Assumption and Assignment of Executory Contracts and Unexpired Leases* (an "**Assumption Notice**") and/or a supplemental assumption notice (a "**Supplemental Assumption Notice**") identifying the applicable Executory Contracts / Unexpired Leases and the proposed cure amounts in connection with such assumption and assignment. Objections to assumption and assignment of Executory Contracts / Unexpired Leases, including objections to cure amounts and objections to adequate assurance of future performance, must be filed and served at or before 5:00 p.m. prevailing Central time on ~~May 28~~June 4, 2024. Parties to Executory Contracts / Unexpired Leases are advised to (i) be prepared to review the Assumption Notice and/or Supplemental Assumption Notice either before, or shortly after, the Bid Deadline, and (ii) provide the undersigned proposed counsel to the Debtors with their email address or other preferred contact information for receipt of the Assumption Notice and/or Supplemental Assumption Notice.

~~Dated: May ___, 2024~~

*These Approved Bidding Procedures Prepared by*:

ADELMAN & GETTLEMAN, LTD.
Howard L. Adelman, Esq.
Adam P. Silverman, Esq.
Alexander F. Brougham, Esq.
53 West Jackson Blvd., Suite 1050
Chicago, Illinois 60604
312-435-1050
hadelman@ag-ltd.com
asilverman@ag-ltd.com
abrougham@ag-ltd.com

<u>Exhibit B</u> to

*Order: (a) Approving Sale Process, Including a Stalking Horse Asset Purchase Agreement; (b) Approving Procedures for Assumption and Assignment of Executory Contracts and Unexpired Leases; (c) Approving Form Notices; (d) Excusing Page Limit; and (e) Scheduling a Public Auction and a Sale Approval Hearing*:

## Summary Sale Notice

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| Oberweis Dairy, Inc., *et al.*,[1] | ) | Case No. 25-05385 |
| | ) | (Jointly Administered) |
| Debtors. | ) | |
| | ) | Honorable David D. Cleary |
| _____ | ) | |

**SUMMARY NOTICE OF SALE OF ALL OR
SUBSTANTIALLY ALL ASSETS OF DEBTOR**

TO:      ALL CREDITORS AND INTERESTED PARTIES

**PLEASE TAKE NOTICE** that the U.S. Bankruptcy Court for the Northern District of Illinois, Eastern Division (the "**Bankruptcy Court**"), in the above-referenced cases (collectively the "**Chapter 11 Cases**") of Oberweis Dairy, Inc., The Oberweis Group, Inc., North Aurora Ice Cream, LLC, TOGI RE I, LLC, Third Millennium Real Estate L.L.C., and TOGI Brands, LLC (collectively, the "**Debtors**") has entered an order dated _____, 2024 [Docket No. ____] (the "**Sale Procedures Order**") granting the Debtors' motion to approve a sale process; schedule a public auction to solicit bids for the sale of all or substantially all of the Debtors' assets; and schedule a final hearing to approve such sale [Docket No. ____] (the "**Sale Motion**"). The Sale Procedures Order and Sale Motion contemplate that the Debtors will sell all or substantially all of their assets and their business as a going concern (the "**Sale Assets**"), in bulk or piecemeal, on an "AS IS, WHERE IS" basis, with all faults of any kind or nature, free and clear of all liens, claims, encumbrances, and interests of any kind or nature, in one or more lots.

Among other things, the Sale Procedures Order approved (a) a Stalking Horse Asset Purchase Agreement filed on the Court's Docket as ECF No. 56 (the "**Stalking Horse APA**"); (b) the form of an asset purchase agreement setting forth the terms under which the Debtors intend to offer the Sale Assets for sale to other bidders, in bulk or by lot, to compete with the Stalking Horse APA filed on the Court's Docket as ECF No. 57 (the "**Form APA**"); and (c) certain bidding procedures (the "**Approved Bidding Procedures**") for the auction and sale of the Sale Assets. The Stalking Horse APA, Form APA and Approved Bidding Procedures contain detailed descriptions of the Sale Assets, due diligence opportunities, the bidding process, certain bid protection and break-up-fee requirements, reservations of rights, qualifying bidders' participation requirements, the bid deadline, the auction, the sale hearing to approve the sale resulting from the auction, various deadlines related to the foregoing, and related information.

---

[1] The Debtors in this case, and the last four digits of their respective federal employer identification numbers, are Oberweis Dairy, Inc. ('7516); The Oberweis Group, Inc. ('1378); North Aurora Ice Cream, LLC ('8506); TOGI RE I, LLC ('5952); Third Millennium Real Estate L.L.C. ('1589); and TOGI Brands, LLC ('7072).

Complete copies of the Sale Procedures Order, Sale Motion, Stalking Horse APA, Form APA, and Approved Bidding Procedures may be obtained by visiting www.cptgroupcaseinfo.com/OberweisDairyInc/, or by written request to the Debtors' counsel or investment banker below. Additional information may also be obtained from the Debtors' counsel or investment banker below.

**PLEASE TAKE FURTHER NOTICE** that the Debtors will conduct a public auction to offer the Sale Assets for sale at the office of its counsel identified below on May 29, 2024, at 10:00 a.m. prevailing Central time, or at such other place and time as may be announced by the Debtors ("**Auction**"). All objections to the sale of the Sale Assets must be filed and served, in the manner set forth in the Sale Procedures Order, on or before 5:00 Central time on June 3, 2024. A hearing to approve the highest and best offer(s) received at the Auction is scheduled for June 5, 2024, at ~~10:30 a~~1:00 p.m. prevailing Central time, in Courtroom 644, 219 Dearborn Street, Chicago, Illinois before the Honorable David D. Cleary, presiding U.S. Bankruptcy Judge in the Chapter 11 Cases, or such later time or other place as the Bankruptcy Court shall direct ("**Sale Hearing**"). The Sale Hearing may be adjourned or rescheduled without notice by an announcement of the adjourned date at the Sale Hearing.

**PLEASE TAKE FURTHER NOTICE** that, following the Sale Hearing, the Bankruptcy Court may enter an order containing, among other things, an injunction preventing creditors and other parties from pursuing claims against the purchaser(s) of the Sale Assets.

Dated: _____, 2024.

| Debtors' Counsel | Debtors' Investment Banker |
|---|---|
| ADELMAN & GETTLEMAN, LTD. | LIVINGSTONE PARTNERS LLC |
| Howard L. Adelman, Esq. | Joseph Greenwood |
| Adam P. Silverman, Esq. | 443 N. Clark |
| Alexander F. Brougham, Esq. | Chicago, IL 60654 |
| Tevin D. Bowens, Esq. | 312-670-5913 |
| 53 West Jackson Blvd., Suite 1050 | greenwood@livingstonepartners.com |
| Chicago, Illinois 60604 | |
| 312-435-1050 | |
| hadelman@ag-ltd.com | |
| asilverman@ag-ltd.com | |
| abrougham@ag-ltd.com | |
| tbowens@ag-ltd.com | |

# <u>Exhibit C</u> to

## *Order: (a) Approving Sale Process, Including a Stalking Horse Asset Purchase Agreement; (b) Approving Procedures for Assumption and Assignment of Executory Contracts and Unexpired Leases; (c) Approving Form Notices; (d) Excusing Page Limit; and (e) Scheduling a Public Auction and a Sale Approval Hearing*:

# Assumption Notice

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| Oberweis Dairy, Inc., *et al.*,[1] | ) | Case No. 25-05385 |
| | ) | (Jointly Administered) |
| Debtors. | ) | |
| | ) | Honorable David D. Cleary |
| | ) | |

**NOTICE OF POTENTIAL ASSUMPTION AND ASSIGNMENT**
**OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES**

TO THE NON-DEBTOR PARTIES TO EXECUTORY CONTRACTS AND UNEXPIRED
LEASES:

**PLEASE TAKE NOTICE AS FOLLOWS:**

1.     **Chapter 11 Cases** - On _____, 2024, the United States Bankruptcy Court for
the Northern District of Illinois, Eastern Division entered an order (the "**Sale Procedures Order**")[2]
in the above-captioned Chapter 11 cases (the "**Chapter 11 Cases**") of Oberweis Dairy, Inc., The
Oberweis Group, Inc., North Aurora Ice Cream, LLC, TOGI RE I, LLC, Third Millennium Real
Estate L.L.C., and TOGI Brands, LLC (collectively, the "**Debtors**") approving, among other things,
the process for fixing the cure amounts related to the Debtors' potential assumption, assignment
and/or transfer of certain executory contracts, unexpired leases and other agreements (the "**Executory
Contracts / Unexpired Leases**") in connection with the sale of all or substantially all the Debtors'
assets and business as a going concern (the "**Asset Sale**").

2.     **Notice of Proposed Assignment and Cure Amount** - Set forth on Exhibit A is a list
of Executory Contracts / Unexpired Leases that the Debtors *may potentially seek to have assumed
and assigned to the Prevailing Bidder(s) or Back-Up Bidder(s) at the Sale Hearing*.  **PARTIES
RECEIVING THIS NOTICE SHOULD LOCATE THEIR NAMES AND THEIR
CONTRACTS OR LEASES LISTED IN EXHIBIT A.**  Exhibit A also contains the cure amounts
the Debtors' books and records reflect are necessary to assume and assign such Executory Contracts /

---

[1] The Debtors in these cases, and the last four digits of their respective federal employer identification
numbers, are Oberweis Dairy, Inc. ('7516); The Oberweis Group, Inc. ('1378); North Aurora Ice Cream, LLC
('8506); TOGI RE I, LLC ('5952); Third Millennium Real Estate L.L.C. ('1589); and TOGI Brands, LLC
('7072).

[2] Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Sale
Procedures Order or Approved Bidding Procedures, as the case may be, copies of which may be obtained as
set forth in Paragraph 6 hereof.

1319022_2 1320702_3

Unexpired Leases pursuant to section 365 of the Bankruptcy Code (each a "**Cure Amount**").  The Debtors believe that the payment of each Cure Amount will cure any and all defaults and pecuniary losses under the corresponding Executory Contract / Unexpired Lease. Each Executory Contract / Unexpired Lease may be assumed and assigned to any purchaser of the Debtors' assets who ~~(i)~~ is the Prevailing Bidder or the Back-Up Bidder at the Asset Sale~~, and (ii)~~ agrees (i) to the corresponding Cure Amount or ~~provides reasonable evidence of a contrary amount~~(ii) to such other amount that is acceptable to the Debtors (after consultation with the Constituent Parties, subject to the Constituent Party Objection Rights). If the Debtors identify additional executory contracts or unexpired leases that might be assumed by the Debtors and assigned to the Prevailing Bidder(s) or Back-Up Bidder(s) not set forth in this Notice, the Debtors will promptly send a supplemental notice (a "**Supplemental Assumption Notice**") to the non-Debtor parties to such additional executory contracts and unexpired leases. In addition, on or before 11:59 p.m. on May 26, 2024, the Debtors shall promptly send the Supplemental Assumption Notice by facsimile, overnight delivery, or such other form of notice authorized by the recipient (including CM/ECF and/or email) to the applicable counterparties to any additional Executory Contracts / Unexpired Leases not included on Exhibit A hereto that are proposed to be assumed as of the Qualified Bid Deadline by the Stalking Horse Bidder or any other Qualified Bidder. This Supplemental Assumption Notice shall set forth for such applicable counterparties the same information as is required by the Assumption Notice. A Supplemental Assumption Notice shall also be sent to any applicable counterparties to Executory Contracts / Unexpired Leases identified in any Qualified Bid received by the Debtors as of 11:59 p.m. on May 26, 2024, whose Cure Amount in that Qualifying Bid (which amount shall be specifically quantified in the Supplemental Assumption Notice) is less than the Cure Amount set forth on Exhibit A hereto.

3.  **Assumption and Cure Objections** - Any objection of a non-Debtor party to an Executory Contract / Unexpired Lease to the Cure Amount set forth in Exhibit A to this Notice or to the proposed assumption and assignment of such Executory Contract / Unexpired Lease (a "**Cure Amount/Assumption Objection**") must (a) be in writing, and (b) provide the basis for the objection, including any cure amount claimed to be due with supporting documentation. To be considered a timely Cure Amount/Assumption Objection, the Cure Amount/Assumption Objection must be filed with the Clerk of the U.S. Bankruptcy Court, Northern District of Illinois, Eastern Division, Dirksen Federal Building, 219 S. Dearborn Street, Room 713, Chicago, Illinois, and served upon: (i) counsel to the Debtors, Howard Adelman, Adam Silverman, and Alexander F. Brougham of Adelman & Gettleman, Ltd., 53 West Jackson Boulevard, Suite 1050, Chicago, Illinois 60604; (ii) counsel to CIBC Bank USA, Eric S. Rein of Kilpatrick Townsend & Stockton LLP, 500 West Madison Street, Suite 3700, Chicago, Illinois 60661; (iii) the Office of the United States Trustee for Region 11, 219 S. Dearborn Street, Room 873, Chicago, Illinois 60604; and (iv) counsel to the Official Committee of Unsecured Creditors, Steve Jakubowski and Carolina Sales of Robbins DiMonte, Ltd., 180 North LaSalle Street, Suite 3300, Chicago, Illinois 60601, by **5:00 p.m. CDT on ~~May 28~~June 4, 2024** (the "**Cure Amount/Assumption Objection Deadline**"). For avoidance of doubt, service of a Cure Amount/Assumption Objection to the foregoing persons through the Court's CM/ECF system will expressly satisfy the service requirement. A Cure Amount/~~Assumption~~Assignment Objection ~~may~~must include ~~an~~any objection ~~on~~relating to the ~~basis~~adequacy of ~~the right to obtain adequate~~ assurance of future performance ~~from a given purchaser (an~~regarding such Executory Contract/Lease

2

by the Prevailing Bidder(s) or the Back-Up Bidder(s) (the "**Adequate Assurance Objection**"), which shall also be filed by the Cure Amount/Assignment Objection Deadline.

4.      **Assumption and Cure Objection Hearing** - The In the event that the Debtors and any objecting party are unable to consensually resolve any Cure Amount/Assignment Objection prior to the Sale Hearing, the Court will attempt to resolve any and all timely filed such Cure Amount/Assumption Objections, including Assignment Objection and any Adequate Assurance Objections, Objection at the hearing to consider approval of the Asset Sale, to be held on **June 5, 2024 at** 10:30 a **1:00 p.m. CDT** at the United States Bankruptcy Court, Northern District of Illinois, Eastern Division, Dirksen Federal Building, 219 S. Dearborn, Courtroom 644, Chicago, Illinois 60604, or such other time as may be ordered by the Court (the "**Sale Hearing**"). To the extent necessary, the Debtors (after consultation with the Constituent Parties, subject to the Constituent Party Objection Rights) shall arrange for the Debtors, the Prevailing Bidder(s), the Back-Up Bidder(s), or any other party, as the case may be, to escrow all disputed Claimed Cure Amounts pending resolution with the Court. **Please be advised that if you do file an objection you and/or your attorney will be expected to attend the Sale Hearing or the Court may grant the relief sought in the Sale Motion over such written objection.** Appearance by Zoom may be permitted in accordance with the Court's local rules and procedures.

5.      **If No Cure Amount/Assumption Objection is Timely Filed** - If a Cure Amount/Assumption Objection, including an Adequate Assurance Objection, is <u>not</u> timely filed and served by the Cure Amount/Assumption Objection Deadline with respect to any Executory Contract / Unexpired Lease, then (a) the Debtors will be authorized, but not directed, to assume and assign such Executory Contract / Unexpired Lease; (b) the Cure Amount set forth in this Notice or the Supplemental Assumption Notice will constitute the final determination of the total cure amount Cure Amount required to be paid by the Debtors on such Executory Contract / Unexpired Lease pursuant to 11 U.S.C. § 365 for purposes of the Sale Order; and (c) the non-Debtor party to such Executory Contract / Unexpired Lease will be: (i) forever barred and estopped from objecting to the Cure Amount or seeking any additional cure payments on such Executory Contract / Unexpired Lease, whether from the Debtors, the Prevailing Bidder(s), any Back-Up Bidder(s), or any other assignee; (ii) deemed to have waived any right to terminate such Executory Contract / Unexpired Lease as a result of any default which may have occurred under such Executory Contract / Unexpired Lease prior to the assumption date to the extent such Executory Contract / Unexpired Lease is identified as a Sale Asset by and assigned to the Prevailing Bidder or(s), Back-Up Bidder(s), or any assignee thereof; (iii) deemed to have agreed that the Sale Procedures Order applies and is enforceable with respect to the assumption and assignment of such Executory Contract / Unexpired Lease; (iv) deemed to have agreed that all defaults under such Executory Contract / Unexpired Lease arising or continuing prior to the assumption date have been fully cured and satisfied; (v) barred from asserting an Adequate Assurance Objection; and (vi) deemed to have consented to the assumption, assignment, and transfer of such Executory Contract / Unexpired Lease to the Prevailing Bidder(s), Back-Up Bidder(s) or any assignee thereof on all matters.

6.      **Requests for Copies and Information** - Copies of the Sale Motion and exhibits thereto, the Bidding Procedures Order, and/or the proposed Sale Order may be obtained by: (a)

3

accessing the case docket at www.cptgroupcaseinfo.com/OberweisDairyInc/; or (b) written request to the Debtors' counsel, Adelman & Gettleman, Ltd., 53 W. Jackson Blvd., Suite 1050, Chicago, IL 60604, Attn: Howard Adelman, Adam Silverman, and Alexander Brougham. Any inquiries regarding the information provided herein should be directed to the Debtors' counsel at the address noted below.

~~7~~

7.      **Proof of Adequate Assurance** - Parties to Executory Contracts / Unexpired Leases may obtain proof of adequate assurance of future performance by potential purchasers by written request to the Debtors' counsel after the Bid Deadline, subject to certain confidentiality requirements set forth in the Sale Procedures Order.

8.      **Notice** - This Notice is made expressly subject to the Sale Motion, the Sale Procedures Order, and the ~~underlying bidding procedures~~Approved Bidding Procedures. To the extent that this Notice is inconsistent with the terms contained in the Sale Procedures Order, the Sale Procedures Order shall control.  Notwithstanding the reference to any contract as an "Executory Contract / Unexpired Lease" in this Notice, the Debtors reserve all of their rights with respect to whether or not any contract is an "executory contract" or "unexpired lease" pursuant to the Bankruptcy Code.~~ The and the~~ inclusion of any document on Exhibit A shall not constitute or be deemed to be a determination or admission that such document is, in fact, an executory contract or unexpired lease within the meaning of the Bankruptcy Code.

Dated:  _____, 2024          OBERWEIS DAIRY, INC., *et al*.,
                                        Debtors and Debtors-in-Possession

                                        By:  /s/ DRAFT
                                              One of their Attorneys

Howard L. Adelman, Esq. (ARDC #0015458)
Adam P. Silverman, Esq. (ARDC #6256676)
Alexander F. Brougham, Esq. (ARDC #6301515)
Tevin D. Bowens, Esq. (ARDC #6338559)
ADELMAN & GETTLEMAN, LTD.
53 West Jackson Boulevard, Suite 1050
Chicago, Illinois 60604
Phone: (312) 435-1050
hadelman@ag-ltd.com
asilveman@ag-ltd.com
abrougham@ag-ltd.com
tbowens@ag-ltd.com

~~1319022_2~~
1320702_3