**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| Oberweis Dairy, Inc., *et al.*,[1] | ) | Case No. 24-05385 |
| | ) | (Jointly Administered) |
| Debtors. | ) | |
| | ) | Honorable David D. Cleary |
| | ) | |
| | ) | **Hearing Date: Wednesday May 22, 2024** |
| | ) | **Hearing Time: 11:00 a.m.** |

**NOTICE OF MOTION**

PLEASE TAKE NOTICE that on Wednesday May 22, 2024 at 11:00 a.m. CDT we will appear before the Honorable David D. Cleary, or any judge sitting in that judge's place, **either** in courtroom 644 of the Dirksen Federal Building, 219 S. Dearborn Street, Chicago, Illinois, 60604 **or** electronically as described below, and present the **AMENDED MOTION FOR ENTRY OF AN ORDER AUTHORIZING THE DEBTORS TO ENTER INTO RETENTION BONUS AGREEMENTS WITH CERTAIN NON-INSIDER KEY EMPLOYEES PURSUANT TO 11 U.S.C. §§105 AND 363(B)**, a copy of which is attached.

**Important: Only parties and their counsel may appear for presentment of the motion electronically using Zoom for Government. All others must appear in person.**

**To appear by Zoom using the internet**, go to this link: https:// www.zoomgov.com/. The enter the meeting ID and passcode.

**To appear by Zoom using a telephone**, call Zoom for Government at 1-669-254-5252 or 1-646-828-7666. Then enter the meeting ID and passcode.

**Meeting ID and passcode.** The meeting ID for this hearing is **161 122 6457**, and the passcode is **Cleary644**. The meeting ID and passcode can also be found on the judge's page on the court's web site.

**If you object to this motion** and want it called on the presentment date above, you must file a Notice of Objection no later than two (2) business days before that date. If a Notice of Objection is timely filed, the motion will be called on the presentment date. If no Notice of Objection is timely filed, the court may grant the motion in advance without calling it.

By: /s/ Howard L. Adelman

---

[1] The Debtors in these case, and the last four digits of their respective federal employer identification numbers, are Oberweis Dairy, Inc. ('7516); The Oberweis Group, Inc. ('1378); North Aurora Ice Cream, LLC ('8506); TOGI RE I, LLC ('5952); Third Millennium Real Estate L.L.C. ('1589); and TOGI Brands, LLC ('7072).

1321672_3

Proposed Counsel for the Debtors

HOWARD L. ADELMAN, ESQ. (ARDC# 0015458)
ADAM P. SILVERMAN, ESQ. (ARDC #6256676)
ALEXANDER F. BROUGHAM, ESQ. (ARDC #6301515)
TEVIN D. BOWENS, ESQ. (ARDC #6338559)
ADELMAN & GETTLEMAN, LTD.
53 West Jackson Blvd., Suite 1050
Chicago, Illinois 60604
Tel (312) 435-1050
Fax (312) 435-1059
**Counsel for the Debtors**

### CERTIFICATE OF SERVICE

The undersigned, an attorney, certifies that he served a copy of this notice and the attached motion on each entity shown on the attached list at the address shown and by the method indicated on the list on May 20, 2024, at or before 11:59 p.m.

By: /s Howard L. Adelman
Howard L. Adelman

**SERVICE LIST**

**VIA CM/ECF**

- Howard L. Adelman     hla@ag-ltd.com, dbaird@ag-ltd.com
- R Scott Alsterda     rsalsterda@nixonpeabody.com
- Joseph Allen Archambeau     JArchambeau@ClarkHill.com
- Debra Devassy Babu     ddevassy@askounisdarcy.com, hhofmeister@darcydevassy.com
- Tevin D. Bowens     tbowens@ag-ltd.com, kruvalcaba@ag-ltd.com
- Alexander F Brougham     abrougham@ag-ltd.com, dbaird@ag-ltd.com
- Daniel Brown     drb@williamsbarbermorel.com
- Steven B Chaiken     schaiken@ag-ltd.com, srodela@ag-ltd.com
- Aaron B Chapin     aaron.chapin@huschblackwell.com, litigation.docket@huschblackwell.com;Georgia.Kimbrough@huschblackwell.com;Docket.CHI@huschblackwell.com;Billie.Fatheree@huschblackwell.com
- Nathan E Delman     ndelman@ktslaw.com, ecfnotices@ktslaw.com
- Travis J Eliason     teliason@clarkhill.com, blambert@clarkhill.com
- Elise S Frejka     efrejka@frejka.com
- Robert Jeffrey Haupt     robert.haupt@lathropgpm.com, ellen.mchone@lathropgpm.com
- Steve Jakubowski     sjakubowski@robbinsdimonte.com, steve.jakubowski.lp@gmail.com
- Jeffrey Kurtzman     kurtzman@kurtzmansteady.com
- Patrick S Layng     USTPRegion11.ES.ECF@usdoj.gov
- Henry B. Merens     hbm@ag-ltd.com, kburde@ag-ltd.com
- Justin M Mertz     jmmertz@michaelbest.com, jcalmes@michaelbest.com;courtmail@michaelbest.com
- Bryan E. Minier     bryan.minier@lathropgpm.com, maria.vargas@lathropgpm.com;sujey.lara@lathropgpm.com
- Raymond J Ostler     rostler@gsgolaw.com
- Richard C Perna     rperna@frltd.com, pgutierrez@frltd.com
- Paul B. Poracky     PPoracky@KBLegal.net
- Eric S. Rein     rrein@ktslaw.com, ecfnotices@ktslaw.com
- Carolina Y. Sales     csales@robbinsdimonte.com, mrussell@robbinsdimonte.com;jtronina@robbinsdimonte.com
- Adam P. Silverman     asilverman@ag-ltd.com, kburde@ag-ltd.com
- Charles S. Stahl     cstahl@smbtrials.com
- Edmund G Urban     bknotices@urbanburt.com
- Eric R von Helms     evonhelms@kmksc.com

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| Oberweis Dairy, Inc., *et al.*,[1] | ) | Case No. 24-05385 |
| | ) | (Jointly Administered) |
| Debtors. | ) | |
| | ) | Honorable David D. Cleary |
| | ) | |
| | ) | **Hearing Date: Wednesday May 22, 2024** |
| | ) | **Hearing Time: 11:00 a.m.** |

**AMENDED MOTION FOR ENTRY OF AN ORDER AUTHORIZING THE DEBTORS
TO ENTER INTO RETENTION BONUS AGREEMENTS WITH CERTAIN
NON-INSIDER KEY EMPLOYEES PURSUANT TO 11 U.S.C. §§ 105 AND 363(b)**

NOW COME Oberweis Dairy, Inc., an Illinois corporation; The Oberweis Group, Inc., a Delaware corporation; North Aurora Ice Cream, LLC, an Illinois limited liability company; TOGI RE I, LLC, an Illinois limited liability company; Third Millennium Real Estate L.L.C., an Illinois limited liability company; and TOGI Brands, LLC, an Illinois limited liability company (collectively, the "**Debtors**"), debtors and debtors in possession herein, by and through its undersigned attorneys, and hereby move pursuant to Sections 105 and 363(b) of title 11 of the United States Code, 11 U.S.C. §101, *et seq*. (the "**Bankruptcy Code**"), for entry of an order authorizing the Debtors to enter into retention bonus agreements with certain non-insider key employees (the "**Motion**"). In support of the Motion, the Debtors respectfully represent as follows:

**PRELIMINARY STATEMENT**

The Debtors have implemented a sale process approved by this Court to sell a significant portion of their assets. Should the Debtors' key employees leave at this time, it will negatively

---

[1] The Debtors in these case, and the last four digits of their respective federal employer identification numbers, are Oberweis Dairy, Inc. ('7516); The Oberweis Group, Inc. ('1378); North Aurora Ice Cream, LLC ('8506); TOGI RE I, LLC ('5952); Third Millennium Real Estate L.L.C. ('1589); and TOGI Brands, LLC ('7072).

1321672_3

impact operations and the ability to maximize the value of the Debtors' assets. The Debtors will be unable to attract competent and qualified replacements given the Debtors' current bankruptcy status and current sale process. In addition, the approved stalking horse asset purchase agreement requires the Debtors to continue their operations in the ordinary course of business pending a closing. Further, the Debtors anticipate the need to retain these employees for a brief period after the consummation of the sale contemplated by the stalking horse asset purchase agreement to assist in the administration of the Debtors' remaining assets and continued objectives in these chapter 11 cases (the "**Chapter 11 Cases**").

The Debtors believe that providing certain non-insider key employees with responsibility-commensurate retention bonuses for staying with the Debtors throughout the sale process, and for a period of time thereafter, is imperative to avoid the detriment which the Debtors will suffer should these employees leave for a more stable position. In an effort to reduce costs, prior to commencing this bankruptcy case, the Debtors reduced their workforce from 1,434 employees in the first quarter of 2023, to 1,208 employees in the first quarter of 2024. Consequently, the Debtors can ill afford to lose any of their non-insider key employees. To incent these non-insider key employees to remain in the Debtors' employ, the Debtors request authority to enter into retention bonus agreements with certain non-insider key employees who remain in the Debtors' employ until July 15, 2024, unless involuntarily terminated by the Debtors without cause prior to such date.

I.  **JURISDICTION AND VENUE**

1.  This Court has jurisdiction over the Motion pursuant to 28 U.S.C. § 157 and 1334. Venue lies properly in this Court pursuant to 28 U.S.C. § 1408 and 1409. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

2. The statutory predicates for the relief requested in this Motion are sections 105 and 363(b) of the Bankruptcy Code.

## II. BACKGROUND

3. On April 12, 2024 (the "**Petition Date**"), the Debtors filed voluntary petitions under chapter 11 of the Bankruptcy Code in this district commencing the Chapter 11 Cases.

4. The Debtors continue to manage and operate their business and manage their properties and affairs as a debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

5. No request for the appointment of a trustee or examiner has been made in the Chapter 11 Cases.

6. On April 19, 2024, the Office of the United States Trustee appointed an official committee of unsecured creditors [Docket Entry No. 45] (the "**Committee**").

7. The nature of the Debtors' business and the factual background relating to the Debtors' commencement of the Chapter 11 Cases is set forth in detail in the *Declaration of Adam Kraber in Support of Chapter 11 Petitions and First Day Motions* [Docket Entry No. 19] filed on April 15, 2024, and incorporated herein by reference.

## III. RELIEF REQUESTED

8. By this Motion, the Debtors are seeking authority to enter into retention bonus agreements with certain non-insider key employees who are essential to the Debtors' operations and who continue to stay with the Debtors through July 15, 2024, unless involuntarily terminated by the Debtors without cause prior to such date (the "**Employment Period**").

9. On April 24, 2024, the Debtors filed that certain *Motion of Debtors for Entry of (i) an Order (a) Approving Sale Process, including a Stalking Horse Asset Purchase Agreement;*

1321672_3     3

*(b) Approving Procedures for Assumption and Assignment of Executory Contracts and Unexpired Leases; (c) Approving Form Notices; (d) Excusing Page Limit and (e) Scheduling a Public Auction and a Sale Approval Hearing; and (ii) an Order (x) Approving the Sale of the Debtor's Assets Free and Clear of Liens, Claims, Encumbrances and Interests; (y) Approving the Assumption and Assignment of Executory Contracts and Unexpired Leases, and (z) Granting Related Relief* [Docket Entry No. 58]. In order to maximize the proceeds to be derived from a sale, the Debtors intend to market and sell their assets and business as a viable going concern pursuant to an orderly sale process approved by this Court (the "**Sale Process**"). On May 3, 2024, the Court entered an order approving the Sale Process and a stalking horse asset purchase agreement [Docket Entry No. 99]. The retention of certain non-insider key employees is critical to this sale effort as well as to the continued operations and administration of the Debtors' remaining assets after the contemplated sale. The Debtors anticipate that certain assets will not be sold as part of this initial Sale Process and are contemplating the need for the continued assistance of certain key employees for a limited period of time post-sale.

10. The Debtors' non-insider key employees are in the unenviable position of having to devote substantial effort and remain keenly focused, only to face the uncertainty of new ownership or the complete shutdown of business, and the likelihood of having to find new (and more stable) employment. The non-insider key employees have been living under this uncertainty since the decision was made by the board of directors to embark upon a sale process in the fourth quarter of 2023, and were tacitly induced to stay with the promise of a significant retention bonus.

11. The Debtors in their business judgment have determined that the employees identified on **Exhibit A** attached hereto and made a part hereof (each a "**Key Employee**" and

collectively, the "**Key Employees**") are essential to the Debtors' continued operations and in providing necessary information to achieve the best results possible in connection with the Sale Process and the administration of the Debtors' remaining assets thereafter. Exhibit A contains a list of the employees, their positions with the company, and a description of their responsibilities.

12. It is the Debtors' belief that if any of the Key Employees were to leave, the prospects of achieving a closing of a sale which maximizes the value of the Debtors' assets and the ability to otherwise achieve its objectives in the Chapter 11 Cases would be compromised. It is unreasonable and unrealistic not to provide the Key Employees with sufficient incentive to remain in the Debtors' employ during the Employment Period (which is anticipated to encompass the Sale Process) in light of the uncertainty and instability which these employees currently face and the respective opportunities to seek gainful employment elsewhere which they may be foregoing at the present time.

13. The Debtors request approval to pay the Key Employees the corresponding retention bonuses as provided on Exhibit A, and authority to enter into a "Retention Bonus Agreement" (described below) with each of the Key Employees, as such will limit uncertainty and provide the security to the Key Employees to ensure that they remain with the Debtors throughout this critical period in the Chapter 11 Cases.

14. With respect to the retention bonuses designated as two (2) payments on Exhibit A, the recipients shall execute and deliver the Retention Bonus Agreement attached hereto as **Exhibit B** and made a part hereof. With respect to the retention bonuses without such designation, the recipients shall receive one lump sum payment in accordance with the Retention Bonus Agreement attached hereto as **Exhibit C** and made a part hereof. In both cases, the

recipients are required to remain employed by the Debtors through July 15, 2024, but may be terminated earlier based upon the needs of the Debtors and the cooperation of the purchaser.

15. The total number of employees receiving retention bonuses is fifty-eight (58), and the maximum amount of the retention bonuses for all such employees in this Motion is approximately $400,000.00. Given the relative size of the estate and the anticipated proceeds from the Sale Process, the benefits of the retention bonuses required to retain and incent the Key Employees far outweighs the loss to the estate if the Key Employees begin to find employment elsewhere.

16. The Debtors have discussed the relief sought in this Motion with CIBC Bank USA, their senior lender ("**CIBC**"), and the Committee. CIBC is supportive of the Motion, but the Debtors understands the Committee has objections. The approved budget includes the retention bonuses as an expenditure.

IV.   **AUTHORITY FOR RELIEF REQUESTED**

   A.   **The Key Employees and Proposed Retention Bonuses**

17. The provisions of sections 105 and 363(b) of the Bankruptcy Code and the policies underlying those provisions support the relief requested in this Motion.

18. The retention bonuses are above the ordinary, pre-petition and post-petition compensation levels of the Key Employees and are reasonably necessary to provide these employees an incentive to continue their employment relationship with the Debtors and to maintain and preserve the Debtors' assets both pending and after the Sale Process. Without the continued employment and dedicated efforts of the Key Employees, the Debtors believe their business operations will be impaired and the sale efforts could be jeopardized.

19. This Court may authorize the proposed retention bonus payments pursuant to Section 363(b) of the Bankruptcy Code, under which a debtor, after notice and a hearing, may use property of the estate other than in the ordinary course of business. Section 363(b) of the Bankruptcy Code permits a debtor in possession to use, sell, or lease property of the estate "other than in the ordinary course of business" after notice and a hearing. Section 105(a) provides in pertinent part that "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out provisions of this title."

20. To approve the use, sale or lease of property outside the ordinary course of business, there must be "some articulated business justification." See Fulton State Bank v. Schipper, 933 F.2d 513, 515 (7th Cir. 1991).

21. Once a valid business justification made in the ordinary course of business is established, "[t]he business judgment rule 'is a presumption that in making a business decision the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action was in the best interests of the company.'" In re S.N.A. Nut Company, 186 B.R. 98, 102 (Bankr. N.D. Ill. 1995); see also, In re Johns-Manville Corp., 60 B.R. 612, 615-616 (Bankr. S.D.N.Y. 1986) ("a presumption of reasonableness attaches to a debtor's management decisions").

22. When applying the "business judgment" rule, courts show great deference to the debtor's decision-making. See Summit Land Co. v. Allen (In re Summit Land Co.), 13 B.R. 310, 316 (Bankr. D. Utah 1981). Accordingly, the relief requested in this Motion should be granted if the Debtors demonstrate a sound business justification therefor. See Schipper, 933 F.2d at 515.

23. The Debtors submit that authorizing the Debtors to provide responsibility-commensurate retention bonuses to these non-insider Key Employees and enter into the

Retention Bonus Agreements will accomplish a sound business purpose. The Debtors, in consultation with their professionals, have determined that the costs associated with this additional post-petition compensation are more than justified by the benefits the Debtors will realize by retaining the services of these Key Employees, whose experience, skills and diligent work are required by the Debtors to implement the Sale Process, achieve the highest possible sale price for the Debtors' other assets, and maintain the on-going operations of the Debtors pending the Sale and thereafter. In addition, the Debtors believe that the cost to replace these non-insider Key Employees would significantly exceed the aggregate cost of the Retention Bonus Agreements.

24. Based upon all of the foregoing circumstances, the Debtors respectfully submit that the relief sought herein for the non-insider Key Employees is an appropriate exercise of the Debtors' business judgment, will advance the fundamental objective of achieving the highest possible sale proceeds from the sale (or sales) of the Debtors' assets, is necessary and in the best interest of the Debtors' creditors and the estates, and should be approved under sections 105 and 363(b) of the Bankruptcy Code.

    **B.    The Proposed Payments Do Not Provide For Any Payments Prohibited By Section 503(c) of the Bankruptcy Code.**

        **i.    The Key Employees are Not Insiders**

25. Sections 503(c)(1) and (2) of the Bankruptcy Code do not apply as the Key Employees are not "insiders" as provided in Section 101(31) of the Bankruptcy Code. Specifically, section 101(31)(B) of the Bankruptcy Code defines "insider" in relevant part, as a (i) director of the debtor, (ii) officer of the debtor or (iii) person in control of the debtor. 11 U.S.C. 101(31)(B).

26. The term "director" is not defined in the Bankruptcy Code. Although there is no precise definition, courts have interpreted the term "director" to mean an individual who sits on the board of directors of a corporation. See In re Kunz, 489 F.3d 1072, 1077 (10th Cir.2007) ("[w]hen the term director is used in reference to a corporation . . . the term plainly means a person who is a member of the governing board of the corporation and participates in corporate governance.").

27. In determining whether a particular employee is a "director," a court should look to the set of legal rights that a typical director would hold. In this case, the Key Employees do not have the legal rights that a typical corporate director would hold. They do not implement corporate policy or engage in corporate governance.

28. The term "officer" is also not defined in the Bankruptcy Code. According to Black's Law Dictionary, the term "officer" is defined as a "person elected or appointed by the board of directors to manage the daily operations of a corporation, such as the CEO, president, secretary, or treasurer." Black's Law Dictionary 1193 (9th ed. 2009). Courts have often looked at this definition as a source of authority in determining whether an employee is an officer. See In re Borders Group, Inc., 453 B.R. 459, 468 (Bankr. S.D.N.Y. 2011). Here, the Key Employees are in charge of or oversee specific locations, administrative functions and other various aspects of the operations of the Debtors; they are not responsible for the daily operations in the same fashion as an individual appointed or elected by a board of directors. Exhibit A contains a general job description and explanation of the significant role played by the Key Employees.

29. Lastly, the Key Employees are not in control of the Debtors. Courts have held that, when looking to control, insiders must have "at least a controlling interest in the debtor or ... exercise sufficient authority over the debtor so as to unqualifiably dictate corporate policy and

the disposition of assets." In re Babcock Dairy Co., 70 B.R. 657, 661 (Bankr. N.D. Ohio 1986) (citations omitted).  The Key Employees are responsible for, among other things, ensuring compliance with various regulations and rules and maintaining a safe and proper work place. They are not involved in overall strategic decisions.  The Key Employees ultimately report to the president, Adam Kraber, and the CRO, Kevin Cleary, who both report directly to the board of directors.

30. In In re Borders Group, Inc., the Bankruptcy Court for the Southern District of New York held that employees did not qualify as "insiders" where such employees were responsible for day-to-day operations but did not implement company policy, did not report to the board of directors and were required to report to an officer.  453 B.R. at 469-470.  For the foregoing reasons, the Debtors believe the Key Employees are not "insiders" as such term is defined in the Bankruptcy Code and therefore are not subject to Sections 503(c)(1) or (2) of the Bankruptcy Code.

      ii.    **The Proposed Bonuses Satisfy Section 503(c)(3) of the Bankruptcy Code and the *Dana* Factors**

31. Section 503(c)(3) of the Bankruptcy Code does not preclude approval of the proposed bonuses.  This "catch all" provision of the 2005 amendments to compensation procedures in chapter 11 cases prohibits, in relevant part, transfers made outside the ordinary course of business and not justified by the facts and circumstances of the case.  4 Collier on Bankruptcy ¶ 503.17 (15th ed. rev. 2009).  Even though the Debtors do not believe the Key Employees are "insiders" under Section 101(31) of the Bankruptcy Code, the Debtors have analyzed the proposed bonuses under Section 503(c)(3) of the Bankruptcy Code in an abundance of caution because they are not ordinary course transactions.  To be clear, however, the Debtors

submit the proposed bonuses are "justified by the facts and circumstances" of the Chapter 11 Cases.

32. Courts that have analyzed the prohibition on "other transfers" to certain categories of employees set forth in Section 503(c)(3) of the Bankruptcy Code have applied the same standard under that section as they do under Section 363(b) of the Bankruptcy Code - that is, whether to use estate property outside the ordinary course of business is based on the debtor's business judgment. See In re Dana Corp, 358 B.R. 567, 576 (Bankr. S.D.N.Y. 2006), citing In re Nobex, 2006 WL 4063024, 2006 Bankr.LEXIS 417 (Bankr.D.Del. Jan. 19, 2006) (court concluded that section 503(c)(3) was nothing more than a reiteration of the standard under 363 under which courts had previously authorized transfers outside the ordinary course of business based on the business judgment of the debtor).

33. The Court in Dana set forth several factors that courts may consider when determining whether the "business judgment" standard is met for Section 503(c)(3) purposes:

   i. whether the plan proposed has a reasonable relationship to the results to be obtained;

   ii. whether the cost of the plan is reasonable in light of the debtor's assets, liabilities, and earnings potential;

   iii. whether the scope of the plan is fair and reasonable or whether it discriminates unfairly;

   iv. whether the plan comports with industry standards;

   v. whether the debtor undertook due diligence in investigating the need for a plan, the employees that should be incentivized, market standards; and

   vi. whether the debtor received independent counsel in performing due diligence and in creating and authorizing the incentive compensation.

Dana, 358 B.R. at 576-577. Though the Debtors are unaware of any court which has required the debtor to demonstrate compliance with each of the above standards, the Debtors believe these standards in general have been met here.

34. First, the proposed bonuses have a reasonable relationship to the results sought to be obtained. The bonuses are aimed at maintaining continuity of the Debtors' operations at a time when Key Employees have no job security. The proposed bonuses will incent the Key Employees to remain employed with the Debtors during this critical sales period and will ensure the value of the Debtors' assets in the Sale Process are maximized and the Debtors' assets and operations are efficiently administered. The Debtors believe the Key Employees will begin to look for alternative, more secure, employment unless properly incented. Thus, the Debtors believe that the proposed bonus payments have a reasonable relationship to the results sought to be obtained, namely the sale of the Debtors' assets for the maximum value and the continued operations of the Debtors in the ordinary course of business.

35. Second, the proposed bonuses are reasonable in light of the anticipated proceeds from the Sale Process and the value of the estate. The total maximum cost of the proposed bonuses is approximately $400,000.00, representing 0.02% of the anticipated proceeds from the Sale Process and the anticipated cash collateral value of the Debtors' estate as of any closing. The Key Employees represent fifty-eight (58) of the Debtors' approximately one thousand two hundred (1,200) employees as of the Petition Date.

36. Third, the Debtors' proposed bonuses do not discriminate unfairly. The Key Employees were selected by the nature and importance of their positions as well as their specialized knowledge regarding the Debtors.

37. Fourth, the Debtors believe the proposed bonuses comport with industry standards. Though the Debtors have not previously provided bonuses of this nature to their employees, the Debtors submit that the bonuses to be paid as proposed herein are not intended to provide the Key Employees a windfall, but rather to ensure that they are adequately compensated for staying in the Debtors' employ during its darkest hour, through the Employment Period.

38. Fifth, the Debtors exercised proper diligence in determining whether the proposed bonuses were necessary. Temporary employees or consultants required to replace the Key Employees would have neither the knowledge of the Debtors nor the efficiency required to perform the Key Employee's responsibilities in a timely, cost-beneficial manner.

39. Finally, although the Debtors have not engaged or sought to retain independent compensation legal counsel with respect to the proposed retention bonuses, the Debtors submit that the absence of this factor should not determine the outcome. As held by the Court in Borders, non-satisfaction of the final Dana factor is not fatal to a proposed plan. Borders, 453 B.R. at 477.

## V. NOTICE

40. The Debtors have provided no less than seven (7) days written notice of this Motion via CM/ECF, together with a copy of the Motion and all exhibits thereto, to the following parties: (i) the office of the United States Trustee for the Northern District of Illinois, (ii) counsel to the Secured Lenders; (iii) counsel to the Committee; and (iv) other interested parties who have requested notice or are otherwise registered on the Court's CM/ECF service list. Counsel for the Debtors request that the Court find such notice to be appropriate and sufficient under the circumstances and requests that any further notice requirements be waived and/or reduced in accordance with Bankruptcy Rules 2002(a) and 9006(c).

WHEREFORE, for the reasons expressed herein, Oberweis Dairy, Inc., The Oberweis Group, Inc., North Aurora Ice Cream, LLC, TOGI RE I, LLC, Third Millennium Real Estate L.L.C., and TOGI Brands, LLC respectfully request the entry of an order, a proposed form of which has been filed in connection herewith, authorizing the relief requested herein without further notice and for such other and further relief as is just.

Respectfully submitted,

OBERWEIS DAIRY, INC., *et al.*, Debtors

By:   /s/ Howard L. Adelman
      One of Their Attorneys

HOWARD L. ADELMAN, ESQ. (ARDC# 0015458)
ADAM P. SILVERMAN, ESQ. (ARDC #6256676)
ALEXANDER F. BROUGHAM, ESQ. (ARDC #6301515)
TEVIN D. BOWENS, ESQ. (ARDC #6338559)
ADELMAN & GETTLEMAN, LTD.
53 West Jackson Blvd., Suite 1050
Chicago, Illinois 60604
Tel (312) 435-1050
Fax (312) 435-1059
**Counsel for the Debtors**