Form G-3 (20240417)

# UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN   DIVISION

In re:  Oberweis Dairy, Inc., et al,      )  Chapter   11
                                            )
                                            )  No.   24-05385
                                            )       Jointly Administered
                                            )
          Debtor(s)             )  Judge David D. Cleary

## NOTICE OF MOTION

TO:  See attached list

      PLEASE TAKE NOTICE that on <u>June 5, 2024</u>, at <u>10:00</u>  a.m.  , I will appear before the Honorable <u>David D. Cleary</u>, or any judge sitting in that judge's place, **either** in courtroom <u>644</u> of the Everett McKinley Dirksen United States Courthouse, 219 S. Dearborn Street, Chicago, IL 60604 **or** electronically as described below, and present the motion of <u>BMO Bank N.A.</u> [to/for] <u>Relief from the Automatic Stay</u>, a copy of which is attached.

      **Important:  Only parties and their counsel may appear for presentment of the motion electronically using Zoom for Government.  All others must appear in person.**

      **To appear by Zoom using the internet**, go to this link:  https://www.zoomgov.com/. Then enter the meeting ID and passcode.

      **To appear by Zoom using a telephone**, call Zoom for Government at 1-669-254-5252 or 1-646-828-7666.  Then enter the meeting ID and passcode.

      **Meeting ID and passcode.**  The meeting ID for this hearing is <u>161 122 6457</u>, and the passcode is <u>Cleary644</u>.  The meeting ID and passcode can also be found on the judge's page on the court's web site.

      **If you object to this motion** and want it called on the presentment date above, you must file a Notice of Objection no later than two (2) business days before that date. If a Notice of Objection is timely filed, the motion will be called on the presentment date.  If no Notice of Objection is timely filed, the court may grant the motion in advance without calling it.

By: <u>/s/ Aaron B. Chapin</u>
        Aaron B. Chapin (ARDC# 62925400
        HUSCH BLACKWELL LLP
        120 South Riverside Plaza, Suite 2200
        Chicago, IL 60606
        (312) 655-1500
        aaron.chapin@huschblackwell.com

**IN THE UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| In re: | Chapter 11 |
| Oberweis Dairy, Inc., et al.,[1] | Case No. 24-05385 |
| Debtors. | (Jointly Administered) |
| | Hon. David D. Cleary |

## MOTION OF BMO BANK N.A.
## FOR RELIEF FROM THE AUTOMATIC STAY

Pursuant to Fed. R. Bankr. P. 4001(a), Local Rule 4001-1 and 11 U.S.C. § 362(d), BMO

Bank N.A. f/k/a BMO Harris Bank N.A. ("BMO")[2] submits this motion (the "Motion") for relief

from the automatic stay to allow BMO to exercise its non-bankruptcy rights and remedies with

respect to the collateral as further described herein and in the documents attached hereto, and for

such other relief described herein.  In support of this Motion, BMO states as follows:

### JURISDICTION

1.      Debtors Oberweis Dairy, Inc. ("Oberweis"), The Oberweis Group, Inc., North

Aurora Ice Cream, LLC, TOGI RE I, LLC, Third Millennium Real Estate L.L.C., and TOGI

Brands, LLC, (collectively, the "Debtors") filed voluntary petitions for relief under Chapter 11 of

title 11 of the United States Code ("Bankruptcy Code") commencing these cases (collectively, the

Chapter 11 Cases) on April 12, 2024 (the "Petition Date").

2.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157(a) and

1334(a).  This Motion is a core proceeding under 28 U.S.C. § 157(b)(2)(G).

---

[1] The Debtors in this case, and the last four digits of their respective federal employer identification numbers, are
Oberweis Dairy, Inc. ('7516); The Oberweis Group, Inc. ('1378); North Aurora Ice Cream, LLC ('8506); TOGI RE
I, LLC ('5952); Third Millennium Real Estate L.L.C. ('1589); and TOGI Brands, LLC ('7072).

[2] Effective September 3, 2023, the Bank adopted amended articles of association pursuant to which its corporate title
was changed from "BMO Harris Bank National Association" to "BMO Bank National Association."

## **BACKGROUND**

3.      On or about January 23, 2023, BMO and Oberweis entered into a Loan and Security Agreement (together with all amendments, modifications, and extensions thereto, the "First Loan Agreement"), pursuant to which BMO financed Oberweis's purchase of certain equipment described more fully therein (together with all attachments, accessions, accessories, replacement parts, repairs and additions or substitutions thereto, the "First Loan Collateral") and Oberweis agreed to repay BMO the amount set forth therein, with interest, pursuant to the terms thereof.  A true and correct copy of the First Loan Agreement is attached hereto as "**Exhibit A**."

4.      On or about February 27, 2023, BMO and Oberweis entered into a Loan and Security Agreement (together with all amendments, modifications, and extensions thereto, the "Second Loan Agreement"), pursuant to which BMO financed Oberweis's purchase of certain equipment described more fully therein (together with all attachments, accessions, accessories, replacement parts, repairs and additions or substitutions thereto, the "Second Loan Collateral") and Oberweis agreed to repay BMO the amount set forth therein, with interest, pursuant to the terms thereof.  A true and correct copy of the Second Loan Agreement is attached hereto as "**Exhibit B**."

5.      The First Loan Agreement and Second Loan Agreement are referred to herein as the "Agreements."

6.      The First Loan Collateral and Second Loan Collateral are collectively referred to herein as the "Collateral."

7.      Pursuant to the Agreements, the Oberweis granted to BMO first-priority, purchase money security interest in the Collateral.  In summary, the Collateral is described as follows:

| Agreement | Year | Make | Model | Desc. | VIN |
|---|---|---|---|---|---|
| First | 2023 | Freightliner | M2-Series | Tractor | 1FVACWFC9PHNZ7360 |
| | 2023 | Freightliner | MT45G | Tractor | 4UZAC2G71PCUE8855 |
| | 2023 | Freightliner | MT45G | Tractor | 4UZAC2G75PCUE8857 |
| | 2023 | Freightliner | MT45G | Tractor | 4UZAC2G76PCUE8849 |
| | 2023 | Freightliner | MT45G | Tractor | 4UZAC2G76PCUE8852 |
| Second | 2023 | Freightliner | M2-Series | Tractor | 1FVACWFC1PHUE8128 |
| | 2023 | Freightliner | M2-Series | Tractor | 1FVACWFC3PHUE8129 |

8.      To perfect its interest in the Collateral, BMO recorded its lien on the Certificate of Titles for each unit of the collateral.  True and correct copies of the Certificate of Titles for the Collateral are attached hereto as "**Exhibit C.**"

9.      Oberweis is in default under the terms of the Agreements.

10.      As of the Petition Date, the amount due and owing under the Agreements was an amount not less than $831,754.90.

11.      As of the Petition Date, BMO estimates that the Collateral has a fair market value less than or equal to the amount due and owing under the respective Agreements.  The value of the Collateral has declined since the Petition Date and continues to decline with depreciation and the passage of time.

12.      As set forth in paragraph 2.1 of the Agreements, Oberweis granted to BMO a security interest in each unit of the Collateral to secure payment and performance of all debts, liabilities and obligations of Oberweis of every kind and character, whether now existing or hereafter arising, to BMO, whether under the specific Agreement or any other Agreement. Accordingly, each unit of the Collateral secures the entire amount due to BMO.

13.      On May 3, 2024, an Order Approving Sale Process Including a Stalking Horse Asset Purchase Agreement was entered.  The Collateral is <u>not</u> included in the Stalking Horse APA.

14.     On May 8, 2024, the Court entered the Agreed Order Resolving the Objections of

BMO Bank N.A. (the "Agreed Order") (Docket 103).  The Agreed Order provides in part that:

> BMO shall have the right to credit bid up to and including the full
> amount of its Claim to acquire the BMO Collateral at or before the
> Sale Hearing.  BMO shall not be required to bid on any other Assets
> included in the sale to obtain the BMO Collateral, notwithstanding
> that the BMO Collateral may be designated in one or more lots
> slated for sale.  Prior to the Sale Hearing, the Debtor shall provide
> BMO with an allocation of sale proceeds for each unit of the BMO
> Collateral resulting from the highest and best offer obtained through
> the sale process.

(Agreed Order, at 3).

15.     At and before the open cry auction conducted May 29, 2024, no bids were placed

on any lots containing the Collateral, and as result the Collateral is not included in the sale or the

sale process.

## RELIEF REQUESTED

16.     BMO requests relief from stay authorizing BMO to exercise its non-bankruptcy

rights with respect to the Remaining Collateral.

17.     BMO further requests that Oberweis provide it with proof of current insurance of

the Remaining Collateral.

## BASIS FOR RELIEF REQUESTED

18.     Section 362(d) of the Bankruptcy Code states:

> (d)     On request of a party in interest and after notice and a
> hearing, the court shall grant relief from the stay provided under
> subsection (a) of this section, such as by terminating, annulling,
> modifying, or conditioning such stay—
>
> > (1)     for cause, including the lack of adequate protection
> > of an interest in property of such party in interest;
>
> > (2)     with respect to a stay of an act against property under
> > subsection (a) of this section, if—

(A)     the debtor does not have an equity in such property; and

(B)     such property is not necessary to an effective reorganization[.]

11 U.S.C. § 362(d)(1), (2).

19.     Cause exists to lift the stay under § 362(d)(1) of the Bankruptcy Code.  The value of the Collateral declines with use and the passage of time, and Oberweis has not paid or offered to provide any payment to protect BMO's interest in the Collateral.  The proposed budgets included by the Debtors in their pending financing and sale motions [Dkt. Nos. 14 and 58] do not include any payments to BMO for adequate protection or otherwise.  Accordingly, BMO's interest in the Collateral lacks adequate protection.

20.     BMO is also entitled to a lift of the stay pursuant to § 362(d)(2) of the Bankruptcy Code.  The value of the Collateral, assuming good condition and proper maintenance, is an amount less than the amount of the debt due BMO.

21.     Oberweis neither possesses equity in the Collateral nor is the Collateral necessary for an effective reorganization.  Once a debtor's lack of equity in the property has been demonstrated, "the debtor must establish that the [property] is necessary for an effective reorganization, not by showing that, absent retention of the property, no reorganization is possible, but by proving 'the property is essential for an effective reorganization that is in prospect.'" *United Sav. Ass'n of Texas v. Timbers of Inwood Forest Assoc., Ltd.*, 484 U.S. 365, 375–76 (1988) (addressing the requirements for proof under 11 U.S.C. § 362 (d)(2)).

22.     Oberweis cannot show that the Collateral is necessary for an effective reorganization in prospect, as the Debtors intend to sell substantially all of their assets (not including the Collateral) to satisfy their debts, and not to reorganize as a going concern.

23.     Where a debtor lacks equity in property, and the property is not necessary for an effective reorganization, there "may be no reason to make the creditor wait until the final distribution of the estate to get what it bargained for, and indeed early release of the collateral may aid administration of the estate by allowing a quicker determination of the amount of the under secured creditor's unsecured claim." *In re Vitreous Steel Prods. Co.*, 911 F.2d 1223, 1231–32 (7th Cir. 1990) (discussing the purpose of § 362(d)).  BMO is, therefore, entitled to immediate relief from the automatic stay in order to exercise its non-bankruptcy rights with respect to the Collateral.

24.     Based on the foregoing, BMO is entitled, pursuant to § 362(d)(1) and (2) of the Bankruptcy Code, to relief from the automatic stay to allow it to exercise its non-bankruptcy rights and remedies with respect to the Collateral.

WHEREFORE, BMO moves (a) for an Order granting BMO relief from the automatic stay to allow it to exercise its non-bankruptcy rights and remedies with respect to the Collateral, (b) for such order to be effective immediately without the 14-day stay of execution; and (c) for such other and further relief as the Court deems just.

Dated: May 29, 2024                                     Respectfully submitted,

                                                        BMO Bank N.A.

                                                        By: s/ Aaron B. Chapin
                                                        One of Its Attorneys

Aaron B. Chapin (ARDC# 6292540)
HUSCH BLACKWELL LLP
120 South Riverside Plaza
Suite 2200
Chicago, IL 60606
(312) 655-1500
aaron.chapin@huschblackwell.com

## <u>CERTIFICATE OF SERVICE</u>

  I, Aaron B. Chapin, hereby certify that on May 29, 2024, I caused a copy of the foregoing **NOTICE OF MOTION** and **MOTION OF BMO BANK N.A. FOR RELIEF FROM STAY** (the "<u>Notice and Motion</u>") to be filed in the above-captioned proceeding.  Notice of this filing was sent automatically, via the Court's CM/ECF system, to all parties that have filed an electronic appearance in the proceeding, which will include the following:

- Patrick S Layng Office of the U.S. Trustee - USTPRegion11.ES.ECF@usdoj.gov
- Howard L. Adelman - hla@ag-ltd.com
- R Scott Alsterda - rsalsterda@nixonpeabody.com
- Joseph Allen Archambeau - JArchambeau@ClarkHill.com
- Amy A Aronson - amyaronson@comcast.net
- Debra Devassy Babu - ddevassy@askounisdarcy.com
- Tevin D. Bowens - tbowens@ag-ltd.com
- Alexander F Brougham - abrougham@ag-ltd.com
- Daniel Brown - drb@williamsbarbermorel.com
- Steven D Chaiken - schaiken@ag-ltd.com
- Nathan E Delman - ndelman@ktslaw.com
- Travis J Eliason - teliason@clarkhill.com
- Robert Jeffrey Haupt - robert.haupt@lathropgpm.com
- Timothy M Hughes - thughes@lavellelaw.com
- Steve Jakubowski - sjakubowski@robbinsdimonte.com
- Cari A Kauffman - ckauffman@sormanfrankel.com
- Jeffrey Kurtzman - kurtzman@kurtzmansteady.com
- Henry B. Merens - hbm@ag-ltd.com
- Justin M Mertz - jmmertz@michaelbest.com
- Bryan E. Minier - bryan.minier@lathropgpm.com
- Raymond J Ostler - rostler@gsgolaw.com
- Richard C Perna - rperna@frltd.com
- Paul B. Poracky - PPoracky@KBLegal.net
- Eric S. Rein - rrein@ktslaw.com
- Jeffrey D Richardson - jdrdec@aol.com
- Carolina Y. Sales - csales@robbinsdimonte.com
- Adam P. Silverman - asilverman@ag-ltd.com
- Charles S. Stahl, Jr. - cstahl@smbtrials.com
- Edmund G Urban, III - bknotices@urbanburt.com
- Eric R von Helms - evonhelms@kmksc.com

In addition, on that same date, I caused a copy of the Notice and Motion to be served on the following parties by regular first-class mail:

Oberweis Dairy, Inc.
951 Ice Cream Dr
North Aurora, IL 60542

        By: s/ Aaron B. Chapin     

# Exhibit A

**BMO** ● | Transportation Finance       # LOAN AND SECURITY AGREEMENT

The undersigned debtor, meaning all debtors jointly and severally ("**Debtor**"), to secure the obligations set forth herein grants to the Lender named below (with its successors and assigns, "**Lender**") under the terms and provisions of this agreement (this "**Agreement**") a security interest in the following property (with all present and future attachments, accessions, accessories, replacement parts, repairs and additions or substitutions, "**Equipment**"):

☒ See Attached Schedule A

## PAYMENT SCHEDULE

Debtor promises to pay Lender principal plus pre-computed interest and any administrative fee set forth below (the "**Total Amount**") of $861,930.00 in 72 installments as follows:

(a) $11,971.25 on MARCH 7, 2023 and a like sum on the like date of each month thereafter until fully paid;

(b) In irregular installments as follows:

| # of Payments | Payment Amount | Payment Date |
|---|---|---|

provided, however, that the final installment shall be in the amount of the then remaining unpaid balance plus any and all other accrued and unpaid sums due hereunder.

The interest under this Agreement is pre-computed. The Total Amount is calculated based on interest accruing at an interest rate of 8.99% per annum based on a 360-day year of twelve 30-day months, plus the administrative fee, if any, spread over the life of the loan. The total cost of credit includes such accrued interest and the administrative fee of $500.00 equating to an annual percentage rate of 9.01% based on a 360-day year of twelve 30-day months. Late payments may affect the actual total amount payable due to payment of delinquency charges and/or increased accrued interest. If the Payment Schedule contains (i) a period of longer than a month before the first Payment Date (the excess number of days herein referred to as a "Stub Period") or (ii) any month or months in which a Payment Amount is either not due or is in an amount less than the accrued interest for such month (in either event, such period herein referred to as a "Skip Period"), then at the option of Lender, to the extent permitted by law, the unpaid and accrued interest for such Stub Period or Skip Period may be added to the unpaid principal amount hereunder and shall thereafter accrue interest at the interest rate set forth above.

DELINQUENCY: FOR EACH INSTALLMENT NOT PAID WHEN DUE, DEBTOR AGREES TO PAY LENDER A DELINQUENCY CHARGE CALCULATED ON THE AMOUNT OF SUCH INSTALLMENT AT THE RATE OF 5% OF SUCH INSTALLMENT IF NOT PROHIBITED BY LAW, OTHERWISE AT THE HIGHEST RATE THAT DEBTOR CAN LEGALLY OBLIGATE ITSELF TO PAY AND/OR LENDER CAN LEGALLY COLLECT.

## USE OF PROCEEDS

Lender is hereby irrevocably authorized and directed to disburse the proceeds of this Agreement as follows:

| Amount | Payee (Name and Address) |
|---|---|
| $661,629.43 | FYDA FREIGHTLINER CINCINNATI INC |
| | 1 FREIGHTLINER DR |
| | CINCINNATI, OH 45241 |

Disbursement may be made in Lender's name on Debtor's behalf or in Debtor's name. Disbursement in accordance with the above instructions or any written supplement to these instructions will constitute payment and delivery to and receipt by Debtor of all such proceeds.

PAYMENT ADDRESS: All amounts payable under this Agreement are payable at Lender's address shown below or at such other address as Lender may specify from time to time in writing. All written communication concerning disputed amounts, including any check or other payment instrument that (i) indicates that the written payment constitutes "payment in full" or is tendered as full satisfaction of a disputed amount or (ii) is tendered with other conditions or limitations (collectively a "Disputed Payment") must be mailed or delivered to us at the address for billing inquiries shown on the invoice or statement and not to the payment address.

---

**1.0    THE EQUIPMENT**

**1.1    Disclaimer.** LENDER MAKES NO REPRESENTATIONS OR WARRANTIES, EXPRESS OR IMPLIED, AS TO THE QUALITY, WORKMANSHIP, DESIGN, MERCHANTABILITY, SUITABILITY, OR FITNESS OF THE EQUIPMENT FOR ANY PARTICULAR PURPOSE, OR ANY OTHER REPRESENTATION OR WARRANTY WHATSOEVER, EXPRESS OR IMPLIED. Debtor's obligations hereunder are absolute and unconditional notwithstanding the existence, location or condition of any item of Equipment or its suitability for use in Debtor's business.

**1.2    Equipment Receipt and Use.** Debtor warrants and agrees that: the proceeds of the loan and the Equipment will be used solely for business and commercial purposes; the Equipment is free from and will be kept free from all liens, claims, security interests and encumbrances other than that created hereby; Debtor will not, without Lender's prior written consent, sell, rent, lend, encumber, pledge, transfer, secrete or otherwise dispose of any of the Equipment, nor will Debtor permit any such act; the Equipment will be maintained in good operating condition, repair and appearance, and will be used and operated with care, only by qualified personnel in the regular course of Debtor's business; the Equipment shall remain personal property and not become part of any real property regardless of the manner of affixation; Lender may inspect the Equipment and all books and records relating to the Equipment or Debtor's performance under this Agreement at all reasonable times and from time to time; the Equipment will be kept at Debtor's place of business which is indicated immediately below Debtor's signature and will not be removed from said location without the prior written consent of Lender, except that an item of Equipment may be used away from said location in the regular course of Debtor's business provided that (a) such item is not removed from the United States (except for occasional use in Canada), and (b) if such item is not returned to said location within 30 days, Debtor will immediately upon Lender's request and each 30 days thereafter until the item is returned report the then current location thereof to Lender in writing.

**1.3    Insurance.** Debtor shall at all times bear all risk of loss of, damage to or destruction of the Equipment, and shall notify Lender if any of the Equipment is lost, damaged or destroyed. Debtor agrees to maintain insurance on the Equipment for the actual cash value thereof and for the life of this Agreement, covering all risks of physical loss or damage and such other risks as Lender may require, in form and amount and with insurers chosen by Debtor and satisfactory to Lender. Debtor agrees to deliver promptly to Lender certificates or, if requested, policies of insurance satisfactory to Lender, each with a standard long-form loss-payable endorsement naming Lender, its agent or such other party as Lender may from time to time instruct, and its successors and assigns, as loss-payee as their interests may appear. Each policy shall provide that Lender's interest therein will not be invalidated by the acts, omissions or neglect of anyone other than Lender, and shall provide that coverage may not be canceled or altered by the insurer except upon 30 days prior written notice to Lender. Lender's acceptance of policies in lesser amounts or risks will not be a waiver of Debtor's foregoing obligation. Debtor assigns to Lender all proceeds of any physical damage insurance maintained by Debtor with respect to the Equipment and any and all returned premiums, up to the amount owing hereunder by Debtor. Debtor directs all insurers to pay such proceeds directly to Lender and authorizes Lender to endorse Debtor's name to all remittances without the joinder of Debtor.

**1.4    Compliance With Law.** Debtor shall comply with all laws, rules and regulations applicable to Debtor and/or the operation of the Equipment, including without

Page 1 of 7 of Loan and Security Agreement dated JANUARY 23, 2023 between OBERWEIS DAIRY, INC. (Debtor) and BMO HARRIS BANK N.A. (Lender).
621700 - Fund off fax
1.16T  03/2022
Doc Request ▮▮▮▮▮▮5001
PRICINGENGINE 3187556                    ORIGINAL FOR BMO HARRIS BANK

limitation, the USA PATRIOT Act and all laws, rules and regulations relating to import or export controls, anti-money laundering and terrorist financing.

## 2.0    SECURITY INTEREST

**2.1    Security Interest.** Debtor hereby grants to Lender a first priority security interest in the Equipment to secure (a) payment of the Total Amount and all other obligations of Debtor to Lender under this Agreement, (b) the payment and performance of all other debts, liabilities and obligations of Debtor of every kind and character, whether now existing or hereafter arising, to Lender, whether under this Agreement or any other agreement, and (c) the payment and performance of all debts, liabilities and obligations of Debtor of every kind and character, whether now existing or hereafter arising, to each of Lender's Affiliates ("Liabilities"). For the purposes of this Agreement, an "Affiliate" of any party means and includes any direct or indirect parent, subsidiary or sister entity of that party and any successor or assign of any of them. Any sums at any time owing to Debtor and in the possession of Lender or any such Affiliate shall secure the Liabilities of Debtor to Lender and any Affiliate of Lender. Upon any assignment of this Agreement by Lender, the security interests granted herein will be assigned to and inure to the benefit of such assignee and the Affiliates of such assignee. The security interests granted herein shall continue to be effective regardless of any retaking or redelivery of the Equipment to Debtor.

**2.2    Perfection and Preservation of Security Interest.** Debtor agrees, at its own cost and expense: to do everything necessary or desirable to perfect and preserve the security interests granted hereunder; to extinguish or defend any action, proceeding or claim affecting the Equipment; and to pay promptly any taxes, assessments, license fees and other public or private charges when levied or assessed against the Equipment or this Agreement. Debtor authorizes Lender or any officer, employee or designee of Lender to file a financing statement describing the Equipment for itself and as representative of its Affiliates. Debtor agrees to execute and deliver to Lender, upon Lender's request, such documents, records and assurances as Lender deems necessary or advisable to confirm or perfect the security interest in the Equipment and Lender's rights hereunder.

**2.3    Location of Debtor.** (i) If Debtor is a registered organization, its state of organization is in the state set forth immediately below its signature on the last page of this Agreement and Debtor agrees that it will not change its form or state of organization without 30 days prior written notice to Lender. (ii) If Debtor is an individual, his/her principal place of residence is at the address set forth immediately below his/her signature on the last page of this Agreement and, if Debtor changes Debtor's principal residence, Debtor will notify Lender in writing of a change in his/her principal place of residence within 30 days of such change. Debtor agrees to reimburse Lender for all costs incurred by Lender related to any such change.

## 3.0    ACCOUNT MANAGEMENT AND PAYMENT PROCESSING

**3.1    Application of Payments.** All payments made by Debtor to Lender pursuant to this Agreement may be applied by Lender, in its sole and absolute discretion, to delinquency charges, interest and other such charges due hereunder, to principal due hereunder, and to any other Liabilities due hereunder or under any other agreement, in any order and manner selected by Lender. Debtor waives any right it may have to direct the application of any payments made by it to Lender, and Lender may at its option offset and deduct any liability or obligation of Debtor from any or all sums owed by it to Debtor.

**3.2    Debit Transactions.** Lender may but shall not be required to offer Debtor the option of paying any of Debtor's obligations to Lender through printed or electronic checks, drafts or charges ("Debit Transactions"). Each such Debit Transaction may be orally authorized by Debtor, any representative or officer of Debtor or any other party having access to or control of the account upon which the Debit Transaction is to be charged. Debtor authorizes Lender or any officer, employee or designee of Lender to initiate Debit Transactions from Debtor's account in the orally authorized amount plus Lender's then Debit Transaction Fee. This authorization may be canceled at any time by Debtor giving at least three business days' prior written notice to Debtor's bank and Lender. Debtor authorizes Lender to substitute a Debit Transaction for any check or other remittance submitted by Debtor in the amount of that remittance. Payment by Debit Transactions is not required by Lender nor is its use a factor in the approval of credit.

**3.3    Acceptable Forms of Payment/Payment Processing.** Credit to Debtor's account may be delayed if payment is (a) not received at the address indicated on the related invoice or (b) not accompanied by Debtor's invoice number. Preferred forms of payment include direct debit, wires, company checks and certified checks. Payment in any other form may delay processing or be returned to Debtor. Delayed credit may cause Debtor to incur a late payment fee. All credit for payments of Debtor's account is subject to final payment by the institution on which the item of payment was drawn. Debtor hereby agrees that any payment, other than a Disputed Payment, made by Debtor by remittance and received by Lender at an address other than the address specified on the related invoice may be replaced, at Lender's option, by Lender with a substitute written or electronic instrument of equal amount and presented to Debtor's financial institution for payment from the account referenced on the remittance from Debtor.

**3.4    Returned Payments.** If a check, draft or other remittance sent by Debtor or a Debit Transaction authorized by Debtor is returned unpaid or rejected for any reason other than the lack of a proper endorsement by Lender, the application of such payment to Debtor's Liabilities will be reversed and Debtor shall immediately pay Lender the amount of such returned payment, plus any delinquency charge accruing as the result of such reversal. Debtor shall further pay Lender any amount charged to Lender by any depositary institution because of such return and an additional handling charge in the amount of $25, or if applicable law limits or restricts the amount of such reimbursement and/or handling charge, the amounts chargeable under this provision will be limited and/or restricted in accordance with applicable law.

**3.5    Authorization to Share Information.** Lender may receive from and disclose to any individual, corporation, business trust, association, company, partnership, joint venture, or other entity (collectively, the "Entity"), including, without limiting the generality of the foregoing, any Affiliate of Lender and any credit reporting agency or other entity whether or not related to Lender for any purpose, information about Debtor, Debtor's accounts, credit application and credit experience with Lender and Debtor authorizes any Entity to release to Lender or any Affiliate of Lender any information related to Debtor, Debtor's accounts, credit experience and account information regarding Debtor. **This shall be continuing authorization for all present and future disclosures of such information made by Lender, or any Entity requested to release such information to Lender.**

**3.6    Maximum Interest Rate.** The parties hereto intend to comply with any applicable usury laws. Accordingly, they agree that, any provisions in this Agreement or any other agreement, document or communication to the contrary notwithstanding, this Agreement shall in no event require the payment or permit the collection of interest or any amount in the nature of interest or fees (collectively "Interest Amount") in excess of the maximum amount permitted by applicable law as now or hereafter construed by a court of competent jurisdiction. If any such excess Interest Amount is contracted for, charged or received pursuant to this Agreement, or if all of the principal balance under this Agreement shall be prepaid, or if the maturity of any amount under this Agreement is accelerated, so that under any of such circumstances or any other circumstance whatsoever the Interest Amount contracted for, charged or received shall exceed the maximum amount of Interest permitted by applicable law as so construed, then in such event: (a) the Interest Amount hereunder shall be limited to the maximum amount lawfully permitted, and (b) any excess Interest Amount that may have been received shall, at Lender's option, either be credited to the unpaid principal balance of the loan as a prepayment of principal, without any prepayment fee, or refunded to Debtor, and the effective interest rate (taking into account all Interest Amounts) shall automatically be reduced to the maximum lawful rate allowed under applicable law as now or hereafter construed by a court of competent jurisdiction. Without limiting the foregoing, all calculations of the interest rate (taking into account all Interest Amounts) contracted for, charged or received with respect to this Agreement which are made for the purpose of determining whether such rate exceeds the maximum lawful rate, shall be made, to the fullest extent permitted by applicable law, by amortizing, prorating, allocating and spreading in equal parts during the period of the full stated term of the indebtedness, all Interest Amounts at any time contracted for, charged to or received from Debtor in connection with such indebtedness.

## 4.0    PERFORMANCE BY LENDER

**4.1    Performance.** If Debtor fails to perform any of its obligations hereunder, Lender may, but shall not be obligated to, perform the same for the account of Debtor to protect the interest of Lender or Debtor or both, at Lender's option. Debtor shall immediately repay to Lender any amounts paid by Lender together with interest thereon at the rate payable upon acceleration of Debtor's obligations under this Agreement. Performance by Lender will not constitute a waiver of any default by Debtor.

**4.2    Power of Attorney.** DEBTOR HEREBY APPOINTS LENDER OR ANY OFFICER, EMPLOYEE OR DESIGNEE OF LENDER AS DEBTOR'S ATTORNEY-IN-

Page 2 of 7 of Loan and Security Agreement dated JANUARY 23, 2023 between OBERWEIS DAIRY, INC. (Debtor) and BMO HARRIS BANK N.A. (Lender).
621700 - Fund off fax
1.16T 03/2022
Doc Request 3    5001
PRICINGENGINE 3187556                        ORIGINAL FOR BMO HARRIS BANK

FACT TO, IN DEBTOR'S OR LENDER'S NAME: (a) PREPARE, EXECUTE AND SUBMIT ANY NOTICE OR PROOF OF LOSS IN ORDER TO REALIZE THE BENEFITS OF ANY INSURANCE POLICY INSURING THE EQUIPMENT; (b) PREPARE, EXECUTE AND FILE ANY AGREEMENT, DOCUMENT, FINANCING STATEMENT, TITLE APPLICATION, INSTRUMENT (OR ANY OTHER WRITING OR RECORD) THAT, IN LENDER'S OPINION, IS NECESSARY TO PERFECT AND/OR GIVE PUBLIC NOTICE OF THE INTERESTS OF LENDER IN ANY EQUIPMENT; AND (c) ENDORSE DEBTOR'S NAME ON ANY REMITTANCE REPRESENTING PROCEEDS OF ANY INSURANCE RELATING TO THE EQUIPMENT OR THE PROCEEDS OF THE SALE, LEASE OR OTHER DISPOSITION OF THE EQUIPMENT (WHETHER OR NOT THE SAME IS A DEFAULT HEREUNDER). This power is coupled with an interest and is irrevocable as long as any Liabilities remain unpaid.

### 5.0   DEFAULT AND REMEDIES

**5.1   Events of Default.** Time is of the essence. An event of default shall occur if: (a) Debtor fails to pay when due any amount owed by it to Lender or any Affiliate of Lender under this Agreement; (b) Debtor or a Guarantor fails to pay any Liabilities when due to Lender or any Affiliate of Lender or is otherwise in default under any other document, agreement or instrument; (c) Debtor or a Guarantor defaults under the terms of any secured indebtedness or indebtedness of a material amount to any other party; (d) Debtor or a Guarantor fails to perform or observe any other term or provision to be performed or observed by it hereunder or under any other instrument or agreement furnished by Debtor or a Guarantor to, or otherwise acquired by, Lender or any Affiliate of Lender; (e) (i) Debtor or a Guarantor becomes insolvent, ceases to do business as a going concern, makes an assignment for the benefit of creditors, or takes advantage of any law for the relief of debtors, or (ii) a petition in bankruptcy or for an arrangement, reorganization, or similar relief is filed by or against Debtor or a Guarantor, or (iii) any property of Debtor or a Guarantor is attached, or a trustee or receiver is appointed for Debtor or a Guarantor or for substantial part of its property, or Debtor or a Guarantor applies for such appointment; (f) any of the Equipment is lost or destroyed; (g) there shall occur an appropriation, confiscation, retention, or seizure of control, custody or possession of any Equipment by any governmental authority, governmental agency or instrumentality (such entities, agencies and instrumentalities, collectively, "Governmental Authority"); (h) Debtor or anyone in the control, custody or possession of any Equipment is accused, alleged or charged by any Governmental Authority to have used any Equipment in connection with the commission or any crime (other than a misdemeanor moving violation); (i) there shall be a material adverse change in any of the (A) condition (financial or otherwise), business performance, prospects, operations or properties of Debtor or a Guarantor, (B) legality, validity or enforceability of this Agreement (C) perfection or priority of the lien granted in favor of Lender pursuant to this Agreement, or (D) ability of the Debtor to repay the indebtedness or perform its obligations under this Agreement; (j) rights and remedies of Lender under this Agreement are impaired; (k) there shall be a death of majority owner of Debtor or a Guarantor, or there shall be a death of the Debtor or a Guarantor, if an individual; (l) there shall be any lien, claim or encumbrance on any of the Equipment except in favor of Lender or as otherwise granted herein; (m) there is a material change in the management, ownership or control of Debtor or any Guarantor, unless Lender has provided its prior written consent thereto; or (n) Debtor or any Guarantor is convicted of any felony offense, whether or not related to the Equipment.

**5.2   Remedies.** Upon the occurrence of an event of default, and at any time thereafter as long as the default continues, Lender may, at its option, with or without notice to Debtor (i) declare this Agreement to be in default, (ii) declare the indebtedness hereunder to be immediately due and payable, (iii) declare all other debts then owing by Debtor to Lender to be immediately due and payable, and (iv) exercise all of the rights and remedies of a secured party under the Uniform Commercial Code and any other applicable laws, including the right to require Debtor to assemble the Equipment and deliver it to Lender at a place to be designated by Lender and to enter any premises where the Equipment may be without judicial process and take possession thereof. Any property other than Equipment that is in or upon the Equipment at the time of repossession may be taken and held without liability. Any requirement that Lender give reasonable notice regarding the sale or other disposition of Equipment will be met if such notice is mailed to Debtor at its last known address at least ten days before such sale or other disposition. Lender may dispose of any Equipment at a public or private sale or at auction. Lender may buy at any sale and become the owner of the Equipment. Debtor agrees that Lender may bring legal proceedings to enforce the payment and performance of Debtor's obligations hereunder in any court in the State shown in Lender's address set forth herein, and service of process may be made upon Debtor by mailing a copy of the summons to Debtor at its address shown herein. Debtor shall also pay to Lender all expenses of retaking, holding, preparing for sale, selling and the like, including without limitation (a) the reasonable fees of any attorneys retained by Lender, and (b) all other legal expenses incurred by Lender. Debtor agrees that Debtor is liable for any deficiency remaining after any disposition of Equipment after default. Lender may sell the Equipment without giving any warranties as to the Equipment. Lender may disclaim any warranties of title, possession, quiet enjoyment, or the like. This procedure will not be considered to adversely affect the commercial reasonableness of any sale of the Equipment.

**5.3   Acceleration Interest.** Debtor agrees to pay Lender, upon acceleration of the above indebtedness, interest on all sums then owing hereunder at the rate of 1 1/2% per month if not prohibited by law, otherwise at the highest rate Debtor can legally obligate itself to pay or Lender can legally collect under applicable law.

### 6.0   PREPAYMENT

**6.1   Partial Prepayment and Reschedule.** (a) Debtor does not have the right to prepay only a portion of the balance of this Agreement prior to maturity. (b) If there are several units subject to this Agreement and Lender either (i) requires (as a result of a casualty loss) or (ii) permits all indebtedness that relates to a specific unit to be paid in full, Lender will apply the proceeds identified as relating thereto to the balance due under this Agreement and reschedule the remaining indebtedness under this Agreement over the then remaining term in accordance with the provisions set forth below. (c) If Lender receives one or more remittance(s) in an aggregate amount in excess of the amounts then due and unpaid under this Agreement (other than any amounts paid pursuant to 6.1(b) above) ("Excess Remittances") Lender may, at its option: (i) apply any portion of such Excess Remittances (A) in payment of obligations then due or past due under any other agreement Debtor has with Lender, (B) to the balance due under this Agreement in any manner selected by Lender, with or without rescheduling the remaining indebtedness over the then remaining term; or (ii) return such excess amount to Debtor at its last known address. (d) The interest included in this Agreement is precomputed and accrues in arrears; accordingly, early payment of one or more installments prior to their maturity date may not reduce the total interest payable by Debtor under this Agreement unless Lender reschedules the remaining payments. If Lender reschedules the indebtedness under this Agreement, Lender will deduct the unaccrued portion of interest on the unpaid balance under this Agreement at the time of reschedule (which the parties agree shall be deemed to have been made and shall be effective as of the next scheduled due date (the "Effective Reschedule Date")) calculated using any method selected by Lender as permitted by applicable law, and recalculate precomputed interest on such unpaid balance as of the Effective Reschedule Date. Debtor will not receive any rebate of, or credit for, interest relating to any period prior to the Effective Reschedule Date. (e) If Lender requires (as a result of a casualty loss) or permits Debtor to make a partial prepayment pursuant to clause (b) of this Section, Debtor agrees that it will at the time of such prepayment pay a prepayment fee equal to the pro rata portion of the prepayment fee that would have been paid pursuant to Section 6.2 below if Debtor had prepaid the indebtedness under this Agreement in full, computed based on the percentage of the outstanding Total Amount being prepaid (for purposes of calculating the outstanding Total Amount, no effect shall be given to any prior prepayments).

**6.2   Prepayment in Full.** Subject to the terms of this provision, Debtor may prepay the indebtedness under this Agreement in full (but not in part) at any time, so long as Debtor is not in default hereunder; provided, however, that any prepayment that is not paid on a scheduled payment due date shall be deemed to have been made and shall be effective as of the next scheduled due date (the "Effective Prepayment Date"). If Debtor makes a prepayment in full prior to the last twelve months of this Agreement (whether as a result of a casualty loss or otherwise), Lender accelerates the maturity of the indebtedness hereunder following a default, or a petition is filed by or against Debtor under any bankruptcy or insolvency law, Debtor must pay a prepayment fee equal to the lesser of (a) (x) 1% of the Total Amount outstanding as of the Effective Prepayment Date (for purposes of this calculation, no effect shall be given to any prior prepayments) multiplied by (y) the number of full twelve-month periods remaining until the originally scheduled or later extended due date of the final installment payable under this Agreement as of prepayment, and (b) the maximum prepayment and/or acquisition charge allowed by applicable law. Debtor and Lender acknowledge and agree that the prepayment fee is a reasonable estimate of the actual or anticipated harm sustained by Lender for Debtor's prepayment of the Total Amount. For purposes of calculating the prepayment amount and any prepayment fee, any unearned interest that would accrue after the Effective Prepayment Date shall be excluded from the calculation of the Total Amount outstanding as of the Effective Prepayment Date. Debtor will not receive any rebate of, or credit for, interest relating to any period prior to the Effective Prepayment Date. Debtor agrees that all accrued and unpaid late charges and other amounts due from Debtor under this Agreement will be paid concurrently with any such prepayment.

### 7.0   ASSIGNMENT AND GENERAL PROVISIONS

Page 3 of 7 of Loan and Security Agreement dated JANUARY 23, 2023 between OBERWEIS DAIRY, INC. (Debtor) and BMO HARRIS BANK N.A. (Lender).
621700 - Fund off fax
1.16T  03/2022
Doc Request ▓▓▓▓▓5001
PRICINGENGINE 3187556          ORIGINAL FOR BMO HARRIS BANK

**7.1    Chattel Paper.** The only copy of this Agreement that constitutes "Chattel Paper" for all purposes of the Uniform Commercial Code is the copy marked "ORIGINAL FOR BMO HARRIS BANK" which is delivered to and held by Lender.

**7.2    Assignment and Waiver.** This Agreement may not be assigned by Debtor without the prior written consent of Lender. Lender may sell, transfer or assign any or all rights under this Agreement or sell participations herein without notice to, acknowledgment of, or consent from Debtor. Debtor hereby (a) consents to such assignment or participation and agrees not to assert against Lender or any such assignee or participant any claims, counterclaims, claims in recoupment, abatement, reduction, defenses, or set-offs for breach of warranty or for any other reason which Debtor could assert against Lender, any such assignee or participant or the manufacturer of the Equipment, except defenses which cannot be waived under the Uniform Commercial Code; and (b) agrees to make and/or settle any and all claims with regard to the Equipment directly and exclusively against and with the manufacturer. Debtor agrees that no assignee or participant will have any obligations or liabilities under this Agreement to Debtor or to any other person by reason of any assignment or participation. Debtor hereby waives any right of set-off Debtor may now or hereafter have against Lender or any assignee of or participant in this Agreement. Upon Lender's assignment of Lender's entire interest in this Agreement, Lender shall be relieved, from and after the date of such assignment, of any liability for the performance of any obligation of Lender contained in this Agreement or any document executed in conjunction with this Agreement.

**7.3    General.** (a) Waiver of any default shall not be a waiver of any other default. (b) All of Lender's rights are cumulative and not alternative. (c) No waiver or change in this Agreement shall bind Lender unless in writing signed by one of its authorized representatives. (d) Any provision hereof contrary to, prohibited by or invalid under applicable laws or regulations shall be inapplicable and deemed omitted herefrom, but shall not invalidate the remaining provisions hereof. (e) Debtor authorizes Lender to correct patent errors herein and to make changes to this Agreement or to any related schedule that benefit Debtor. In addition, if the funding amount Debtor requests Lender to disburse exceeds the principal portion of the Total Amount due to changes in calculation of taxes, configuration of the Equipment or other factors affecting the cost of the Equipment, and if such an increase is within the limits of Lender's credit approval, Debtor authorizes Lender, upon written notice to Debtor, to increase the principal portion of the Total Amount by not more than fifteen percent and adjust the Total Amount and the installment amounts payable under this Agreement or any related schedule accordingly. (f) Any captions to the provisions of this Agreement are for convenience only and do not limit or affect the application or interpretation of this Agreement. (g) All of the terms and provisions of this Agreement shall apply to and be binding upon Debtor and its heirs, personal representatives, successors and assigns and shall inure to the benefit of Lender and its successors and assigns. (h) The acceptance by Lender of any remittance from a party other than Debtor shall in no way constitute Lender's consent to the transfer of any of the Equipment to such party. (i) Debtor represents and warrants that there is no material pending or threatened investigation by any governmental authority, litigation or other legal proceeding against or involving Debtor. (j) So long as any of the Liabilities remains unpaid or unperformed, Debtor will provide Lender with such financial information as Lender may reasonably request, including copies of Debtor's financial statements within 30 days of the end of each of Debtor's fiscal quarters and within 90 days after the end of each of Debtor's fiscal years. Such financial statements shall be prepared in accordance with GAAP and on the same basis (reviewed, audited, etc.) as Debtor's financial statements are currently prepared unless advised by Lender otherwise, at which time Debtor will comply with Lender's request. Debtor represents and warrants that all financial statements delivered will present fairly the financial condition and results of operations and cash flows of the Debtor as of the dates thereof and for the periods then ended. (k) Lender may pay fees to or receive fees from the seller or manufacturer of the Equipment, a broker, or other third party in connection with this Agreement. Such fees may affect the rate, terms and Debtor's total cost hereunder. (l) Debtor hereby agrees to indemnify, defend and hold harmless Lender and its Affiliates and respective principals, directors, officers, employees, representatives, agents and third-party advisors from and against any and all losses, disputes, claims, expenses (including, without limitation, legal expenses), damages and liabilities of whatsoever kind and nature arising out of, in connection with, or relating to the Equipment, this Agreement or any other document related hereto. If allowed by law, the legal expenses shall include the amount of any flat fee, retainer, contingent fee or the hourly charges of any attorney retained by Lender in enforcing any of Lender's rights hereunder or in the prosecution or defense of any litigation related to this Agreement or the transactions contemplated by this Agreement. This indemnification shall survive the termination or expiration of this Agreement. (m) If, at Debtor's request, Lender sends any certificate of title, instrument, document or agreement to Debtor or its designee by expedited delivery, Debtor agrees to pay Lender a special handling fee of $25 plus the actual cost of the expedited delivery service. (n) Consent to Telephone Calls and Monitoring. Debtor expressly agrees that Lender, its Affiliates, anyone to whom Lender sells or assigns any of Debtor's obligations hereunder, and any of their agents and representatives (collectively, the "Lender Parties"), may contact and communicate with Debtor and its officers, employees and agents (collectively, the "Debtor Parties") using automatic telephone dialing systems, artificial or prerecorded voice message systems and text messaging systems, in order to provide any Debtor Party with information or to seek information about, or to otherwise discuss (A) this Agreement and any transactions hereunder, or (B) any other agreements or transactions that any Debtor Party may now have or may in the future establish or conduct with any Lender Party. Debtor's authorization shall include without limitation contacts to discuss or obtain information about missed or late payments or other amounts any Debtor Party owes any Lender Party. Debtor authorizes the Lender Parties to make such contacts using any telephone numbers (including without limitation wireless, landline and VOIP numbers) that any Debtor Party has supplied or may in the future supply in connection with (i) this Agreement or the transactions hereunder, or (ii) any other agreement or transaction any Debtor Party may now have or may in the future establish or conduct with any Lender Party. Debtor acknowledges that anyone with access to a Debtor Party's telephone may listen to the voice messages a Lender Party leaves such Debtor Party or read the text messages a Lender Party sends such Debtor Party, and Debtor agrees that no Lender Party will have any liability for anyone accessing such messages. Debtor further acknowledges that, when a Debtor Party receives a telephone call or text message from a Lender Party, the Debtor Party may incur a charge from the company that provides it with telecommunications, wireless and/or data services, and Debtor agrees that no Lender Party will have any liability as a result of such charges. Debtor expressly authorizes the Lender Parties to monitor and record calls from any Debtor Party. Debtor represents that it is the owner and/or primary user of any number or email address provided to the Lender Parties, and agrees that it will notify Lender if this is no longer true as to any such number or email address. Debtor further acknowledges that its authorizations, representations and agreements in this paragraph were a material inducement to Lender entering into this Agreement.

**7.4    Additional Covenants and Oral Agreement.** THIS WRITTEN AGREEMENT REPRESENTS THE FINAL AGREEMENT BETWEEN THE PARTIES AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS, OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES. THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES.

**7.5    Waiver of Trial By Jury.** LENDER AND DEBTOR HEREBY WAIVE ANY RIGHT TO TRIAL BY JURY IN ANY ACTION RELATING TO THIS AGREEMENT. LENDER AND DEBTOR HEREBY, FOR THEMSELVES, THEIR SUCCESSORS AND ASSIGNS, WAIVE ANY RIGHT TO SUE FOR OR COLLECT FROM THE OTHER PARTY ANY INDIRECT, SPECIAL, INCIDENTAL, PUNITIVE OR CONSEQUENTIAL DAMAGES OF ANY CHARACTER AS A RESULT OF OR RELATING TO THIS AGREEMENT, THE TRANSACTIONS CONTEMPLATED BY THIS AGREEMENT OR THE ENFORCEMENT BY EITHER PARTY OF ITS RIGHTS UNDER THIS AGREEMENT EXCEPT TO THE EXTENT THAT ANY SUCH DAMAGES ARE PROVEN TO BE THE DIRECT RESULT OF THE GROSS NEGLIGENCE OR WILLFUL MISCONDUCT OF THE OTHER PARTY.

**7.6    Governing Law/Choice of Venue.** Anything in this Agreement to the contrary notwithstanding, the transactions contemplated by this Agreement shall be deemed approved and entered into within the State of Illinois and all credit or other financial accommodations extended by Lender under this Agreement shall be deemed extended from and subject to the laws of the State of Illinois (without regard to the conflicts of law principles of such State) regardless of the location of Debtor or any of the Equipment. Any legal action or proceeding with respect to this Agreement or the transactions contemplated by this Agreement shall be brought exclusively in the federal or state courts located in Cook County, Illinois, and Debtor accepts for itself and in respect of its property, generally and unconditionally, the jurisdiction of the aforesaid courts; provided, however, that nothing in this Agreement shall limit or restrict the right of Lender to commence any proceeding in the federal or state courts in the state in which the Equipment is located to the extent Lender deems such proceeding necessary or advisable to exercise remedies available under this Agreement or to commence legal proceedings or otherwise proceed against Debtor in any other jurisdiction. Lender and Debtor hereby irrevocably waive any objection, including any objection to the laying of venue or based on the grounds of forum non conveniens that any of them may now or hereafter have to the bringing of any such action or proceeding in such jurisdictions.

**7.7    Execution and Transmission of Documentation.** This Agreement and any schedules, exhibits, annexes or related instruments (each an "Instrument") will be created and evidenced as follows: (i) we, Lender, will deliver to you, Debtor, an electronic or paper version of each Instrument; (ii) you will (A) print and sign (and

Page 4 of 7 of Loan and Security Agreement dated JANUARY 23, 2023 between OBERWEIS DAIRY, INC. (Debtor) and BMO HARRIS BANK N.A. (Lender).
621700 - Fund off fax
1.16T  03/2022
Doc Request : ██████5001
PRICINGENGINE 918/556                                    ORIGINAL FOR BMO HARRIS BANK

initial where indicated), using ink on paper (a "manual" signature), or(B) if instructed or expressly permitted by us in writing, sign by electronic or digital means (an "electronic" signature), the signature page of each such Instrument and deliver the same to us by electronic, facsimile or other means; (iii) we will sign (electronically, digitally or manually, at our option) each signature page (if the Instrument requires our signature); and (iv) we will attach each fully signed signature page to an electronic or printed paper copy of the applicable Instrument. You agree that we may convert any Instrument you sign manually into an electronic record and store it in a document management system designated by us, and you hereby agree to adopt the electronic image of your manual signature as your valid and binding electronic signature. You hereby represent and warrant that you have not modified the Instrument sent to you for signature. Upon your one-time request for a copy of any fully signed Instrument promptly after it has been produced by this process, we will make the same available to you by electronic or other means. Each Instrument produced by this process will be conclusively presumed to be identical to the version signed or initialed by you, and we may (at our option) retain only a copy of such Instrument and dispose of the version containing your manual signature. We both intend that each Instrument produced by this process shall be for all purposes (including without limitation perfection of security interests and admissibility of evidence) the sole original authenticated instrument; and to the extent, if any, that any Instrument constitutes chattel paper (as the term is defined in the applicable Uniform Commercial Code), the resulting electronic Instrument shall be the single authoritative copy (as that term is used in the applicable Uniform Commercial Code) and no security interest in such Instrument may be created through the transfer or possession of any counterpart or copy thereof, other than the Instrument produced by this process. You agree not to raise as a defense to the enforcement of any Instrument that you executed such Instrument by electronic or other means or used electronic or other means to transmit your signature on such Instrument. Notwithstanding anything to the contrary herein, we reserve the right to require you to sign any Instrument manually and to deliver to us an original of such Instrument containing your manual signature. Any Instrument may be executed in any number of counterparts and by different parties on separate counterparts and all of such counterparts shall together constitute one and the same Instrument.

[Remainder of Page Intentionally Left Blank]

Page 5 of 7 of Loan and Security Agreement dated JANUARY 23, 2023 between OBERWEIS DAIRY, INC. (Debtor) and BMO HARRIS BANK N.A. (Lender).
621700 - Fund off fax
1.16T  03/2022
Doc Request ▮▮▮▮▮5001
PRICINGENGINE 3187556                                    ORIGINAL FOR BMO HARRIS BANK

## IMPORTANT INFORMATION ABOUT ESTABLISHING A RELATIONSHIP WITH BANK

To help the United States Government fight terrorism and money laundering, Federal law requires us to obtain, verify, and record information that identifies each person or business that opens an account or establishes a relationship. What this means for you: when you open an account or establish a relationship, we will ask for your name, street address, date of birth, and identification number, such as a social security number or taxpayer identification number. For businesses, we will ask for the business name, street address and tax identification number. Federal law requires us to obtain this information. We may also ask to see your driver's license or other identifying documents that will allow us to identify you. We appreciate your cooperation.

## DELIVERY AND ACCEPTANCE OF EQUIPMENT
(Check Appropriate Box)

Debtor's obligations and liabilities to Lender are absolute and unconditional under all circumstances and regardless of any failure of operation or Debtor's loss of possession of any item of Equipment or the cessation or interruption of Debtor's business for any reason whatsoever.

☒ On JANUARY 23, 2023, the Equipment being purchased with the proceeds of this Agreement was delivered to Debtor with all installation and other work necessary for the proper use of the Equipment completed at a location agreed upon by Debtor; the Equipment was inspected by Debtor and found to be in satisfactory condition in all respects and delivery was unconditionally accepted by Debtor.

☐ The Equipment being purchased with the proceeds of this Agreement has not yet been delivered to or accepted by Debtor and, upon delivery, Debtor agrees to execute such delivery and acceptance certificate as Secured Party requires.

☐ All of the Equipment was acquired by Debtor prior to the date hereof and was previously delivered to and unconditionally accepted by Debtor.

| | |
|---|---|
| Dated: **JANUARY 23, 2023** | Debtor(s) hereby acknowledge(s) receipt of an exact copy of this contract. |
| Lender: BMO HARRIS BANK N.A. | Debtor: **OBERWEIS DAIRY, INC.** |

By: _April Rmc_

Name: _April Robinson_

Title: AUTHORIZED SIGNER

300 E. JOHN CARPENTER FREEWAY
(Street Address)

IRVING, TEXAS 75062-2712
(City, State and Zip Code)

E-SIGNED by : Joe Oberweis
on 2023-01-23 13:50:05 GMT

By: _____

Name: **JOE OBERWEIS**

Title: **CEO**

State of Organization: **IL**

Principal Residence/Chief Executive Office/Place of Business:

951 ICE CREAM DR
(Street Address)

NORTH AURORA, IL 60542
(City, State and Zip Code)

Billing/Invoice Address:

_____
(Address)

_____
(City, County, State and Zip Code)

When not in use, the Equipment will be kept at:

951 ICE CREAM DR
(Equipment Street)

NORTH AURORA, KANE, IL 60542
(Equipment City, County, State, and Zip)

Page 6 of 7 of Loan and Security Agreement dated JANUARY 23, 2023 between OBERWEIS DAIRY, INC. (Debtor) and BMO HARRIS BANK N.A. (Lender).
621700 - Fund off fax
1.16T  03/2022
Doc Request : ████5001
PRICINGENGINE 3187556                                    ORIGINAL FOR BMO HARRIS BANK

Agreement Number: ████5001

# SCHEDULE A

Attached to and made a part of a _____ **LOAN AND SECURITY AGREEMENT** _____ dated _____ **JANUARY 23, 2023** _____

(Name of document, such as Security Agreement)

between OBERWEIS DAIRY, INC. and BMO HARRIS BANK N.A..

(Describe property fully, including year if appropriate, make, model, kind of unit, serial number and any other pertinent information.)

| Year | Manufacturer | Model | Description | Serial Number |
|------|--------------|-------|-------------|---------------|
| 2023 | FREIGHTLINER | M2-SERIES | M2-SERIES: M106 CONV CAB TRACTOR 4X2 (CA72-84) | 1FVACWFC9PHNZ7360 |
| 2022 | HERCULES | VAN BODY | VAN BODY | NZ7360 |
| 2023 | FREIGHTLINER | MT45G | MT45G | 4UZAC2G71PCUE8855 |
| 2022 | MORGAN | VAN BODY | VAN BODY | UE8855 |
| 2023 | FREIGHTLINER | MT45G | MT45G | 4UZAC2G75PCUE8857 |
| 2022 | MORGAN | VAN BODY | VAN BODY | UE8857 |
| 2023 | FREIGHTLINER | MT45G | MT45G | 4UZAC2G76PCUE8849 |
| 2022 | MORGAN | VAN BODY | VAN BODY | UE8849 |
| 2023 | FREIGHTLINER | MT45G | MT45G | 4UZAC2G76PCUE8852 |
| 2022 | MORGAN | VAN BODY | VAN BODY | UE8852 |

**OBERWEIS DAIRY, INC.**

BY: E-SIGNED by : Joe Oberweis
on 2023-01-23 13:50:12 GMT

Name: _JOE OBERWEIS_

TITLE: _CEO_

Page 7 of 7 of Loan and Security Agreement dated JANUARY 23, 2023 between OBERWEIS DAIRY, INC. (Debtor) and BMO HARRIS BANK N.A. (Lender).
621700 - Fund off fax
1.16T  03/2022
Doc Request : ████5001
PRICINGENGINE 3187556                              ORIGINAL FOR BMO HARRIS BANK

# Exhibit B

**BMO** ◉ | Transportation Finance        **LOAN AND SECURITY AGREEMENT**

The undersigned debtor, meaning all debtors jointly and severally ("**Debtor**"), to secure the obligations set forth herein grants to the Lender named below (with its successors and assigns, "**Lender**") under the terms and provisions of this agreement (this "**Agreement**") a security interest in the following property (with all present and future attachments, accessions, accessories, replacement parts, repairs and additions or substitutions, "**Equipment**"):

☒ See Attached Schedule A

## PAYMENT SCHEDULE

Debtor promises to pay Lender principal plus pre-computed interest and any administrative fee set forth below (the "Total Amount") of $403,728.48 in 72 installments as follows:

(a) $5,607.34 on MAY 1, 2023 and a like sum on the like date of each month thereafter until fully paid;

(b) In irregular installments as follows:

| # of Payments | Payment Amount | Payment Date |
|---|---|---|

provided, however, that the final installment shall be in the amount of the then remaining unpaid balance plus any and all other accrued and unpaid sums due hereunder.

The interest under this Agreement is pre-computed. The Total Amount is calculated based on interest accruing at an interest rate of 8.89% per annum based on a 360-day year of twelve 30-day months, plus the administrative fee, if any, spread over the life of the loan. The total cost of credit includes such accrued interest and the administrative fee of $500.00 equating to an annual percentage rate of 8.93% based on a 360-day year of twelve 30-day months. Late payments may affect the actual total amount payable due to payment of delinquency charges and/or increased accrued interest. If the Payment Schedule contains (i) a period of longer than a month before the first Payment Date (the excess number of days herein referred to as a "Stub Period") or (ii) any month or months in which a Payment Amount is either not due or is in an amount less than the accrued interest for such month (in either event, such period herein referred to as a "Skip Period"), then at the option of Lender, to the extent permitted by law, the unpaid and accrued interest for such Stub Period or Skip Period may be added to the unpaid principal amount hereunder and shall thereafter accrue interest at the interest rate set forth above.

DELINQUENCY: FOR EACH INSTALLMENT NOT PAID WHEN DUE, DEBTOR AGREES TO PAY LENDER A DELINQUENCY CHARGE CALCULATED ON THE AMOUNT OF SUCH INSTALLMENT AT THE RATE OF 5% OF SUCH INSTALLMENT IF NOT PROHIBITED BY LAW, OTHERWISE AT THE HIGHEST RATE THAT DEBTOR CAN LEGALLY OBLIGATE ITSELF TO PAY AND/OR LENDER CAN LEGALLY COLLECT.

## USE OF PROCEEDS

Lender is hereby irrevocably authorized and directed to disburse the proceeds of this Agreement as follows:

| Amount | Payee (Name and Address) |
|---|---|
| $309,060.20 | FYDA FREIGHTLINER CINCINNATI INC |
| | 1 FREIGHTLINER DR |
| | CINCINNATI, OH 45241 |

Disbursement may be made in Lender's name on Debtor's behalf or in Debtor's name. Disbursement in accordance with the above instructions or any written supplement to these instructions will constitute payment and delivery to and receipt by Debtor of all such proceeds.

PAYMENT ADDRESS: All amounts payable under this Agreement are payable at Lender's address shown below or at such other address as Lender may specify from time to time in writing. All written communication concerning disputed amounts, including any check or other payment instrument that (i) indicates that the written payment constitutes "payment in full" or is tendered as full satisfaction of a disputed amount or (ii) is tendered with other conditions or limitations (collectively a "Disputed Payment") must be mailed or delivered to us at the address for billing inquiries shown on the invoice or statement and not to the payment address.

## 1.0    THE EQUIPMENT

**1.1**    Disclaimer. LENDER MAKES NO REPRESENTATIONS OR WARRANTIES, EXPRESS OR IMPLIED, AS TO THE QUALITY, WORKMANSHIP, DESIGN, MERCHANTABILITY, SUITABILITY, OR FITNESS OF THE EQUIPMENT FOR ANY PARTICULAR PURPOSE, OR ANY OTHER REPRESENTATION OR WARRANTY WHATSOEVER, EXPRESS OR IMPLIED. Debtor's obligations hereunder are absolute and unconditional notwithstanding the existence, location or condition of any item of Equipment or its suitability for use in Debtor's business.

**1.2**    Equipment Receipt and Use. Debtor warrants and agrees that: the proceeds of the loan and the Equipment will be used solely for business and commercial purposes; the Equipment is free from and will be kept free from all liens, claims, security interests and encumbrances other than that created hereby; Debtor will not, without Lender's prior written consent, sell, rent, lend, encumber, pledge, transfer, secrete or otherwise dispose of any of the Equipment, nor will Debtor permit any such act; the Equipment will be maintained in good operating condition, repair and appearance, and will be used and operated with care, only by qualified personnel in the regular course of Debtor's business; the Equipment shall remain personal property and not become part of any real property regardless of the manner of affixation; Lender may inspect the Equipment and all books and records relating to the Equipment or Debtor's performance under this Agreement at all reasonable times and from time to time; the Equipment will be kept at Debtor's place of business which is indicated immediately below Debtor's signature and will not be removed from said location without the prior written consent of Lender, except that an item of Equipment may be used away from said location in the regular course of Debtor's business provided that (a) such item is not removed from the United States (except for occasional use in Canada), and (b) if such item is not returned to said location within 30 days, Debtor will immediately upon Lender's request and each 30 days thereafter until the item is returned report the then current location thereof to Lender in writing.

**1.3**    Insurance. Debtor shall at all times bear all risk of loss, damage to or destruction of the Equipment, and shall notify Lender if any of the Equipment is lost, damaged or destroyed. Debtor agrees to maintain insurance on the Equipment for the actual cash value thereof and for the life of this Agreement, covering all risks of physical loss or damage and such other risks as Lender may require, in form and amount and with insurers chosen by Debtor and satisfactory to Lender. Debtor agrees to deliver promptly to Lender certificates or, if requested, policies of insurance satisfactory to Lender, each with a standard long-form loss-payable endorsement naming Lender, its agent or such other party as Lender may from time to time instruct, and its successors and assigns, as loss-payee as their interests may appear. Each policy shall provide that Lender's interest therein will not be invalidated by the acts, omissions or neglect of anyone other than Lender, and shall provide that coverage may not be canceled or altered by the insurer except upon 30 days prior written notice to Lender. Lender's acceptance of policies in lesser amounts or risks will not be a waiver of Debtor's foregoing obligation. Debtor assigns to Lender all proceeds of any physical damage insurance maintained by Debtor with respect to the Equipment and any and all returned premiums, up to the amount owing hereunder by Debtor. Debtor directs all insurers to pay such proceeds directly to Lender and authorizes Lender to endorse Debtor's name to all remittances without the joinder of Debtor.

**1.4**    Compliance With Law. Debtor shall comply with all laws, rules and regulations applicable to Debtor and/or the operation of the Equipment, including without

Page 1 of 7 of Loan and Security Agreement dated FEBRUARY 27, 2023 between OBERWEIS DAIRY, INC. (Debtor) and BMO HARRIS BANK N.A. (Lender).
621700 - Fund off fax
1.16T 03/2022
Doc Request 3█████B001
PRICINGENGINE 3200428                    ORIGINAL FOR BMO HARRIS BANK

limitation, the USA PATRIOT Act and all laws, rules and regulations relating to import or export controls, anti-money laundering and terrorist financing.

## 2.0   SECURITY INTEREST

**2.1   Security Interest.** Debtor hereby grants to Lender a first priority security interest in the Equipment to secure (a) payment of the Total Amount and all other obligations of Debtor to Lender under this Agreement, (b) the payment and performance of all other debts, liabilities and obligations of Debtor of every kind and character, whether now existing or hereafter arising, to Lender, whether under this Agreement or any other agreement, and (c) the payment and performance of all debts, liabilities and obligations of Debtor of every kind and character, whether now existing or hereafter arising, to each of Lender's Affiliates ("Liabilities"). For the purposes of this Agreement, an "Affiliate" of any party means and includes any direct or indirect parent, subsidiary or sister entity of that party and any successor or assign of any of them. Any sums at any time owing to Debtor and in the possession of Lender or any such Affiliate shall secure the Liabilities of Debtor to Lender and any Affiliate of Lender. Upon any assignment of this Agreement by Lender, the security interests granted herein will be assigned to and inure to the benefit of such assignee and the Affiliates of such assignee. The security interests granted herein shall continue to be effective regardless of any retaking or redelivery of the Equipment to Debtor.

**2.2   Perfection and Preservation of Security Interest.** Debtor agrees, at its own cost and expense: to do everything necessary or desirable to perfect and preserve the security interests granted hereunder; to extinguish or defend any action, proceeding or claim affecting the Equipment; and to pay promptly any taxes, assessments, license fees and other public or private charges when levied or assessed against the Equipment or this Agreement. Debtor authorizes Lender or any officer, employee or designee of Lender to file a financing statement describing the Equipment for itself and as representative of its Affiliates. Debtor agrees to execute and deliver to Lender, upon Lender's request, such documents, records and assurances as Lender deems necessary or advisable to confirm or perfect the security interest in the Equipment and Lender's rights hereunder.

**2.3   Location of Debtor.** (i) If Debtor is a registered organization, its state of organization is in the state set forth immediately below its signature on the last page of this Agreement and Debtor agrees that it will not change its form or state of organization without 30 days prior written notice to Lender. (ii) If Debtor is an individual, his/her principal place of residence is at the address set forth immediately below his/her signature on the last page of this Agreement and, if Debtor changes Debtor's principal residence, Debtor will notify Lender in writing of a change in his/her principal place of residence within 30 days of such change. Debtor agrees to reimburse Lender for all costs incurred by Lender related to any such change.

## 3.0   ACCOUNT MANAGEMENT AND PAYMENT PROCESSING

**3.1   Application of Payments.** All payments made by Debtor to Lender pursuant to this Agreement may be applied by Lender, in its sole and absolute discretion, to delinquency charges, interest and other such charges due hereunder, to principal due hereunder, and to any other Liabilities due hereunder or under any other agreement, in any order and manner selected by Lender. Debtor waives any right it may have to direct the application of any payments made by it to Lender, and Lender may at its option offset and deduct any liability or obligation of Debtor from any or all sums owed by it to Debtor.

**3.2   Debit Transactions.** Lender may but shall not be required to offer Debtor the option of paying any of Debtor's obligations to Lender through printed or electronic checks, drafts or charges ("Debit Transactions"). Each such Debit Transaction may be orally authorized by Debtor, any representative or officer of Debtor or any other party having access to or control of the account upon which the Debit Transaction is to be charged. Debtor authorizes Lender or any officer, employee or designee of Lender to initiate Debit Transactions from Debtor's account in the orally authorized amount plus Lender's then Debit Transaction Fee. This authorization may be canceled at any time by Debtor giving at least three business days' prior written notice to Debtor's bank and Lender. Debtor authorizes Lender to substitute a Debit Transaction for any check or other remittance submitted by Debtor in the amount of that remittance. Payment by Debit Transactions is not required by Lender nor is its use a factor in the approval of credit.

**3.3   Acceptable Forms of Payment/Payment Processing.** Credit to Debtor's account may be delayed if payment is (a) not received at the address indicated on the related invoice or (b) not accompanied by Debtor's invoice number. Preferred forms of payment include direct debit, wires, company checks and certified checks. Payment in any other form may delay processing or be returned to Debtor. Delayed credit may cause Debtor to incur a late payment fee. All credit for payments of Debtor's account is subject to final payment by the institution on which the item of payment was drawn. Debtor hereby agrees that any payment, other than a Disputed Payment, made by Debtor by remittance and received by Lender at an address other than the address specified on the related invoice may be replaced, at Lender's option, by Lender with a substitute written or electronic instrument of equal amount and presented to Debtor's financial institution for payment from the account referenced on the remittance from Debtor.

**3.4   Returned Payments.** If a check, draft or other remittance sent by Debtor or a Debit Transaction authorized by Debtor is returned unpaid or rejected for any reason other than the lack of a proper endorsement by Lender, the application of such payment to Debtor's Liabilities will be reversed and Debtor shall immediately pay Lender the amount of such returned payment, plus any delinquency charge accruing as the result of such reversal. Debtor shall further pay Lender any amount charged to Lender by any depositary institution because of such return and an additional handling charge in the amount of $25, or if applicable law limits or restricts the amount of such reimbursement and/or handling charge, the amounts chargeable under this provision will be limited and/or restricted in accordance with applicable law.

**3.5   Authorization to Share Information.** Lender may receive from and disclose to any individual, corporation, business trust, association, company, partnership, joint venture, or other entity (collectively, the "Entity"), including, without limiting the generality of the foregoing, any Affiliate of Lender and any credit reporting agency or other entity whether or not related to Lender for any purpose, information about Debtor, Debtor's accounts, credit application and credit experience with Lender and Debtor authorizes any Entity to release to Lender or any Affiliate of Lender any information related to Debtor, Debtor's accounts, credit experience and account information regarding Debtor. **This shall be continuing authorization for all present and future disclosures of such information made by Lender, or any Entity requested to release such information to Lender.**

**3.6   Maximum Interest Rate.** The parties hereto intend to comply with any applicable usury laws. Accordingly, they agree that, any provisions in this Agreement or any other agreement, document or communication to the contrary notwithstanding, this Agreement shall in no event require the payment or permit the collection of interest or any amount in the nature of interest or fees (collectively "Interest Amount") in excess of the maximum amount permitted by applicable law as now or hereafter construed by a court of competent jurisdiction. If any such excess Interest Amount contracted for, charged or received pursuant to this Agreement, or if all of the principal balance under this Agreement shall be prepaid, or if the maturity of any amount under this Agreement is accelerated, so that under any of such circumstances or any other circumstance whatsoever the Interest Amount contracted for, charged or received shall exceed the maximum amount of Interest permitted by applicable law as so construed, then in such event: (a) the Interest Amount hereunder shall be limited to the maximum amount lawfully permitted, and (b) any excess Interest Amount that may have been received shall, at Lender's option, either be credited to the unpaid principal balance of the loan as a prepayment of principal, without any prepayment fee, or refunded to Debtor, and the effective interest rate (taking into account all Interest Amounts) shall automatically be reduced to the maximum lawful rate allowed under applicable law as now or hereafter construed by a court of competent jurisdiction. Without limiting the foregoing, all calculations of the interest rate (taking into account all Interest Amounts) contracted for, charged or received with respect to this Agreement which are made for the purpose of determining whether such rate exceeds the maximum lawful rate, shall be made, to the fullest extent permitted by applicable law, by amortizing, prorating, allocating and spreading in equal parts during the period of the full stated term of the indebtedness, all Interest Amounts at any time contracted for, charged to or received from Debtor in connection with such indebtedness.

## 4.0   PERFORMANCE BY LENDER

**4.1   Performance.** If Debtor fails to perform any of its obligations hereunder, Lender may, but shall not be obligated to, perform the same for the account of Debtor to protect the interest of Lender or Debtor or both, at Lender's option. Debtor shall immediately repay to Lender any amounts paid by Lender together with interest thereon at the rate payable upon acceleration of Debtor's obligations under this Agreement. Performance by Lender will not constitute a waiver of any default by Debtor.

**4.2   Power of Attorney.** DEBTOR HEREBY APPOINTS LENDER OR ANY OFFICER, EMPLOYEE OR DESIGNEE OF LENDER AS DEBTOR'S ATTORNEY-IN

Page 2 of 7 of Loan and Security Agreement dated FEBRUARY 27, 2023 between OBERWEIS DAIRY, INC. (Debtor) and BMO HARRIS BANK N.A. (Lender).
621700 - Fund off fax
1.16T 03/2022
Doc Request : ███████3001
PRICINGENGINE 3200428                    ORIGINAL FOR BMO HARRIS BANK

FACT TO, IN DEBTOR'S OR LENDER'S NAME: (a) PREPARE, EXECUTE AND SUBMIT ANY NOTICE OR PROOF OF LOSS IN ORDER TO REALIZE THE BENEFITS OF ANY INSURANCE POLICY INSURING THE EQUIPMENT; (b) PREPARE, EXECUTE AND FILE ANY AGREEMENT, DOCUMENT, FINANCING STATEMENT, TITLE APPLICATION, INSTRUMENT (OR ANY OTHER WRITING OR RECORD) THAT, IN LENDER'S OPINION, IS NECESSARY TO PERFECT AND/OR GIVE PUBLIC NOTICE OF THE INTERESTS OF LENDER IN ANY EQUIPMENT; AND (c) ENDORSE DEBTOR'S NAME ON ANY REMITTANCE REPRESENTING PROCEEDS OF ANY INSURANCE RELATING TO THE EQUIPMENT OR THE PROCEEDS OF THE SALE, LEASE OR OTHER DISPOSITION OF THE EQUIPMENT (WHETHER OR NOT THE SAME IS A DEFAULT HEREUNDER). This power is coupled with an interest and is irrevocable as long as any Liabilities remain unpaid.

**5.0    DEFAULT AND REMEDIES**

**5.1    Events of Default.** Time is of the essence. An event of default shall occur if: (a) Debtor fails to pay when due any amount owed by it to Lender or any Affiliate of Lender under this Agreement; (b) Debtor or a Guarantor fails to pay any Liabilities when due to Lender or any Affiliate of Lender or is otherwise in default under any other document, agreement or instrument; (c) Debtor or a Guarantor defaults under the terms of any secured indebtedness or indebtedness of a material amount to any other party; (d) Debtor or a Guarantor fails to perform or observe any other term or provision to be performed or observed by it hereunder or under any other instrument or agreement furnished by Debtor or a Guarantor to, or otherwise acquired by, Lender or any Affiliate of Lender; (e) (i) Debtor or a Guarantor becomes insolvent, ceases to do business as a going concern, makes an assignment for the benefit of creditors, or takes advantage of any law for the relief of debtors, or (ii) a petition in bankruptcy or for an arrangement, reorganization, or similar relief is filed by or against Debtor or a Guarantor, or (iii) any property of Debtor or a Guarantor is attached, or a trustee or receiver is appointed for Debtor or a Guarantor or for substantial part of its property, or Debtor or a Guarantor applies for such appointment; (f) any of the Equipment is lost or destroyed; (g) there shall occur an appropriation, confiscation, retention, or seizure of control, custody or possession of any Equipment by any governmental authority, governmental agency or instrumentality (such entities, agencies and instrumentalities, collectively, "Governmental Authority"); (h) Debtor or anyone in the control, custody or possession of any Equipment is accused, alleged or charged by any Governmental Authority to have used any Equipment in connection with the commission or any crime (other than a misdemeanor moving violation); (i) there shall be a material adverse change in any of the (A) condition (financial or otherwise), business performance, prospects, operations or properties of Debtor or a Guarantor, (B) legality, validity or enforceability of this Agreement (C) perfection or priority of the lien granted in favor of Lender pursuant to this Agreement, or (D) ability of the Debtor to repay the indebtedness or perform its obligations under this Agreement; (j) rights and remedies of Lender under this Agreement are impaired; (k) there shall be a death of majority owner of Debtor or a Guarantor, or there shall be a death of the Debtor or a Guarantor, if an individual; (l) there shall be any lien, claim or encumbrance on any of the Equipment except in favor of Lender or as otherwise granted herein; (m) there is a material change in the management, ownership or control of Debtor or any Guarantor, unless Lender has provided its prior written consent thereto; or (n) Debtor or any Guarantor is convicted of any felony offense, whether or not related to the Equipment.

**5.2    Remedies.** Upon the occurrence of an event of default, and at any time thereafter as long as the default continues, Lender may, at its option, with or without notice to Debtor (i) declare this Agreement to be in default, (ii) declare the indebtedness hereunder to be immediately due and payable, (iii) declare all other debts then owing by Debtor to Lender to be immediately due and payable, and (iv) exercise all of the rights and remedies of a secured party under the Uniform Commercial Code and any other applicable laws, including the right to require Debtor to assemble the Equipment and deliver it to Lender at a place to be designated by Lender and to enter any premises where the Equipment may be without judicial process and take possession thereof. Any property other than Equipment that is in or upon the Equipment at the time of repossession may be taken and held without liability. Any requirement that Lender give reasonable notice regarding the sale or other disposition of Equipment will be met if such notice is mailed to Debtor at its last known address at least ten days before such sale or other disposition. Lender may dispose of any Equipment at a public or private sale or at auction. Lender may buy at any sale and become the owner of the Equipment. Debtor agrees that Lender may bring legal proceedings to enforce the payment and performance of Debtor's obligations hereunder in any court in the State shown in Lender's address set forth herein, and service of process may be made upon Debtor by mailing a copy of the summons to Debtor at its address shown herein. Debtor shall also pay to Lender all expenses of retaking, holding, preparing for sale, selling and the like, including without limitation (a) the reasonable fees of any attorneys retained by Lender, and (b) all other legal expenses incurred by Lender. Debtor agrees that Debtor is liable for any deficiency remaining after any disposition of Equipment after default. Lender may sell the Equipment without giving any warranties as to the Equipment. Lender may disclaim any warranties of title, possession, quiet enjoyment, or the like. This procedure will not be considered to adversely affect the commercial reasonableness of any sale of the Equipment.

**5.3    Acceleration Interest.** Debtor agrees to pay Lender, upon acceleration of the above indebtedness, interest on all sums then owing hereunder at the rate of 1 1/2% per month if not prohibited by law, otherwise at the highest rate Debtor can legally obligate itself to pay or Lender can legally collect under applicable law.

**6.0    PREPAYMENT**

**6.1    Partial Prepayment and Reschedule.** (a) Debtor does not have the right to prepay only a portion of the balance of this Agreement prior to maturity. (b) If there are several units subject to this Agreement and Lender either (i) requires (as a result of a casualty loss) or (ii) permits all indebtedness that relates to a specific unit to be paid in full, Lender will apply the proceeds identified as relating thereto to the balance due under this Agreement and reschedule the remaining indebtedness under this Agreement over the then remaining term in accordance with the provisions set forth below. (c) If Lender receives one or more remittance(s) in an aggregate amount in excess of the amounts then due and unpaid under this Agreement (other than any amounts paid pursuant to 6.1(b) above) ("Excess Remittances") Lender may, at its option: (i) apply any portion of such Excess Remittances (A) in payment of obligations then due or past due under any other agreement Debtor has with Lender, (B) to the balance due under this Agreement in any manner selected by Lender, with or without rescheduling the remaining indebtedness over the then remaining term; or (ii) return such excess amount to Debtor at its last known address. (d) The interest included in this Agreement is precomputed and accrues in arrears; accordingly, early payment of one or more installments prior to their maturity date may not reduce the total interest payable by Debtor under this Agreement unless Lender reschedules the remaining payments. If Lender reschedules the indebtedness under this Agreement, Lender will deduct the unaccrued portion of interest on the unpaid balance under this Agreement at the time of reschedule (which the parties agree shall be deemed to have been made and shall be effective as of the next scheduled due date (the "Effective Reschedule Date") calculated using any method selected by Lender as permitted by applicable law, and recalculate precomputed interest on such unpaid balance as of the Effective Reschedule Date. Debtor will not receive any rebate of, or credit for, interest relating to any period prior to the Effective Reschedule Date. (e) If Lender requires (as a result of a casualty loss) or permits Debtor to make a partial prepayment pursuant to clause (b) of this Section, Debtor agrees that it will at the time of such prepayment pay a prepayment fee equal to the pro rata portion of the prepayment fee that would have been paid pursuant to Section 6.2 below if Debtor had prepaid the indebtedness under this Agreement in full, computed based on the percentage of the outstanding Total Amount being prepaid (for purposes of calculating the outstanding Total Amount, no effect shall be given to any prior prepayments).

**6.2    Prepayment In Full.** Subject to the terms of this provision, Debtor may prepay the indebtedness under this Agreement in full (but not in part) at any time, so long as Debtor is not in default hereunder; provided, however, that any prepayment that is not paid on a scheduled payment due date shall be deemed to have been made and shall be effective as of the next scheduled due date (the "Effective Prepayment Date"). If Debtor makes a prepayment in full prior to the last twelve months of this Agreement (whether as a result of a casualty loss or otherwise), Lender accelerates the maturity of the indebtedness hereunder following a default, or a petition is filed by or against Debtor under any bankruptcy or insolvency law, Debtor must pay a prepayment fee equal to the lesser of (a) (x) 1% of the Total Amount outstanding as of the Effective Prepayment Date (for purposes of this calculation, no effect shall be given to any prior prepayments) multiplied by (y) the number of full twelve-month periods remaining until the originally scheduled or later extended due date of the final installment payable under this Agreement as of prepayment, and (b) the maximum prepayment and/or acquisition charge allowed by applicable law. Debtor and Lender acknowledge and agree that the prepayment fee is a reasonable estimate of the actual or anticipated harm sustained by Lender for Debtor's prepayment of the Total Amount. For purposes of calculating the prepayment amount and any prepayment fee, any unearned interest that would accrue after the Effective Prepayment Date shall be excluded from the calculation of the Total Amount outstanding as of the Effective Prepayment Date. Debtor will not receive any rebate of, or credit for, interest relating to any period prior to the Effective Prepayment Date. Debtor agrees that all accrued and unpaid late charges and other amounts due from Debtor under this Agreement will be paid concurrently with any such prepayment.

**7.0    ASSIGNMENT AND GENERAL PROVISIONS**

Page 3 of 7 of Loan and Security Agreement dated FEBRUARY 27, 2023 between OBERWEIS DAIRY, INC. (Debtor) and BMO HARRIS BANK N.A. (Lender).
621700 - Fund off fax
1.16T 3/2022
Doc Request :           8001
PRICINGENGINE 3200428                                    ORIGINAL FOR BMO HARRIS BANK

**7.1**   **Chattel Paper.** The only copy of this Agreement that constitutes "Chattel Paper" for all purposes of the Uniform Commercial Code is the copy marked "ORIGINAL FOR BMO HARRIS BANK" which is delivered to and held by Lender.

**7.2**   **Assignment and Waiver.** This Agreement may not be assigned by Debtor without the prior written consent of Lender. Lender may sell, transfer or assign any or all rights under this Agreement or sell participations herein without notice to, acknowledgment of, or consent from Debtor. Debtor hereby (a) consents to such assignment or participation and agrees not to assert against Lender or any such assignee or participant any claims, counterclaims, claims in recoupment, abatement, reduction, defenses, or set-offs for breach of warranty or for any other reason which Debtor could assert against Lender, any such assignee or participant or the manufacturer of the Equipment, except defenses which cannot be waived under the Uniform Commercial Code; and (b) agrees to make and/or settle any and all claims with regard to the Equipment directly and exclusively against and with the manufacturer. Debtor agrees that no assignee or participant will have any obligations or liabilities under this Agreement to Debtor or to any other person by reason of any assignment or participation. Debtor hereby waives any right of set-off Debtor may now or hereafter have against Lender or any assignee of or participant in this Agreement. Upon Lender's assignment of Lender's entire interest in this Agreement, Lender shall be relieved, from and after the date of such assignment, of any liability for the performance of any obligation of Lender contained in this Agreement or any document executed in conjunction with this Agreement.

**7.3**   **General.** (a) Waiver of any default shall not be a waiver of any other default. (b) All of Lender's rights are cumulative and not alternative. (c) No waiver or change in this Agreement shall bind Lender unless in writing signed by one of its authorized representatives. (d) Any provision hereof contrary to, prohibited by or invalid under applicable laws or regulations shall be inapplicable and deemed omitted herefrom, but shall not invalidate the remaining provisions hereof. (e) Debtor authorizes Lender to correct patent errors herein and to make changes to this Agreement or to any related schedule that benefit Debtor. In addition, if the funding amount Debtor requests Lender to disburse exceeds the principal portion of the Total Amount due to changes in calculation of taxes, configuration of the Equipment or other factors affecting the cost of the Equipment, and if such an increase is within the limits of Lender's credit approval, Debtor authorizes Lender, upon written notice to Debtor, to increase the principal portion of the Total Amount by not more than fifteen percent and adjust the Total Amount and the installment amounts payable under this Agreement or any related schedule accordingly. (f) Any captions to the provisions of this Agreement are for convenience only and do not limit or affect the application or interpretation of this Agreement. (g) All of the terms and provisions of this Agreement shall apply to and be binding upon Debtor and its heirs, personal representatives, successors and assigns and shall inure to the benefit of Lender and its successors and assigns. (h) The acceptance by Lender of any remittance from a party other than Debtor shall in no way constitute Lender's consent to the transfer of any of the Equipment to such party. (i) Debtor represents and warrants that there is no material pending or threatened investigation by any governmental authority, litigation or other legal proceeding against or involving Debtor. (j) So long as any of the Liabilities remains unpaid or unperformed, Debtor will provide Lender with such financial information as Lender may reasonably request, including copies of Debtor's financial statements within 30 days of the end of each of Debtor's fiscal quarters and within 90 days after the end of each of Debtor's fiscal years. Such financial statements shall be prepared in accordance with GAAP and on the same basis (reviewed, audited, etc.) as Debtor's financial statements are currently prepared unless advised by Lender otherwise, at which time Debtor will comply with Lender's request. Debtor represents and warrants that all financial statements delivered will present fairly the financial condition and results of operations and cash flows of the Debtor as of the dates thereof and for the periods then ended. (k) Lender may pay fees to or receive fees from the seller or manufacturer of the Equipment, a broker, or other third party in connection with this Agreement. Such fees may affect the rate, terms and Debtor's total cost hereunder. (l) Debtor hereby agrees to indemnify, defend and hold harmless Lender and its Affiliates and respective principals, directors, officers, employees, representatives, agents and third-party advisors from and against any and all losses, disputes, claims, expenses (including, without limitation, legal expenses), damages and liabilities of whatsoever kind and nature arising out of, in connection with, or relating to the Equipment, this Agreement or any other document related hereto. If allowed by law, the legal expenses shall include the amount of any flat fee, retainer, contingent fee or the hourly charges of any attorney retained by Lender in enforcing any of Lender's rights hereunder or in the prosecution or defense of any litigation related to this Agreement or the transactions contemplated by this Agreement. This indemnification shall survive the termination or expiration of this Agreement. (m) If, at Debtor's request, Lender sends any certificate of title, instrument, document or agreement to Debtor or its designee by expedited delivery, Debtor agrees to pay Lender a special handling fee of $25 plus the actual cost of the expedited delivery service. (n) Consent to Telephone Calls and Monitoring. Debtor expressly agrees that Lender, its Affiliates, anyone to whom Lender sells or assigns any of Debtor's obligations hereunder, and any of their agents and representatives (collectively, the "Lender Parties"), may contact and communicate with Debtor and its officers, employees and agents (collectively, the "Debtor Parties") using automatic telephone dialing systems, artificial or prerecorded voice message systems and text messaging systems, in order to provide any Debtor Party with information or to seek information about, or to otherwise discuss (A) this Agreement and any transactions hereunder, or (B) any other agreements or transactions that any Debtor Party may now have or may in the future establish or conduct with any Lender Party. Debtor's authorization shall include without limitation contacts to discuss or obtain information about missed or late payments or other amounts any Debtor Party owes any Lender Party. Debtor authorizes the Lender Parties to make such contacts using any telephone numbers (including without limitation wireless, landline and VOIP numbers) that any Debtor Party has supplied or may in the future supply in connection with (i) this Agreement or the transactions hereunder, or (ii) any other agreement or transaction any Debtor Party may now have or may in the future establish or conduct with any Lender Party. Debtor acknowledges that anyone with access to a Debtor Party's telephone may listen to the voice messages a Lender Party leaves such Debtor Party or read the text messages a Lender Party sends such Debtor Party, and Debtor agrees that no Lender Party will have any liability for anyone accessing such messages. Debtor further acknowledges that, when a Debtor Party receives a telephone call or text message from a Lender Party, the Debtor Party may incur a charge from the company that provides it with telecommunications, wireless and/or data services, and Debtor agrees that no Lender Party will have any liability as a result of such charges. Debtor expressly authorizes the Lender Parties to monitor and record calls from any Debtor Party. Debtor represents that it is the owner and/or primary user of any number or email address provided to the Lender Parties, and agrees that it will notify Lender if this is no longer true as to any such number or email address. Debtor further acknowledges that its authorizations, representations and agreements in this paragraph were a material inducement to Lender entering into this Agreement.

**7.4**   **Additional Covenants and Oral Agreement. THIS WRITTEN AGREEMENT REPRESENTS THE FINAL AGREEMENT BETWEEN THE PARTIES AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS, OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES. THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES.**

**7.5**   **Waiver of Trial By Jury.** LENDER AND DEBTOR HEREBY WAIVE ANY RIGHT TO TRIAL BY JURY IN ANY ACTION RELATING TO THIS AGREEMENT. LENDER AND DEBTOR HEREBY, FOR THEMSELVES, THEIR SUCCESSORS AND ASSIGNS, WAIVE ANY RIGHT TO SUE FOR OR COLLECT FROM THE OTHER PARTY ANY INDIRECT, SPECIAL, INCIDENTAL, PUNITIVE OR CONSEQUENTIAL DAMAGES OF ANY CHARACTER AS A RESULT OF OR RELATING TO THIS AGREEMENT, THE TRANSACTIONS CONTEMPLATED BY THIS AGREEMENT OR THE ENFORCEMENT BY EITHER PARTY OF ITS RIGHTS UNDER THIS AGREEMENT EXCEPT TO THE EXTENT THAT ANY SUCH DAMAGES ARE PROVEN TO BE THE DIRECT RESULT OF THE GROSS NEGLIGENCE OR WILLFUL MISCONDUCT OF THE OTHER PARTY.

**7.6**   **Governing Law/Choice of Venue.** Anything in this Agreement to the contrary notwithstanding, the transactions contemplated by this Agreement shall be deemed approved and entered into within the State of Illinois and all credit or other financial accommodations extended by Lender under this Agreement shall be deemed extended from and subject to the laws of the State of Illinois (without regard to the conflicts of law principles of such State) regardless of the location of Debtor or any of the Equipment. Any legal action or proceeding with respect to this Agreement or the transactions contemplated by this Agreement shall be brought exclusively in the federal or state courts located in Cook County, Illinois, and Debtor accepts for itself and in respect of its property, generally and unconditionally, the jurisdiction of the aforesaid courts; *provided, however,* that nothing in this Agreement shall limit or restrict the right of Lender to commence any proceeding in the federal or state courts located in the state in which the Equipment is located to the extent Lender deems such proceeding necessary or advisable to exercise remedies available under this Agreement or to commence legal proceedings or otherwise proceed against Debtor in any other jurisdiction. Lender and Debtor hereby irrevocably waive any objection, including any objection to the laying of venue or based on the grounds of forum non conveniens that any of them may now or hereafter have to the bringing of any such action or proceeding in such jurisdictions.

**7.7**   **Execution and Transmission of Documentation.** This Agreement and any schedules, exhibits, annexes or related instruments (each an "**Instrument**") will be created and evidenced as follows: (i) we, Lender, will deliver to you, Debtor, an electronic or paper version of each Instrument; (ii) you will (A) print and sign (and

Page 4 of 7 of Loan and Security Agreement dated FEBRUARY 27, 2023 between OBERWEIS DAIRY, INC. (Debtor) and BMO HARRIS BANK N.A. (Lender).
621700 - Fund off fax
1.16T 03/2022
Doc Request :▮▮▮▮▮3001
PRICINGENGINE 3200428                                          ORIGINAL FOR BMO HARRIS BANK

initial where indicated), using ink on paper (a "manual" signature), or(B) if instructed or expressly permitted by us in writing, sign by electronic or digital means (an "electronic" signature), the signature page of each such Instrument and deliver the same to us by electronic, facsimile or other means; (iii) we will sign (electronically, digitally or manually, at our option) each signature page (if the Instrument requires our signature); and (iv) we will attach each fully signed signature page to an electronic or printed paper copy of the applicable Instrument. You agree that we may convert any Instrument you sign manually into an electronic record and store it in a document management system designated by us, and you hereby agree to adopt the electronic image of your manual signature as your valid and binding electronic signature. You hereby represent and warrant that you have not modified the Instrument sent to you for signature. Upon your one-time request for a copy of any fully signed Instrument promptly after it has been produced by this process, we will make the same available to you by electronic or other means. Each Instrument produced by this process will be conclusively presumed to be identical to the version signed or initialed by you, and we may (at our option) retain only a copy of such Instrument and dispose of the version containing your manual signature. We both intend that each Instrument produced by this process shall be for all purposes (including without limitation perfection of security interests and admissibility of evidence) the sole original authenticated Instrument; and to the extent, if any, that any Instrument constitutes chattel paper (as the term is defined in the applicable Uniform Commercial Code), the resulting electronic Instrument shall be the single authoritative copy (as that term is used in the applicable Uniform Commercial Code) and no security interest in such Instrument may be created through the transfer or possession of any counterpart or copy thereof, other than the Instrument produced by this process. You agree not to raise as a defense to the enforcement of any Instrument that you executed such Instrument by electronic or other means or used electronic or other means to transmit your signature on such Instrument. Notwithstanding anything to the contrary herein, we reserve the right to require you to sign any Instrument manually and to deliver to us an original of such Instrument containing your manual signature. Any Instrument may be executed in any number of counterparts and by different parties on separate counterparts and all of such counterparts shall together constitute one and the same Instrument.

[Remainder of Page Intentionally Left Blank]

Page 5 of 7 of Loan and Security Agreement dated FEBRUARY 27, 2023 between OBERWEIS DAIRY, INC. (Debtor) and BMO HARRIS BANK N.A. (Lender).
621700 - Fund off fax
1.16T  03/2022
 Doc Request ▮▮▮▮▮▮001
PRICINGENGINE 3200428                              ORIGINAL FOR BMO HARRIS BANK

## IMPORTANT INFORMATION ABOUT ESTABLISHING A RELATIONSHIP WITH BANK

To help the United States Government fight terrorism and money laundering, Federal law requires us to obtain, verify, and record information that identifies each person or business that opens an account or establishes a relationship. What this means for you: when you open an account or establish a relationship, we will ask for your name, street address, date of birth, and identification number, such as a social security number or taxpayer identification number. For businesses, we will ask for the business name, street address and tax identification number. Federal law requires us to obtain this information. We may also ask to see your driver's license or other identifying documents that will allow us to identify you. We appreciate your cooperation.

## DELIVERY AND ACCEPTANCE OF EQUIPMENT
(Check Appropriate Box)

Debtor's obligations and liabilities to Lender are absolute and unconditional under all circumstances and regardless of any failure of operation or Debtor's loss of possession of any item of Equipment or the cessation or interruption of Debtor's business for any reason whatsoever.

☒ On **FEBRUARY 27, 2023**, the Equipment being purchased with the proceeds of this Agreement was delivered to Debtor with all installation and other work necessary for the proper use of the Equipment completed at a location agreed upon by Debtor; the Equipment was inspected by Debtor and found to be in satisfactory condition in all respects and delivery was unconditionally accepted by Debtor.

☐ The Equipment being purchased with the proceeds of this Agreement has not yet been delivered to or accepted by Debtor and, upon delivery, Debtor agrees to execute such delivery and acceptance certificate as Secured Party requires.

☐ All of the Equipment was acquired by Debtor prior to the date hereof and was previously delivered to and unconditionally accepted by Debtor.

---

Dated:   **FEBRUARY 27, 2023**

Lender:   BMO HARRIS BANK N.A.

By: _____

Name: _____

Title:   AUTHORIZED SIGNER

300 E. JOHN CARPENTER FREEWAY
(Street Address)
IRVING, TEXAS 75062-2712
(City, State and Zip Code)

Debtor(s) hereby acknowledge(s) receipt of an exact copy of this contract.

Debtor:   OBERWEIS DAIRY, INC.

E-SIGNED by : Joe Oberweis
on 2023-02-27 20:31:08 GMT

By: _____

Name: **JOE OBERWEIS**

Title:   **CEO**

State of Organization:   IL

Principal Residence/Chief Executive Office/Place of Business:
951 ICE CREAM DR
(Street Address)
NORTH AURORA, IL 60542
(City, State and Zip Code)

Billing/Invoice Address:

_____
(Address)

_____
(City, County, State and Zip Code)

When not in use, the Equipment will be kept at:

951 ICE CREAM DR
(Equipment Street)
NORTH AURORA, KANE, IL 60542
(Equipment City, County, State, and Zip)

---

Page 6 of 7 of Loan and Security Agreement dated FEBRUARY 27, 2023 between OBERWEIS DAIRY, INC. (Debtor) and BMO HARRIS BANK N.A. (Lender).
621700 - Fund off fax
1.16T  03/2022
Doc Request : ▆▆▆▆3001
PRICINGENGINE 3200428                          ORIGINAL FOR BMO HARRIS BANK

Agreement Number: ████3001

# SCHEDULE A

Attached to and made a part of a _____ **LOAN AND SECURITY AGREEMENT** _____ dated __FEBRUARY 27, 2023__

(Name of document, such as Security Agreement)

between OBERWEIS DAIRY, INC. and BMO HARRIS BANK N.A..

(Describe property fully, including year if appropriate, make, model, kind of unit, serial number and any other pertinent information.)

| Year | Manufacturer | Model | Description | Serial Number |
|------|-------------|-------|-------------|---------------|
| 2023 | FREIGHTLINER | M2-SERIES | M2-SERIES: M106 CONV CAB TRACTOR 4X2 (CA72-84) | 1FVACWFC1PHUE8128 |
| 2022 | HERCULES | VAN BODY | VAN BODY | UE8128 |
| 2023 | FREIGHTLINER | M2-SERIES | M2-SERIES: M106 CONV CAB TRACTOR 4X2 (CA72-84) | 1FVACWFC3PHUE8129 |
| 2022 | HERCULES | VAN BODY | VAN BODY | UE8129 |

**OBERWEIS DAIRY, INC.**

E-SIGNED by : Joe Oberweis
BY: on 2023-02-27 20:31:11 GMT _____

Name: __JOE OBERWEIS__

TITLE: __CEO__

---

Page 7 of 7 of Loan and Security Agreement dated FEBRUARY 27, 2023 between OBERWEIS DAIRY, INC. (Debtor) and BMO HARRIS BANK N.A. (Lender).
621700 - Fund off fax
1.16T  03/2022
Doc Request : ████3001
PRICINGENGINE 3200428                                      ORIGINAL FOR BMO HARRIS BANK

# Exhibit C

# CERTIFICATE OF TITLE OF A VEHICLE

| VEHICLE IDENTIFICATION NO. | YEAR | MAKE | MODEL | BODY STYLE | TITLE NO. |
|---|---|---|---|---|---|
| 1FVACWFC9PHNZ7360 | 2023 | FREIGHTLINER | M2106 | TRUCK | 23097691178 |

**1FVACWFC9PHNZ7360**

| DATE ISSUED | ODOMETER | CCM | MOBILE HOME SQ. FT. | PURCHASED | TYPE TITLE |
|---|---|---|---|---|---|
| 04/07/23 | | | | 01/03/23 NEW | ORIGINAL |

MAILING ADDRESS

LEGEND(S)
MILEAGE NOT REQUIRED

BMO HARRIS BANK NA
PO BOX 35707
BILLINGS  MT  59107-5707

OWNER(S) NAME AND ADDRESS
OBERWEIS DAIRY INC
951 ICE CREAM DR
NORTH AURORA  IL  60542

FIRST LIENHOLDER NAME AND ADDRESS
BMO HARRIS BANK NA
PO BOX 35707
BILLINGS  MT  59107-5707

SECOND LIENHOLDER NAME AND ADDRESS

### RELEASE OF LIEN
The Lienholder on the vehicle described in this Certificate does hereby state that the lien is released and discharged.

Firm Name _____ By _____ Signature of Authorized Agent _____ Date _____

Firm Name _____ By _____ Signature of Authorized Agent _____ Date _____

**NEW LIEN ASSIGNMENT:** The information below must be on an application for title and presented to the Secretary of State.
Secured Party: _____   Address: _____

▶ Federal and State law requires that you state the mileage in connection with the transfer of ownership. Failure to complete or providing a false statement may result in fines and/or imprisonment.

### ASSIGNMENT OF TITLE
The undersigned hereby certifies that the vehicle described in this title has been transferred to the following printed name and address:

I certify to the best of my knowledge that the odometer reading is the actual mileage of the vehicle unless one of the following statements is checked:

☐ 1. The mileage stated is in excess of its mechanical limits.
☐ 2. The odometer reading is not the actual mileage.
   WARNING-ODOMETER DISCREPANCY.

"If this vehicle is one of more than 5 commercial vehicles owned by me, I certify also that the vehicle is not damaged in excess of 33 1/3% of its fair-market value unless this document is accompanied by a salvage application."

NO TENTHS
ODOMETER READING

Signature(s) of Seller(s) _____

Printed Name(s) of Seller(s) _____   DATE OF SALE _____
I am aware of the above odometer certification made by seller.
Signature(s) of Buyer(s) _____   Printed Name _____

I, Alexi Giannoulias, Secretary of State of the State of Illinois, do hereby certify that according to the records on file with my Office, the person or entity named herein is the owner of the vehicle described hereon, which is subject to the above named liens and encumbrances, if any. IN WITNESS WHEREOF, I HAVE AFFIXED MY SIGNATURE AND THE GREAT SEAL OF THE STATE OF ILLINOIS AT SPRINGFIELD

CONTROL NO.

U2892606

*Alexi Giannoulias*
ALEXI GIANNOULIAS, Secretary of State

**DO NOT ACCEPT TITLE SHOWING ANY ERASURES, ALTERATIONS OR MUTILATIONS.**

---

MUST BE COMPLETED BY SELLER

DO NOT DETACH UNTIL SOLD
NOTICE OF SALE

SEE INSTRUCTIONS ON REVERSE

FREIGHTLINER   2023                    1FVACWFC9PHNZ7360
Vehicle Make      Vehicle Year        Vehicle Identification Number (VIN)         Date

Name of Seller (Current Registered Owner)        Name of Buyer

Complete Address of Seller        Complete Address of Buyer

City      State      ZIP        City      State      ZIP

Under penalties of perjury, I hereby certify that the foregoing is true and correct under the laws of the United States.

Seller's Signature        Printed Name of Seller        Date

**FIRST REASSIGNMENT DEALER ONLY**

The undersigned hereby certifies that the vehicle described in this title is free and clear of all liens, except as noted, and has been transferred to the following printed name and address:

Name of Purchaser | Street | City | State | Zip

I certify to the best of my knowledge that the odometer reading is the actual mileage of the vehicle unless one of the following statements is checked:

NO TENTHS  ODOMETER READING

☐ 1. The mileage stated is in excess of its mechanical limits.
☐ 2. The odometer reading is not the actual mileage. WARNING - ODOMETER DISCREPANCY.

Date of Sale | Dealer's Name | Dealer No.

Agent's Signature | Printed Name (same as signature)

I am aware of the above odometer certification made by the seller/agent.

Signature of Buyer/Agent | Printed Name (same as signature)

---

**SECOND REASSIGNMENT DEALER ONLY**

The undersigned hereby certifies that the vehicle described in this title is free and clear of all liens, except as noted, and has been transferred to the following printed name and address:

Name of Purchaser | Street | City | State | Zip

I certify to the best of my knowledge that the odometer reading is the actual mileage of the vehicle unless one of the following statements is checked:

NO TENTHS  ODOMETER READING

☐ 1. The mileage stated is in excess of its mechanical limits.
☐ 2. The odometer reading is not the actual mileage. WARNING - ODOMETER DISCREPANCY.

Date of Sale | Dealer's Name | Dealer No.

Agent's Signature | Printed Name (same as signature)

I am aware of the above odometer certification made by the seller/agent.

Signature of Buyer/Agent | Printed Name (same as signature)

---

**THIRD REASSIGNMENT DEALER ONLY**

The undersigned hereby certifies that the vehicle described in this title is free and clear of all liens, except as noted, and has been transferred to the following printed name and address:

Name of Purchaser | Street | City | State | Zip

I certify to the best of my knowledge that the odometer reading is the actual mileage of the vehicle unless one of the following statements is checked:

NO TENTHS  ODOMETER READING

☐ 1. The mileage stated is in excess of its mechanical limits.
☐ 2. The odometer reading is not the actual mileage. WARNING - ODOMETER DISCREPANCY.

Date of Sale | Dealer's Name | Dealer No.

Agent's Signature | Printed Name (same as signature)

I am aware of the above odometer certification made by the seller/agent.

Signature of Buyer/Agent | Printed Name (same as signature)

---

**FOURTH REASSIGNMENT DEALER ONLY**

The undersigned hereby certifies that the vehicle described in this title is free and clear of all liens, except as noted, and has been transferred to the following printed name and address:

Name of Purchaser | Street | City | State | Zip

I certify to the best of my knowledge that the odometer reading is the actual mileage of the vehicle unless one of the following statements is checked:

NO TENTHS  ODOMETER READING

☐ 1. The mileage stated is in excess of its mechanical limits.
☐ 2. The odometer reading is not the actual mileage. WARNING - ODOMETER DISCREPANCY.

Date of Sale | Dealer's Name | Dealer No.

Agent's Signature | Printed Name (same as signature)

I am aware of the above odometer certification made by the seller/agent.

Signature of Buyer/Agent | Printed Name (same as signature)

---

**LAST REASSIGNMENT DEALER ONLY**

The undersigned hereby certifies that the vehicle described in this title is free and clear of all liens, except as noted, and has been transferred to the following printed name and address:

Name of Purchaser | Street | City | State | Zip

I certify to the best of my knowledge that the odometer reading is the actual mileage of the vehicle unless one of the following statements is checked:

NO TENTHS  ODOMETER READING

☐ 1. The mileage stated is in excess of its mechanical limits.
☐ 2. The odometer reading is not the actual mileage. WARNING - ODOMETER DISCREPANCY.

Date of Sale | Dealer's Name | Dealer No.

Agent's Signature | Printed Name (same as signature)

I am aware of the above odometer certification made by the seller/agent.

Signature of Buyer/Agent | Printed Name (same as signature)

VSD 40.25

**DO NOT ACCEPT TITLE SHOWING ANY ERASURES, ALTERATIONS OR MUTILATIONS.**

## NOTICE OF SALE INSTRUCTIONS

When a vehicle owner sells and/or releases interest in a vehicle that is titled in the State of Illinois, this form must be completed immediately and mailed to the Illinois Secretary of State, Vehicle Services Department, Record Inquiry Division, 501 S. Second St., Rm. 408, Springfield, IL 62756, to ensure that your responsibility for the vehicle is released.

Completion of this form **does not satisfy the transfer of ownership requirements** as set forth in the Illinois Compiled Statutes. Illinois law requires the owner of a vehicle to complete and sign the Assignment of Title section on the Certificate of Title to the buyer who must apply to the Vehicle Services Department for a Certificate of Title.

# CERTIFICATE OF TITLE OF A VEHICLE

| VEHICLE IDENTIFICATION NO. | YEAR | MAKE | MODEL | BODY STYLE | TITLE NO. |
|---|---|---|---|---|---|
| 4UZAC2G71PCUE8855 | 2023 | FREIGHTLINER | MT45G CH | TRUCK | 23123690338 |

**4UZAC2G71PCUE8855**

| DATE ISSUED | ODOMETER | CCM | MOBILE HOME SQ. FT. | PURCHASED | TYPE TITLE |
|---|---|---|---|---|---|
| 05/03/23 | | | | 01/03/23 NEW | ORIGINAL |

MAILING ADDRESS

LEGEND(S)
MILEAGE NOT REQUIRED

BMO HARRIS BANK NA
PO BOX 35707
BILLINGS MT 59107-5707

OWNER(S) NAME AND ADDRESS
OBERWEIS DAIRY INC
951 ICE CREAM DR
NORTH AURORA IL 60542

FIRST LIENHOLDER NAME AND ADDRESS
BMO HARRIS BANK NA
PO BOX 35707
BILLINGS MT 59107-5707

SECOND LIENHOLDER NAME AND ADDRESS

**RELEASE OF LIEN**
The Lienholder on the vehicle described in this Certificate does hereby state that the lien is released and discharged.

Firm Name _____ By _____ Signature of Authorized Agent _____ Date _____

Firm Name _____ By _____ Signature of Authorized Agent _____ Date _____

NEW LIEN ASSIGNMENT: The information below must be on an application for title and presented to the Secretary of State.
Secured Party: _____ Address: _____

▶ Federal and State law requires that you state the mileage in connection with the transfer of ownership. Failure to complete or providing a false statement may result in fines and/or imprisonment.

**ASSIGNMENT OF TITLE**
The undersigned hereby certifies that the vehicle described in this title has been transferred to the following printed name and address:

I certify to the best of my knowledge that the odometer reading is the actual mileage of the vehicle unless one of the following statements is checked:

☐ 1. The mileage stated is in excess of its mechanical limits.
☐ 2. The odometer reading is not the actual mileage.
**WARNING-ODOMETER DISCREPANCY.**

"If this vehicle is one of more than 5 commercial vehicles owned by me, I certify also that the vehicle is not damaged in excess of 33 1/3% of its fair-market value unless this document is accompanied by a salvage application."

NO TENTHS
ODOMETER READING
Signature(s) of Seller(s)

Printed Name(s) of Seller(s) _____ DATE OF SALE _____
I am aware of the above odometer certification made by seller.
Signature(s) of Buyer(s) _____ Printed Name _____

I Alexi Giannoulias, Secretary of State of the State of Illinois, do hereby certify that according to the records on file with my Office, the person or entity named herein is the owner of the vehicle described herein, which is subject to the above named liens and encumbrances, if any
control no. IN WITNESS WHEREOF, I HAVE AFFIXED MY SIGNATURE AND THE GREAT SEAL OF THE STATE OF ILLINOIS AT SPRINGFIELD
U3073485

Alexi Giannoulias

ALEXI GIANNOULIAS, Secretary of State

**DO NOT ACCEPT TITLE SHOWING ANY ERASURES, ALTERATIONS OR MUTILATIONS.**

MUST BE COMPLETED BY SELLER

DO NOT DETACH UNTIL SOLD
**NOTICE OF SALE**

SEE INSTRUCTIONS ON REVERSE

| FREIGHTLINER | 2023 | 4UZAC2G71PCUE8855 | Date |
|---|---|---|---|
| Vehicle Make | Vehicle Year | Vehicle Identification Number | |

Name of Seller (Current Registered Owner) _____ Name of Buyer _____

Complete Address of Seller _____ Complete Address of Buyer _____

City _____ State _____ ZIP _____ City _____ State _____ ZIP _____

Under penalties of perjury, I hereby certify that the foregoing is true and correct under the laws of the United States.

Seller's Signature _____ Printed Name of Seller _____ Date _____

**FIRST REASSIGNMENT DEALER ONLY**

The undersigned hereby certifies that the vehicle described in this title is free and clear of all liens, except as noted, and has been transferred to the following printed name and address.

| Name of Purchaser | Street | City | State | Zip |

I certify to the best of my knowledge that the odometer reading is the actual mileage of the vehicle unless one of the following statements is checked:

☐ NO TENTHS
ODOMETER READING
☐ 1. The mileage stated is in excess of its mechanical limits.
☐ 2. The odometer reading is not the actual mileage. WARNING - ODOMETER DISCREPANCY

Date of Sale

Dealer's Name                                             Dealer

Agent's Signature                                    Printed Name (same as signature)

I am aware of the above odometer certification made by the seller/agent.

Signature of Buyer/Agent                            Printed Name (same as signature)

---

**SECOND REASSIGNMENT DEALER ONLY**

The undersigned hereby certifies that the vehicle described in this title is free and clear of all liens, except as noted, and has been transferred to the following printed name and address.

| Name of Purchaser | Street | City | State | Zip |

I certify to the best of my knowledge that the odometer reading is the actual mileage of the vehicle unless one of the following statements is checked:

☐ NO TENTHS
ODOMETER READING
☐ 1. The mileage stated is in excess of its mechanical limits.
☐ 2. The odometer reading is not the actual mileage. WARNING - ODOMETER DISCREPANCY

Date of Sale

Dealer's Name                                             Dealer

Agent's Signature                                    Printed Name (same as signature)

I am aware of the above odometer certification made by the seller/agent.

Signature of Buyer/Agent                            Printed Name (same as signature)

---

**THIRD REASSIGNMENT DEALER ONLY**

The undersigned hereby certifies that the vehicle described in this title is free and clear of all liens, except as noted, and has been transferred to the following printed name and address.

| Name of Purchaser | Street | City | State | Zip |

I certify to the best of my knowledge that the odometer reading is the actual mileage of the vehicle unless one of the following statements is checked:

☐ NO TENTHS
ODOMETER READING
☐ 1. The mileage stated is in excess of its mechanical limits.
☐ 2. The odometer reading is not the actual mileage. WARNING - ODOMETER DISCREPANCY

Date of Sale

Dealer's Name                                             Dealer

Agent's Signature                                    Printed Name (same as signature)

I am aware of the above odometer certification made by the seller/agent.

Signature of Buyer/Agent                            Printed Name (same as signature)

---

**FOURTH REASSIGNMENT DEALER ONLY**

The undersigned hereby certifies that the vehicle described in this title is free and clear of all liens, except as noted, and has been transferred to the following printed name and address.

| Name of Purchaser | Street | City | State | Zip |

I certify to the best of my knowledge that the odometer reading is the actual mileage of the vehicle unless one of the following statements is checked:

☐ NO TENTHS
ODOMETER READING
☐ 1. The mileage stated is in excess of its mechanical limits.
☐ 2. The odometer reading is not the actual mileage. WARNING - ODOMETER DISCREPANCY

Date of Sale

Dealer's Name                                             Dealer

Agent's Signature                                    Printed Name (same as signature)

I am aware of the above odometer certification made by the seller/agent.

Signature of Buyer/Agent                            Printed Name (same as signature)

---

**LAST REASSIGNMENT DEALER ONLY**

The undersigned hereby certifies that the vehicle described in this title is free and clear of all liens, except as noted, and has been transferred to the following printed name and address.

| Name of Purchaser | Street | City | State | Zip |

I certify to the best of my knowledge that the odometer reading is the actual mileage of the vehicle unless one of the following statements is checked:

☐ NO TENTHS
ODOMETER READING
☐ 1. The mileage stated is in excess of its mechanical limits.
☐ 2. The odometer reading is not the actual mileage. WARNING - ODOMETER DISCREPANCY

Date of Sale

Dealer's Name                                             Dealer

Agent's Signature                                    Printed Name (same as signature)

I am aware of the above odometer certification made by the seller/agent.

Signature of Buyer/Agent                            Printed Name (same as signature)

VSD 40.25

**DO NOT ACCEPT TITLE SHOWING ANY ERASURES, ALTERATIONS OR MUTILATIONS.**

## NOTICE OF SALE INSTRUCTIONS

When a vehicle owner sells and/or releases interest in a vehicle that is titled in the State of Illinois, this form must be completed immediately and mailed to the Illinois Secretary of State, Vehicle Services Department, Record Inquiry Division, 501 S. Second St., Rm. 408, Springfield, IL 62756, to ensure that your responsibility for the vehicle is released.

Completion of this form **does not satisfy the transfer of ownership requirements** as set forth in the Illinois Compiled Statutes. Illinois law requires the owner of a vehicle to complete and sign the Assignment of Title section on the Certificate of Title to the buyer who must apply to the Vehicle Services Department for a Certificate of Title.

## STATE OF ILLINOIS

## CERTIFICATE OF TITLE OF A VEHICLE

| VEHICLE IDENTIFICATION NO.<br>4UZAC2G75PCUE8857 | YEAR<br>2023 | MAKE<br>FREIGHTLINER | MODEL<br>MT45G CH | BODY STYLE<br>TRUCK | TITLE NO.<br>23123690355 |
|---|---|---|---|---|---|

**4UZAC2G75PCUE8857**

| DATE ISSUED<br>05/03/23 | ODOMETER | CCM | MOBILE HOME SQ. FT. | PURCHASED<br>01/03/23<br>NEW | TYPE TITLE<br>ORIGINAL |
|---|---|---|---|---|---|

MAILING ADDRESS

LEGEND(S)
MILEAGE NOT REQUIRED

BMO HARRIS BANK NA
PO BOX 35707
BILLINGS MT 59107-5707

OWNER(S) NAME AND ADDRESS
OBERWEIS DAIRY INC
951 ICE CREAM DR
NORTH AURORA IL 60542

FIRST LIENHOLDER NAME AND ADDRESS
BMO HARRIS BANK NA
PO BOX 35707
BILLINGS MT 59107-5707

SECOND LIENHOLDER NAME AND ADDRESS

### RELEASE OF LIEN

The Lienholder on the vehicle described in this Certificate does hereby state that the lien is released and discharged.

Firm Name _____ By _____ Signature of Authorized Agent _____ Date _____

Firm Name _____ By _____ Signature of Authorized Agent _____ Date _____

▶ **NEW LIEN ASSIGNMENT:** The information below must be on an application for title and presented to the Secretary of State.

Secured Party: _____ Address: _____

▶ Federal and State law requires that you state the mileage in connection with the transfer of ownership. Failure to complete or providing a false statement may result in fines and/or imprisonment.

### ASSIGNMENT OF TITLE

The undersigned hereby certifies that the vehicle described in this title has been transferred to the following printed name and address:

I certify to the best of my knowledge that the odometer reading is the actual mileage of the vehicle unless one of the following statements is checked:

☐ 1. The mileage stated is in excess of its mechanical limits.
☐ 2. The odometer reading is not the actual mileage.
WARNING-ODOMETER DISCREPANCY.

"If this vehicle is one of more than 6 commercial vehicles owned by me, I certify also that the vehicle is not damaged in excess of 33 1/3% of its fair-market value unless this document is accompanied by a salvage application."

NO TENTHS / ODOMETER READING

Signature(s) of Seller(s) _____

Printed Name(s) of Seller(s) _____ DATE OF SALE _____
I am aware of the above odometer certification made by seller.

Signature(s) of Buyer(s) _____ Printed Name _____

I, Alexi Giannoulias, Secretary of State of Illinois, do hereby certify that according to the records on file with my Office, the person or entity named hereon is the owner of the vehicle described hereon, which is subject to the above named liens and encumbrances, if any. IN WITNESS WHEREOF, I HAVE AFFIXED MY SIGNATURE AND THE GREAT SEAL OF THE STATE OF ILLINOIS AT SPRINGFIELD

CONTROL NO. U3073486

ALEXI GIANNOULIAS

**DO NOT ACCEPT TITLE SHOWING ANY ERASURES, ALTERATIONS OR MUTILATIONS.**

MUST BE COMPLETED BY SELLER

**DO NOT DETACH UNTIL SOLD**
**NOTICE OF SALE**

SEE INSTRUCTIONS ON REVERSE

| Vehicle Make<br>FREIGHTLINER | Vehicle Year<br>2023 | Vehicle Identification Number<br>4UZAC2G75PCUE8857 | Date |
|---|---|---|---|

Name of Seller (Current Registered Owner) _____ Name of Buyer _____

Complete Address of Seller _____ Complete Address of Buyer _____

City _____ State _____ ZIP _____ City _____ State _____ ZIP _____

Under penalties of perjury, I hereby certify that foregoing is true and correct under the laws of the United States.

Seller's Signature _____ Printed Name of Seller _____ Date _____

**FIRST REASSIGNMENT DEALER ONLY**

The undersigned hereby certifies that the vehicle described in this title is free and clear of all liens, except as noted, and has been transferred to the following printed name and address.

Name of Purchaser _____ Street _____ City _____ State _____ Zip _____

I certify to the best of my knowledge that the odometer reading is the actual mileage of the vehicle unless one of the following statements is checked.

NO TENTHS

ODOMETER READING

☐ 1. The mileage stated is in excess of its mechanical limits.
☐ 2. The odometer reading is not the actual mileage. WARNING - ODOMETER DISCREPANCY

Date of Sale

Dealer No.

Dealer's Name

Agent's Signature                    Printed Name (same as signature)

I am aware of the above odometer certification made by the seller/agent.

Signature of Buyer/Agent                    Printed Name (same as signature)

---

**SECOND REASSIGNMENT DEALER ONLY**

The undersigned hereby certifies that the vehicle described in this title is free and clear of all liens, except as noted, and has been transferred to the following printed name and address.

Name of Purchaser _____ Street _____ City _____ State _____ Zip _____

I certify to the best of my knowledge that the odometer reading is the actual mileage of the vehicle unless one of the following statements is checked.

NO TENTHS

ODOMETER READING

☐ 1. The mileage stated is in excess of its mechanical limits.
☐ 2. The odometer reading is not the actual mileage. WARNING - ODOMETER DISCREPANCY

Date of Sale

Dealer's Name

Agent's Signature                    Printed Name (same as signature)

I am aware of the above odometer certification made by the seller/agent.

Signature of Buyer/Agent                    Printed Name (same as signature)

---

**THIRD REASSIGNMENT DEALER ONLY**

The undersigned hereby certifies that the vehicle described in this title is free and clear of all liens, except as noted, and has been transferred to the following printed name and address.

Name of Purchaser _____ Street _____ City _____ State _____ Zip _____

I certify to the best of my knowledge that the odometer reading is the actual mileage of the vehicle unless one of the following statements is checked.

NO TENTHS

ODOMETER READING

☐ 1. The mileage stated is in excess of its mechanical limits.
☐ 2. The odometer reading is not the actual mileage. WARNING - ODOMETER DISCREPANCY

Date of Sale

Dealer's Name

Agent's Signature                    Printed Name (same as signature)

I am aware of the above odometer certification made by the seller/agent.

Signature of Buyer/Agent                    Printed Name (same as signature)

---

**FOURTH REASSIGNMENT DEALER ONLY**

The undersigned hereby certifies that the vehicle described in this title is free and clear of all liens, except as noted, and has been transferred to the following printed name and address.

Name of Purchaser _____ Street _____ City _____ State _____ Zip _____

I certify to the best of my knowledge that the odometer reading is the actual mileage of the vehicle unless one of the following statements is checked.

NO TENTHS

ODOMETER READING

☐ 1. The mileage stated is in excess of its mechanical limits.
☐ 2. The odometer reading is not the actual mileage. WARNING - ODOMETER DISCREPANCY

Date of Sale

Dealer's Name

Agent's Signature                    Printed Name (same as signature)

I am aware of the above odometer certification made by the seller/agent.

Signature of Buyer/Agent                    Printed Name (same as signature)

---

**LAST REASSIGNMENT DEALER ONLY**

The undersigned hereby certifies that the vehicle described in this title is free and clear of all liens, except as noted, and has been transferred to the following printed name and address.

Name of Purchaser _____ Street _____ City _____ State _____ Zip _____

I certify to the best of my knowledge that the odometer reading is the actual mileage of the vehicle unless one of the following statements is checked.

NO TENTHS

ODOMETER READING

☐ 1. The mileage stated is in excess of its mechanical limits.
☐ 2. The odometer reading is not the actual mileage. WARNING - ODOMETER DISCREPANCY

Date of Sale

Dealer's Name

Agent's Signature                    Printed Name (same as signature)

I am aware of the above odometer certification made by the seller/agent.

Signature of Buyer/Agent                    Printed Name (same as signature)

VSD 40.25

**DO NOT ACCEPT TITLE SHOWING ANY ERASURES, ALTERATIONS OR MUTILATIONS.**

## NOTICE OF SALE INSTRUCTIONS

When a vehicle owner sells and/or releases interest in a vehicle that is titled in the State of Illinois, this form must be completed immediately and mailed to the Illinois Secretary of State, Vehicle Services Department, Record Inquiry Division, 501 S. Second St., Rm. 408, Springfield, IL 62756, to ensure that your responsibility for the vehicle is released.

Completion of this form **does not satisfy the transfer of ownership requirements** as set forth in the Illinois Compiled Statutes. Illinois law requires the owner of a vehicle to complete and sign the Assignment of Title section on the Certificate of Title to the buyer who must apply to the Vehicle Services Department for a Certificate of Title.

## CERTIFICATE OF TITLE OF A VEHICLE

| VEHICLE IDENTIFICATION NO. 4UZAC2G76PCUE8849 | YEAR 2023 | MAKE FREIGHTLINER | MODEL MT45G CH | BODY STYLE TRUCK | TITLE NO. 23123690497 |
|---|---|---|---|---|---|

4UZAC2G76PCUE8849

| DATE ISSUED 05/03/23 | ODOMETER | CCM | MOBILE HOME SQ. FT. | PURCHASED 01/03/23 NEW | TYPE TITLE ORIGINAL |
|---|---|---|---|---|---|

MAILING ADDRESS

LEGEND(S)
MILEAGE NOT REQUIRED

BMO HARRIS BANK NA
PO BOX 35707
BILLINGS MT 59107-5707

OWNER(S) NAME AND ADDRESS
OBERWEIS DAIRY INC
951 ICE CREAM DR
NORTH AURORA IL 60542

FIRST LIENHOLDER NAME AND ADDRESS
BMO HARRIS BANK NA
PO BOX 35707
BILLINGS MT 59107-5707

SECOND LIENHOLDER NAME AND ADDRESS

RELEASE OF LIEN
The Lienholder on the vehicle described in this Certificate does hereby state that the lien is released and discharged.

Firm Name _____ By _____ Signature of Authorized Agent _____ Date _____

Firm Name _____ By _____ Signature of Authorized Agent _____ Date _____

NEW LIEN ASSIGNMENT: The information below must be on an application for title and presented to the Secretary of State.

Secured Party: _____ Address: _____

▶ Federal and State law require that you state the mileage in connection with the transfer of ownership. Failure to complete or providing a false statement may result in fines and/or imprisonment.

### ASSIGNMENT OF TITLE
The undersigned hereby certifies that the vehicle described in this title has been transferred to the following printed name and address:

I certify to the best of my knowledge that the odometer reading is the actual mileage of the vehicle unless one of the following statements is checked:

☐ 1. The mileage stated is in excess of its mechanical limits.
☐ 2. The odometer reading is not the actual mileage. WARNING-ODOMETER DISCREPANCY.

NO TENTHS
ODOMETER READING

"If this vehicle is one of more than 5 commercial vehicles owned by me, I certify also that the vehicle is not damaged in excess of 33 1/3% of its fair-market value unless this document is accompanied by a salvage application."

Signature(s) of Seller(s) _____

Printed Name(s) of Seller(s) _____ DATE OF SALE _____

I am aware of the above odometer certification made by seller.

Signature(s) of Buyer(s) _____ Printed Name _____

I Alexi Giannoulias, Secretary of State of the State of Illinois, do hereby certify that according to the records on file with my Office, the person or entity named hereon is the owner of the vehicle described hereon, which is subject to the above named liens and encumbrances, if any. IN WITNESS WHEREOF, I HAVE AFFIXED MY SIGNATURE AND THE GREAT SEAL OF THE STATE OF ILLINOIS AT SPRINGFIELD

CONTROL NO.
U3073487

Alexi Giannoulias

ALEXI GIANNOULIAS, Secretary of State

**DO NOT ACCEPT TITLE SHOWING ANY ERASURES, ALTERATIONS OR MUTILATIONS.**

MUST BE COMPLETED BY SELLER

DO NOT DETACH UNTIL SOLD
NOTICE OF SALE

SEE INSTRUCTIONS ON REVERSE

| Vehicle FREIGHTLINER | Year 2023 | Vehicle 4UZAC2G76PCUE8849 | Date |
|---|---|---|---|

Name of Seller (Current Registered Owner) _____ Name of Buyer _____

Complete Address of Seller _____ Complete Address of Buyer _____

City _____ State _____ ZIP _____ City _____ State _____ ZIP _____

Under penalties of perjury, I hereby certify that the foregoing is true and correct under the laws of the United States.

Seller's Signature _____ Printed Name of Seller _____ Date _____

**FIRST REASSIGNMENT – DEALER ONLY**

The undersigned hereby certifies that the vehicle described in this title is free and clear of all liens, except as noted, and has been transferred to the following printed name and address.

Name of Purchaser | Street | City | State | Zip

I certify to the best of my knowledge that the odometer reading is the actual mileage of the vehicle unless one of the following statements is checked.

ODOMETER READING ▶ [ ] NO TENTHS
- [ ] 1. The mileage stated is in excess of its mechanical limits.
- [ ] 2. The odometer reading is not the actual mileage. WARNING - ODOMETER DISCREPANCY

Date of Sale | Dealer's Name | Dealer

Agent's Signature | Printed Name (same as signature)

I am aware of the above odometer certification made by the seller/agent.

Signature of Buyer/Agent | Printed Name (same as signature)

---

**SECOND REASSIGNMENT – DEALER ONLY**

The undersigned hereby certifies that the vehicle described in this title is free and clear of all liens, except as noted, and has been transferred to the following printed name and address.

Name of Purchaser | Street | City | State | Zip

I certify to the best of my knowledge that the odometer reading is the actual mileage of the vehicle unless one of the following statements is checked.

ODOMETER READING ▶ [ ] NO TENTHS
- [ ] 1. The mileage stated is in excess of its mechanical limits.
- [ ] 2. The odometer reading is not the actual mileage. WARNING - ODOMETER DISCREPANCY

Date of Sale | Dealer's Name | Dealer

Agent's Signature | Printed Name (same as signature)

I am aware of the above odometer certification made by the seller/agent.

Signature of Buyer/Agent | Printed Name (same as signature)

---

**THIRD REASSIGNMENT – DEALER ONLY**

The undersigned hereby certifies that the vehicle described in this title is free and clear of all liens, except as noted, and has been transferred to the following printed name and address.

Name of Purchaser | Street | City | State | Zip

I certify to the best of my knowledge that the odometer reading is the actual mileage of the vehicle unless one of the following statements is checked.

ODOMETER READING ▶ [ ] NO TENTHS
- [ ] 1. The mileage stated is in excess of its mechanical limits.
- [ ] 2. The odometer reading is not the actual mileage. WARNING - ODOMETER DISCREPANCY

Date of Sale | Dealer's Name | Dealer

Agent's Signature | Printed Name (same as signature)

I am aware of the above odometer certification made by the seller/agent.

Signature of Buyer/Agent | Printed Name (same as signature)

---

**FOURTH REASSIGNMENT – DEALER ONLY**

The undersigned hereby certifies that the vehicle described in this title is free and clear of all liens, except as noted, and has been transferred to the following printed name and address.

Name of Purchaser | Street | City | State | Zip

I certify to the best of my knowledge that the odometer reading is the actual mileage of the vehicle unless one of the following statements is checked.

ODOMETER READING ▶ [ ] NO TENTHS
- [ ] 1. The mileage stated is in excess of its mechanical limits.
- [ ] 2. The odometer reading is not the actual mileage. WARNING - ODOMETER DISCREPANCY

Date of Sale | Dealer's Name | Dealer

Agent's Signature | Printed Name (same as signature)

I am aware of the above odometer certification made by the seller/agent.

Signature of Buyer/Agent | Printed Name (same as signature)

---

**LAST REASSIGNMENT – DEALER ONLY**

The undersigned hereby certifies that the vehicle described in this title is free and clear of all liens, except as noted, and has been transferred to the following printed name and address.

Name of Purchaser | Street | City | State | Zip

I certify to the best of my knowledge that the odometer reading is the actual mileage of the vehicle unless one of the following statements is checked.

ODOMETER READING ▶ [ ] NO TENTHS
- [ ] 1. The mileage stated is in excess of its mechanical limits.
- [ ] 2. The odometer reading is not the actual mileage. WARNING - ODOMETER DISCREPANCY

Date of Sale | Dealer's Name | Dealer

Agent's Signature | Printed Name (same as signature)

I am aware of the above odometer certification made by the seller/agent.

Signature of Buyer/Agent | Printed Name (same as signature)

VSD 40.25

**DO NOT ACCEPT TITLE SHOWING ANY ERASURES, ALTERATIONS OR MUTILATIONS.**

## NOTICE OF SALE INSTRUCTIONS

When a vehicle owner sells and/or releases interest in a vehicle that is titled in the State of Illinois, this form must be completed immediately and mailed to the Illinois Secretary of State, Vehicle Services Department, Record Inquiry Division, 501 S. Second St., Rm. 408, Springfield, IL 62756, to ensure that your responsibility for the vehicle is released.

Completion of this form **does not satisfy the transfer of ownership requirements** as set forth in the Illinois Compiled Statutes. Illinois law requires the owner of a vehicle to complete and sign the Assignment of Title section on the Certificate of Title to the buyer who must apply to the Vehicle Services Department for a Certificate of Title.

## CERTIFICATE OF TITLE OF A VEHICLE

| VEHICLE IDENTIFICATION NO.<br>4UZAC2G76PCUE8852 | YEAR<br>2023 | MAKE<br>FREIGHTLINER | MODEL<br>MT45G CH | BODY STYLE<br>TRUCK | TITLE NO.<br>23123690332 |
|---|---|---|---|---|---|

**4UZAC2G76PCUE8852**

| DATE ISSUED<br>05/03/23 | ODOMETER | CCM | MOBILE HOME SQ. FT. | PURCHASED<br>01/03/23<br>NEW | TYPE TITLE<br>ORIGINAL |
|---|---|---|---|---|---|

MAILING ADDRESS

LEGEND(S)
MILEAGE NOT REQUIRED

BMO HARRIS BANK NA
PO BOX 35707
BILLINGS  MT 59107-5707

OWNER(S) NAME AND ADDRESS
OBERWEIS DAIRY INC
951 ICE CREAM DR
NORTH AURORA IL 60542

FIRST LIENHOLDER NAME AND ADDRESS
BMO HARRIS BANK NA
PO BOX 35707
BILLINGS  MT 59107-5707

SECOND LIENHOLDER NAME AND ADDRESS

**RELEASE OF LIEN**
The Lienholder on the vehicle described in this Certificate does hereby state that the lien is released and discharged.

Firm Name _____ By _____ Signature of Authorized Agent _____ Date _____

Firm Name _____ By _____ Signature of Authorized Agent _____ Date _____

NEW LIEN ASSIGNMENT: The information below must be on an application for title and presented to the Secretary of State.
Secured Party: _____ Address: _____

▶ Federal and State law requires that you state the mileage in connection with the transfer of ownership. Failure to complete or providing a false statement may result in fines and/or imprisonment.

**ASSIGNMENT OF TITLE**
The undersigned hereby certifies that the vehicle described in this title has been transferred to the following printed name and address:

I certify to the best of my knowledge that the odometer reading is the actual mileage of the vehicle unless one of the following statements is checked:

☐ 1. The mileage stated is in excess of its mechanical limits.
☐ 2. The odometer reading is not the actual mileage.
WARNING-ODOMETER DISCREPANCY.

*If this vehicle is one of more than 5 commercial vehicles owned by me, I certify also that the vehicle is not damaged in excess of 33 1/3% of its fair-market value unless this document is accompanied by a salvage application.*

NO TENTHS
ODOMETER READING
Signature(s) of Seller(s) _____

Printed Name(s) of Seller(s) _____        DATE OF SALE _____
I am aware of the above odometer certification made by seller.
Signature(s) of Buyer(s) _____        Printed Name _____

I Alexi Giannoulias, Secretary of State of the State of Illinois, do hereby certify that according to the records on file with my Office, the person or entity named hereon is the owner of the vehicle described hereon, which is subject to the above named liens and encumbrances, if any.
IN WITNESS WHEREOF, I HAVE AFFIXED MY SIGNATURE AND THE GREAT SEAL OF THE STATE OF ILLINOIS AT SPRINGFIELD
CONTROL NO.

U3073484

**DO NOT ACCEPT TITLE SHOWING ANY ERASURES, ALTERATIONS OR MUTILATIONS.**

MUST BE COMPLETED BY SELLER

DO NOT DETACH UNTIL SOLD
**NOTICE OF SALE**

SEE INSTRUCTIONS ON REVERSE

| Vehicle FREIGHTLINER | Year 2023 | | Vehicle ID No. 4UZAC2G76PCUE8852 | | Date |
|---|---|---|---|---|---|

Name of Seller (Current Registered Owner) _____        Name of Buyer _____

Complete Address of Seller _____        Complete Address of Buyer _____

City _____ State _____ ZIP _____        City _____ State _____ ZIP _____

Under penalties of perjury, I hereby certify that the foregoing is true and correct under the laws of the United States.

Seller's Signature _____        Printed Name of Seller _____        Date _____

**FIRST REASSIGNMENT DEALER ONLY**

The undersigned hereby certifies that the vehicle described in this title is free and clear of all liens, except as noted, and has been transferred to the following printed name and address.

Name of Purchaser                    Street                    City                    State                    Zip

I certify to the best of my knowledge that the odometer reading is the actual mileage of the vehicle unless one of the following statements is checked.

ODOMETER READING   NO TENTHS

☐ 1. The mileage stated is in excess of its mechanical limits.
☐ 2. The odometer reading is not the actual mileage. WARNING - ODOMETER DISCREPANCY

Date of Sale

Dealer's Name                                               Dealer

Agent's Signature
I am aware of the above odometer certification made by the seller/agent.                    Printed Name (same as signature)

Signature of Buyer/Agent                    Printed Name (same as signature)

---

**SECOND REASSIGNMENT DEALER ONLY**

The undersigned hereby certifies that the vehicle described in this title is free and clear of all liens, except as noted, and has been transferred to the following printed name and address.

Name of Purchaser                    Street                    City                    State                    Zip

I certify to the best of my knowledge that the odometer reading is the actual mileage of the vehicle unless one of the following statements is checked.

ODOMETER READING   NO TENTHS

☐ 1. The mileage stated is in excess of its mechanical limits.
☐ 2. The odometer reading is not the actual mileage. WARNING - ODOMETER DISCREPANCY

Date of Sale

Dealer's Name                                               Dealer

Agent's Signature
I am aware of the above odometer certification made by the seller/agent.                    Printed Name (same as signature)

Signature of Buyer/Agent                    Printed Name (same as signature)

---

**THIRD REASSIGNMENT DEALER ONLY**

The undersigned hereby certifies that the vehicle described in this title is free and clear of all liens, except as noted, and has been transferred to the following printed name and address.

Name of Purchaser                    Street                    City                    State                    Zip

I certify to the best of my knowledge that the odometer reading is the actual mileage of the vehicle unless one of the following statements is checked.

ODOMETER READING   NO TENTHS

☐ 1. The mileage stated is in excess of its mechanical limits.
☐ 2. The odometer reading is not the actual mileage. WARNING - ODOMETER DISCREPANCY

Date of Sale

Dealer's Name                                               Dealer

Agent's Signature
I am aware of the above odometer certification made by the seller/agent.                    Printed Name (same as signature)

Signature of Buyer/Agent                    Printed Name (same as signature)

---

**FOURTH REASSIGNMENT DEALER ONLY**

The undersigned hereby certifies that the vehicle described in this title is free and clear of all liens, except as noted, and has been transferred to the following printed name and address.

Name of Purchaser                    Street                    City                    State                    Zip

I certify to the best of my knowledge that the odometer reading is the actual mileage of the vehicle unless one of the following statements is checked.

ODOMETER READING   NO TENTHS

☐ 1. The mileage stated is in excess of its mechanical limits.
☐ 2. The odometer reading is not the actual mileage. WARNING - ODOMETER DISCREPANCY

Date of Sale

Dealer's Name                                               Dealer

Agent's Signature
I am aware of the above odometer certification made by the seller/agent.                    Printed Name (same as signature)

Signature of Buyer/Agent                    Printed Name (same as signature)

---

**LAST REASSIGNMENT DEALER ONLY**

The undersigned hereby certifies that the vehicle described in this title is free and clear of all liens, except as noted, and has been transferred to the following printed name and address.

Name of Purchaser                    Street                    City                    State                    Zip

I certify to the best of my knowledge that the odometer reading is the actual mileage of the vehicle unless one of the following statements is checked.

ODOMETER READING   NO TENTHS

☐ 1. The mileage stated is in excess of its mechanical limits.
☐ 2. The odometer reading is not the actual mileage. WARNING - ODOMETER DISCREPANCY

Date of Sale

Dealer's Name                                               Dealer

Agent's Signature
I am aware of the above odometer certification made by the seller/agent.                    Printed Name (same as signature)

Signature of Buyer/Agent                    Printed Name (same as signature)

**DO NOT ACCEPT TITLE SHOWING ANY ERASURES, ALTERATIONS OR MUTILATIONS.**

VSD 40.25

## NOTICE OF SALE INSTRUCTIONS

When a vehicle owner sells and/or releases interest in a vehicle that is titled in the State of Illinois, this form must be completed immediately and mailed to the Illinois Secretary of State, Vehicle Services Department, Record Inquiry Division, 501 S. Second St., Rm. 408, Springfield, IL 62756, to ensure that your responsibility for the vehicle is released.

Completion of this form does not satisfy the transfer of ownership requirements as set forth in the Illinois Compiled Statutes. Illinois law requires the owner of a vehicle to complete and sign the Assignment of Title section on the Certificate of Title to the buyer who must apply to the Vehicle Services Department for a Certificate of Title.

# CERTIFICATE OF TITLE OF A VEHICLE

| VEHICLE IDENTIFICATION NO. | YEAR | MAKE | MODEL | BODY STYLE | TITLE NO. |
|---|---|---|---|---|---|
| 1FVACWFC1PHUE8128 | 2023 | FREIGHTLINER | M2106 | STAKE/RAK | 23172690005 |

**1FVACWFC1PHUE8128**

| DATE ISSUED | ODOMETER | CCM | MOBILE HOME SQ. FT. | PURCHASED | TYPE TITLE |
|---|---|---|---|---|---|
| 06/21/23 | | | | 02/14/23 NEW | ORIGINAL |

MAILING ADDRESS

LEGEND(S)
MILEAGE NOT REQUIRED

BMO HARRIS BANK N A
PO BOX 35707
BILLINGS  MT  59107-5707

OWNER(S) NAME AND ADDRESS
OBERWEIS DAIRY INC
951 ICE CREAM DRIVE
NORTH AURORA  IL  60542

FIRST LIENHOLDER NAME AND ADDRESS
BMO HARRIS BANK N A
PO BOX 35707
BILLINGS  MT  59107-5707

SECOND LIENHOLDER NAME AND ADDRESS

RELEASE OF LIEN
The Lienholder on the vehicle described in this Certificate does hereby state that the lien is released and discharged.

Firm Name _____ By _____ Signature of Authorized Agent _____ Date _____

Firm Name _____ By _____ Signature of Authorized Agent _____ Date _____

NEW LIEN ASSIGNMENT: The information below must be on an application for title and presented to the Secretary of State.
Secured Party: _____ Address: _____

► Federal and State law requires that you state the mileage in connection with the transfer of ownership. Failure to complete or providing a false statement may result in fines and/or imprisonment.

ASSIGNMENT OF TITLE
The undersigned hereby certifies that the vehicle described in this title has been transferred to the following printed name and address:

I certify to the best of my knowledge that the odometer reading is the actual mileage of the vehicle unless one of the following statements is checked:

☐ 1. The mileage stated is in excess of its mechanical limits.
☐ 2. The odometer reading is not the actual mileage.
WARNING-ODOMETER DISCREPANCY.

"If this vehicle is one of more than 5 commercial vehicles owned by me, I certify also that the vehicle is not damaged in excess of 33 1/3% of its fair-market value unless this document is accompanied by a salvage application."

| NO TENTHS | ODOMETER READING |

Signature(s) of Seller(s) _____

Printed Name(s) of Seller(s) _____   DATE OF SALE _____
I am aware of the above odometer certification made by seller.
Signature(s) of Buyer(s) _____   Printed Name _____

I, Alexi Giannoullas, Secretary of State of State of Illinois, do hereby certify that according to the records on file with my Office, the person or entity named hereon is the owner of the vehicle described hereon, which is subject to the above named liens and encumbrances, if any.
IN WITNESS WHEREOF, I HAVE AFFIXED MY SIGNATURE AND THE GREAT SEAL OF THE STATE OF ILLINOIS AT SPRINGFIELD

CONTROL NO.
U3401185

ALEXI GIANNOULIAS, SECRETARY OF STATE

**DO NOT ACCEPT TITLE SHOWING ANY ERASURES, ALTERATIONS OR MUTILATIONS.**

DO NOT DETACH UNTIL SOLD
MUST BE COMPLETED BY SELLER        NOTICE OF SALE        SEE INSTRUCTIONS ON REVERSE

Vehicle Make FREIGHTLINER   Vehicle Year 2023   Vehicle VIN 1FVACWFC1PHUE8128   Date _____

Name of Seller (Current Registered Owner) _____   Name of Buyer _____

Complete Address of Seller _____   Complete Address of Buyer _____

City _____ State _____ ZIP _____   City _____ State _____ ZIP _____

Under penalties of perjury, I hereby certify that the foregoing is true and correct under the laws of the United States.

Seller's Signature _____   Printed Name of Seller _____   Date _____

Federal and State law requires that you state the mileage in connection with the transfer of ownership. Failure to complete or providing a false statement may result in fines and/or imprisonment.

## FIRST REASSIGNMENT DEALER ONLY

The undersigned hereby certifies that the vehicle described in this title is free and clear of all liens, except as noted, and has been transferred to the following printed name and address:

Name of Purchaser          Street          City          State          Zip

I certify to the best of my knowledge that the odometer reading is the actual mileage of the vehicle unless one of the following statements is checked:

ODOMETER READING   NO TENTHS
☐ 1. The mileage stated is in excess of its mechanical limits.
☐ 2. The odometer reading is not the actual mileage. WARNING - ODOMETER DISCREPANCY.

Date of Sale          Dealer's Name          Dealer No.

Agent's Signature          Printed Name (same as signature)

I am aware of the above odometer certification made by the seller/agent.

Signature of Buyer/Agent          Printed Name (same as signature)

## SECOND REASSIGNMENT DEALER ONLY

(same fields repeated)

## THIRD REASSIGNMENT DEALER ONLY

(same fields repeated)

## FOURTH REASSIGNMENT DEALER ONLY

(same fields repeated)

## LAST REASSIGNMENT DEALER ONLY

(same fields repeated)

VSD 40.25

**DO NOT ACCEPT TITLE SHOWING ANY ERASURES, ALTERATIONS OR MUTILATIONS.**

## NOTICE OF SALE INSTRUCTIONS

When a vehicle owner sells and/or releases interest in a vehicle that is titled in the State of Illinois, this form must be completed immediately and mailed to the Illinois Secretary of State, Vehicle Services Department, Record Inquiry Division, 501 S. Second St., Rm. 408, Springfield, IL 62756, to ensure that your responsibility for the vehicle is released.

Completion of this form does not satisfy the transfer of ownership requirements as set forth in the Illinois Compiled Statutes. Illinois law requires the owner of a vehicle to complete and sign the Assignment of Title section on the Certificate of Title to the buyer who must apply to the Vehicle Services Department for a Certificate of Title.

Printed by authority of the State of Illinois VSD 40.25

# CERTIFICATE OF TITLE OF A VEHICLE

| VEHICLE IDENTIFICATION NO. 1FVACWFC3PHUE8129 | YEAR 2023 | MAKE FREIGHTLINER | MODEL M2106 | BODY STYLE STAKE/RAK | TITLE NO. 23172690003 |
|---|---|---|---|---|---|

**1FVACWFC3PHUE8129**

| DATE ISSUED 06/21/23 | ODOMETER | CCM | MOBILE HOME SQ. FT. | PURCHASED 02/14/23 NEW | TYPE TITLE ORIGINAL |
|---|---|---|---|---|---|

MAILING ADDRESS

LEGEND(S)
MILEAGE NOT REQUIRED

BMO HARRIS BANK N A
PO BOX 35707
BILLINGS  MT  59107-5707

OWNER(S) NAME AND ADDRESS
OBERWEIS DAIRY INC
951 ICE CREAM DRIVE
NORTH AURORA  IL  60542

FIRST LIENHOLDER NAME AND ADDRESS
BMO HARRIS BANK N A
PO BOX 35707
BILLINGS  MT  59107-5707

SECOND LIENHOLDER NAME AND ADDRESS

### RELEASE OF LIEN
The Lienholder on the vehicle described in this Certificate does hereby state that the lien is released and discharged.

_____ By _____ _____ Date _____
Firm Name                       Signature of Authorized Agent

_____ By _____ _____ Date _____
Firm Name                       Signature of Authorized Agent

**NEW LIEN ASSIGNMENT:** The information below must be on an application for title and presented to the Secretary of State.
Secured Party: _____  Address: _____

▶ Federal and State law requires that you state the mileage in connection with the transfer of ownership. Failure to complete or providing a false statement may result in fines and/or imprisonment.

### ASSIGNMENT OF TITLE
The undersigned hereby certifies that the vehicle described in this title has been transferred to the following printed name and address:

I certify to the best of my knowledge that the odometer reading is the actual mileage of the vehicle unless one of the following statements is checked:

☐ 1. The mileage stated is in excess of its mechanical limits.
☐ 2. The odometer reading is not the actual mileage.
WARNING-ODOMETER DISCREPANCY.

*If this vehicle is one of more than 5 commercial vehicles owned by me, I certify also that the vehicle is not damaged in excess of 33 1/3% of its fair-market value unless this document is accompanied by a salvage application.*

NO TENTHS
ODOMETER READING
Signature(s) of Seller(s) _____

Printed Name(s) of Seller(s) _____  DATE OF SALE _____
I am aware of the above odometer certification made by seller.
Signature(s) of Buyer(s) _____  Printed Name _____

I Alexi Giannoulias, Secretary of State of Illinois, do hereby certify that according to the records on file with my Office, the person or entity named hereon is the owner of the vehicle described hereon, which is subject to the above named liens and encumbrances, if any
IN WITNESS WHEREOF, I HAVE AFFIXED MY SIGNATURE AND THE GREAT SEAL OF
CONTROL NO.     THE STATE OF ILLINOIS AT SPRINGFIELD
U3401184

*Alexi Giannoulias*
ALEXI GIANNOULIAS, Secretary of State

## DO NOT ACCEPT TITLE SHOWING ANY ERASURES, ALTERATIONS OR MUTILATIONS.

MUST BE COMPLETED BY SELLER

DO NOT DETACH UNTIL SOLD
NOTICE OF SALE

SEE INSTRUCTIONS ON REVERSE

| Vehicle Make FREIGHTLINER | Vehicle Year 2023 | Vehicle ID No. 1FVACWFC3PHUE8129 | Date |
|---|---|---|---|

Name of Seller (Current Registered Owner) _____  Name of Buyer _____

Complete Address of Seller _____  Complete Address of Buyer _____

City _____ State ____ ZIP ____    City _____ State ____ ZIP ____

Under penalties of perjury, I hereby certify that the foregoing is true and correct under the laws of the United States.

Seller's Signature _____  Printed Name of Seller _____  Date _____

Federal and state law requires that you state the mileage in connection with the transfer of ownership. Failure to complete or providing a false statement may result in fines and/or imprisonment.

**FIRST REASSIGNMENT DEALER ONLY**

The undersigned hereby certifies that the vehicle described in this title is free and clear of all liens, except as noted, and has been transferred to the following printed name and address:

Name of Purchaser _____ Street _____ City _____ State _____ Zip _____

I certify to the best of my knowledge that the odometer reading is the actual mileage of the vehicle unless one of the following statements is checked:

□ NO TENTHS  ODOMETER READING

□ 1. The mileage stated is in excess of its mechanical limits.
□ 2. The odometer reading is not the actual mileage. WARNING - ODOMETER DISCREPANCY.

Date of Sale _____  Dealer's Name _____  Dealer No. _____

Agent's Signature _____  Printed Name (same as signature) _____

I am aware of the above odometer certification made by the seller/agent.

Signature of Buyer/Agent _____  Printed Name (same as signature) _____

---

**SECOND REASSIGNMENT DEALER ONLY**

The undersigned hereby certifies that the vehicle described in this title is free and clear of all liens, except as noted, and has been transferred to the following printed name and address:

Name of Purchaser _____ Street _____ City _____ State _____ Zip _____

I certify to the best of my knowledge that the odometer reading is the actual mileage of the vehicle unless one of the following statements is checked:

□ NO TENTHS  ODOMETER READING

□ 1. The mileage stated is in excess of its mechanical limits.
□ 2. The odometer reading is not the actual mileage. WARNING - ODOMETER DISCREPANCY.

Date of Sale _____  Dealer's Name _____  Dealer No. _____

Agent's Signature _____  Printed Name (same as signature) _____

I am aware of the above odometer certification made by the seller/agent.

Signature of Buyer/Agent _____  Printed Name (same as signature) _____

---

**THIRD REASSIGNMENT DEALER ONLY**

The undersigned hereby certifies that the vehicle described in this title is free and clear of all liens, except as noted, and has been transferred to the following printed name and address:

Name of Purchaser _____ Street _____ City _____ State _____ Zip _____

I certify to the best of my knowledge that the odometer reading is the actual mileage of the vehicle unless one of the following statements is checked:

□ NO TENTHS  ODOMETER READING

□ 1. The mileage stated is in excess of its mechanical limits.
□ 2. The odometer reading is not the actual mileage. WARNING - ODOMETER DISCREPANCY.

Date of Sale _____  Dealer's Name _____  Dealer No. _____

Agent's Signature _____  Printed Name (same as signature) _____

I am aware of the above odometer certification made by the seller/agent.

Signature of Buyer/Agent _____  Printed Name (same as signature) _____

---

**FOURTH REASSIGNMENT DEALER ONLY**

The undersigned hereby certifies that the vehicle described in this title is free and clear of all liens, except as noted, and has been transferred to the following printed name and address:

Name of Purchaser _____ Street _____ City _____ State _____ Zip _____

I certify to the best of my knowledge that the odometer reading is the actual mileage of the vehicle unless one of the following statements is checked:

□ NO TENTHS  ODOMETER READING

□ 1. The mileage stated is in excess of its mechanical limits.
□ 2. The odometer reading is not the actual mileage. WARNING - ODOMETER DISCREPANCY.

Date of Sale _____  Dealer's Name _____  Dealer No. _____

Agent's Signature _____  Printed Name (same as signature) _____

I am aware of the above odometer certification made by the seller/agent.

Signature of Buyer/Agent _____  Printed Name (same as signature) _____

---

**LAST REASSIGNMENT DEALER ONLY**

The undersigned hereby certifies that the vehicle described in this title is free and clear of all liens, except as noted, and has been transferred to the following printed name and address:

Name of Purchaser _____ Street _____ City _____ State _____ Zip _____

I certify to the best of my knowledge that the odometer reading is the actual mileage of the vehicle unless one of the following statements is checked:

□ NO TENTHS  ODOMETER READING

□ 1. The mileage stated is in excess of its mechanical limits.
□ 2. The odometer reading is not the actual mileage. WARNING - ODOMETER DISCREPANCY.

Date of Sale _____  Dealer's Name _____  Dealer No. _____

Agent's Signature _____  Printed Name (same as signature) _____

I am aware of the above odometer certification made by the seller/agent.

Signature of Buyer/Agent _____  Printed Name (same as signature) _____

VSD 40.25

**DO NOT ACCEPT TITLE SHOWING ANY ERASURES, ALTERATIONS OR MUTILATIONS.**

## NOTICE OF SALE INSTRUCTIONS

When a vehicle owner sells and/or releases interest in a vehicle that is titled in the State of Illinois, this form must be completed immediately and mailed to the Illinois Secretary of State, Vehicle Services Department, Record Inquiry Division, 501 S. Second St., Rm. 408, Springfield, IL 62756, to ensure that your responsibility for the vehicle is released.

Completion of this form does not satisfy the transfer of ownership requirements as set forth in the Illinois Compiled Statutes. Illinois law requires the owner of a vehicle to complete and sign the Assignment of Title section on the Certificate of Title to the buyer who must apply to the Vehicle Services Department for a Certificate of Title.

Form G-4

**REQUIRED STATEMENT**
**TO ACCOMPANY MOTIONS FOR RELIEF FROM STAY**

All Cases: Debtor(s) _____ Oberweis Dairy, Inc., et al. _____ Case No. __24-B-05385__ Chapter __11__

All Cases: Moving Creditor _____ BMO Bank N.A. _____ Date Case Filed __4/12/24__

Nature of Relief Sought: ☑Lift Stay      ☐ Annul Stay    ☐ Other (describe) _____

Chapter 13: Date of Confirmation Hearing _____ or Date Plan Confirmed _____

Chapter 7: ☐ No-Asset Report Filed on _____
         ☐ No-Asset Report not Filed, Date of Creditors Meeting _____

1.   Collateral
     a.    ☐ Home
     b.    ☐ Car   Year, Make, and Model _____
     c.    ☑ Other (describe)_____ Commercial Vehicles _____

2.   Balance Owed as of Petition Date   $ _____ >831,754.9 _____
     Total of all other Liens against Collateral $_____ unknown, $0 senior _____

3.   In chapter 13 cases, if a post-petition default is asserted in the motion, attach a payment history listing the
     amounts and dates of all payments received from the debtor(s) post-petition.

4.   Estimated Value of Collateral (must be supplied in *all* cases)   $ _____ 831,754.9 _____

5.   Default
     a.    ☐ Pre-Petition Default
           Number of months _____        Amount $ _____

     b.    ☐ Post-Petition Default
           i.    ☐ On direct payments to the moving creditor
                 Number of months _____        Amount $ _____

           ii.   ☐ On payments to the Standing Chapter 13 Trustee
                 Number of months _____        Amount $ _____

6.   Other Allegations
     a.    ☑ Lack of Adequate Protection  § 362(d)(1)
           i.    ☐ No insurance
           ii.   ☐ Taxes unpaid       Amount $ _____
           iii.  ☑ Rapidly depreciating asset
           iv.   ☐ Other (describe) _____

     b.    ☑ No Equity and not Necessary for an Effective Reorganization § 362(d)(2)

     c.    ☐ Other "Cause" § 362(d)(1)
           i.    ☐ Bad Faith (describe)_____
           ii.   ☐ Multiple Filings
           iii.  ☐ Other (describe) _____

     d.    Debtor's Statement of Intention regarding the Collateral
           i. ☐ Reaffirm  ii ☐ Redeem  iii. ☐ Surrender  iv. ☑ No Statement of Intention Filed

Date: _____ May 29, 2024 _____        _____ Aaron B. Chapin _____
                                                        Counsel for Movant

(Rev. 12 /21/09)