**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| Oberweis Dairy, Inc., *et al.*,[1] | ) | Case No. 24-05385 |
| | ) | (Jointly Administered) |
| Debtors. | ) | |
| | ) | Honorable David D. Cleary |
| | ) | |

## NOTICE OF FILING – PROPOSED SALE ORDER AND REDLINE

**PLEASE TAKE NOTICE** that on June 4, 2024, we caused to be filed as ECF No. 214 a proposed *Order (A) Approving the Sale of Substantially All of the Assets of the Debtors Free and Clear of Interests Including Liens, Claims, and Encumbrances; (B) Authorizing the Assumption and Assignment of Executory Contracts and Unexpired Leases; and (C) Granting Related Relief* (the "**Proposed Order**").

**PLEASE TAKE FURTHER NOTICE** that attached hereto as **Exhibit A** is a redline (the "**Redline**") comparing the text of the Proposed Order filed as ECF No. 214 with that of the version filed on May 31, 2024, as ECF No. 195, excluding the exhibit to the Proposed Order, which has not changed.

Respectfully Submitted,

By: /s/ Alexander F. Brougham
Counsel for the Debtors

HOWARD L ADELMAN, ESQ. (ARDC #0015458)
ADAM P. SILVERMAN, ESQ. (ARDC #6256676)
ALEXANDER F. BROUGHAM, ESQ. (ARDC #6301515)
TEVIN D. BOWENS, ESQ. (ARDC # 6338559)
ADELMAN & GETTLEMAN, LTD.
53 West Jackson Blvd., Suite 1050
Chicago, Illinois 60604
Tel (312) 435-1050
Fax (312) 435-1059
**Counsel for the Debtors**

---

[1] The Debtors in this case, and the last four digits of their respective federal employer identification numbers, are Oberweis Dairy, Inc. ('7516); The Oberweis Group, Inc. ('1378); North Aurora Ice Cream, LLC ('8506); TOGI RE I, LLC ('5952); Third Millennium Real Estate L.L.C. ('1589); and TOGI Brands, LLC ('7072).

### <u>CERTIFICATE OF SERVICE</u>

The undersigned, an attorney, certifies that, on June 4, 2024, he served a copy of the foregoing **Notice of Filing – Draft Asset Purchase Agreement** upon the following parties via the Court's CM/ECF system:

- Patrick Layng, U.S. Trustee for Region 11;
- Steve Jakubowski and Carolina Sales, counsel for the Official Committee of Unsecured Creditors;
- Eric S. Rein and Nathan Delman, counsel for CIBC Bank USA;
- Elise Frejka, Consumer Privacy Ombudsman;
- Charles Stahl, Jr., counsel for Associated Material Handling Solutions, Inc.;
- R. Scott Alsterda, counsel for Ecolab, Inc;
- Joseph Allen Archambeau and Travis Eliason, counsel for TSC Equipment Finance LLC;
- Debra Devassy Babu, counsel for Wells Fargo Equipment Finance, Inc.;
- Daniel Brown, counsel for Oberweis-Manion Rev Trust, James W. Oberweis Legacy Trust, James W. Oberweis Living Trust, Joseph S. Oberweis Omega Trust, James D. Oberweis Legacy Trust II, James D. Oberweis Living Trust, Janet Clark, Jennifer Roberts, Tricia Oberweis, Joseph Oberweis, Julie Oberweis, James D. Oberweis Jr., and James D. Oberweis;
- Aaron Chapin, counsel for BMO Bank N.A.;
- Bryan Minier and Robert Jeffrey Haupt, counsel for Osprey Capital, LLC;
- Jeffrey Kurtzman, counsel for Wheaton Plaza Wheaton, IL LLC;
- Justin Mertz, counsel for Foremost Farms USA;
- Raymond Ostler, counsel for Associated Electrical Contractors, LLC;
- Richard Perna, counsel for Park Ridge Plaza, LLC;
- Paul Poracky, counsel for Schererville Main Street, LLC;
- Edmund G. Urban, counsel for Urban Communications, Inc.;
- Eric von Helms, counsel for Banc of America Leasing & Capital, LLC;
- Amy Aronson counsel for Harris Properties, LLC;
- Timothy Hughes, counsel for Dough Makers Pro, LLC;
- Carl Kauffman, counsel for AmeriCredit Financial Services, Inc.; and
- Jeffrey Richardson, counsel to Investment Partners, LLC.

By: /s/ Alexander F. Brougham
Counsel for the Debtors

HOWARD L ADELMAN, ESQ. (ARDC #0015458)
ADAM P. SILVERMAN, ESQ. (ARDC #6256676)
ALEXANDER F. BROUGHAM, ESQ. (ARDC #6301515)
TEVIN D. BOWENS, ESQ. (ARDC # 6338559)
ADELMAN & GETTLEMAN, LTD.
53 West Jackson Blvd., Suite 1050
Chicago, Illinois 60604

1327326_1

Tel (312) 435-1050
Fax (312) 435-1059
**Counsel for the Debtors**

# <u>Exhibit A</u> to

## *Notice of Filing – Proposed Sale Order and Redline*:

## **Redline**

*A&G DRAFT 5.31.2024*

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| In re: | Chapter 11 |
| Oberweis Dairy, Inc., et al.,[1] | Case No. 24-05385 |
| Debtor. | Honorable David D. Cleary |

**ORDER (A) APPROVING THE SALE OF SUBSTANTIALLY ALL OF THE ASSETS OF THE DEBTORS FREE AND CLEAR OF INTERESTS INCLUDING LIENS, CLAIMS, AND ENCUMBRANCES; (B) AUTHORIZING THE ASSUMPTION AND ASSIGNMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES; AND (C) GRANTING RELATED RELIEF**

Upon consideration of the motion (the "Motion") dated April 24, 2024 of the above-captioned debtors and debtors-in-possession (the "Debtors")[2], for, *inter alia,* entry of an order (~~the~~this "Sale Approval Order") (A) approving the sale (the "Sale") of substantially all of the Debtors' assets free and clear of all interests, including "Liens" (as defined in 11 U.S.C. § 101(37), "Claims" (as defined in 11 U.S.C. § 101(5)), and encumbrances (collectively with all Liens and Claims, the "Interests"), pursuant to sections 105, 363 and 365 of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.* (as amended, the "Bankruptcy Code"), and Rules 2002, 6004 and 6006 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"); (B) authorizing the assumption and assignment of certain executory contracts and unexpired leases

---

[1] The Debtors in this case, and the last four digits of their respective federal employer identification numbers, are Oberweis Dairy, Inc. ('7516; The Oberweis Group, Inc. ('1378); North Aurora Ice Cream, LLC ('8506); TOGI RE I, LLC ('5952); TOGI Brands, LLC ('7072); and Third Millennium Real Estate L.L.C. ('1589).

[2] Capitalized terms not otherwise defined herein shall have the meanings ascribed to such terms in the Asset Purchase Agreement. All words or phrases used in this Sale Approval Order that are not capitalized herein but otherwise defined in the Bankruptcy Code shall have the meanings ascribed to them in the Bankruptcy Code.

(the "Assumed ~~Executory~~ Contracts/Leases") identified by the Purchaser (hereafter defined) and more fully described in that certain Amended Asset Purchase Agreement dated May 31, 2024 attached hereto as <u>Exhibit A</u> and expressly incorporated herein (the "<u>Asset Purchase Agreement</u>") by and between the Debtors as Seller and Hoffmann Dairy, LLC, a Missouri limited liability company, as buyer (the "<u>Purchaser</u>") for the purchase of the Sale ~~Property (hereafter~~ Assets (as defined in the Asset Purchase Agreement); and (C) granting related relief; and the Debtors, after consultation with CIBC Bank USA, an Illinois state chartered bank ("<u>CIBC</u>"), and the official committee of unsecured creditors appointed in the Chapter 11 Cases (hereafter defined) on April ~~12~~19, 2024 (the "<u>Committee</u>", and together with CIBC, the "<u>Constituent Parties</u>"), having determined that the Purchaser made the highest and best offer for the Sale ~~Property~~Assets; and the Bankruptcy Court (the "<u>Court</u>") having previously entered on May 3, 2024 that certain Corrected Order [Dkt. No. 99] (the "<u>Sale Procedures Order</u>") setting forth the underlying process (the "<u>Sale Process</u>") for the marketing of the Sale ~~Property~~Assets, the solicitation of bids and the approval and consummation of the ultimate Sale; and the Sale Procedures Order having incorporated the accompanying bidding procedures (the "<u>Approved Bidding Procedures</u>"), the "Summary Sale Notice,"  and the "Assumption Notice" attached as ~~Exhibit~~Exhibits A-C thereto; and the Court having conducted a hearing on June 5, 2024 (the "<u>Sale Hearing</u>"), to consider the approval of the Sale ~~Property~~Assets to the Purchaser under the Asset Purchase Agreement; and the Court having reviewed: (a) the Motion, (b) all objections to the relief sought in the Motion, including to the assumption of the Assumed ~~Executory~~ Contracts/~~Leases~~ (the "<u>Sale Objections</u>") (c) the manner of resolution of certain of the Sale Objections as announced on the record at the Sale Hearing, (d) the reservation of rights by and among the Constituent Parties and Labrynth Ventures, LLC, ~~a~~ an Illinois limited

liability company pursuant to that certain proposed Stipulated Order filed with the Court on June 3, 2024 [Dkt. No. 210] (the "Labrynth Reservation of Rights"), (e) the arguments of counsel made, and (f) the evidence proffered or adduced at the Sale Hearing; and it appearing that the relief requested in the Motion is in the best interests of the Debtors, their ~~estate~~estates and their creditors, and other parties in interest; and upon the record of the Sale Hearing and these Chapter 11 Cases; and after due deliberation thereon; and good cause appearing therefor.

**IT IS HEREBY FOUND AND DETERMINED THAT:**

A.    **Fed. R. Bankr. P. 7052**. The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014.   To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such. To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such. The Court's findings and conclusions shall also include any oral findings of fact and conclusions of law made by the Court on the record during or at the conclusion of the Sale Hearing, which findings and conclusions are expressly incorporated herein.

B.    **Jurisdiction and Venue**.  The Court has jurisdiction over the Motion pursuant to 28 U.S.C. § 157 and 1334, and this matter is a core proceeding pursuant to, *inter alia*, 28 U.S.C. § 157(b)(2)(A) and § 157(b)(2)(N).  Venue of this case and the Motion in this district is proper under  28 U.S.C. §§ 1408 and 1409.

C.    **Statutory Predicates**.  The statutory predicates for the relief sought in the Motion are sections 105(a), 363 and 365 of the Bankruptcy Code, and Rules 2002, 6004, 6006 and 9014 of the Bankruptcy Rules.

**D.**    **Final Sale Approval Order**.  This Sale Approval Order constitutes a final order within the meaning of 28 U.S.C. § 158(a).  Notwithstanding Bankruptcy Rules 6004(h) and 6006(d), and to any extent necessary under Bankruptcy Rule 9014 and Rule 54(b) of the Federal Rule of Civil Procedure, as made applicable by Bankruptcy Rule 7054, the Court finds that there is no just reason for delay in the implementation of this Sale Approval Order, and directs entry of judgment as set forth herein.  No appeal, motion to reconsider, or similar pleading has been filed with respect to the Sale Procedures Order, and the Sale Procedures Order is a final order of the Court, has not been vacated, withdrawn, rescinded, or amended, and remains in full force and effect.

**E.**    **Petition Date**.  On April 12, 2024 (the "Petition Date"), the Debtors commenced these proceedings by filing petitions for relief under chapter 11 of the Bankruptcy Code (the "Chapter 11 Cases").

**F.**    **Retention of Investment Banker**.  On May 24, 2024, the Court entered that certain *Order Authorizing the Debtor's Retention and Employment of Livingstone Partners, LLC as Investment Bankers* ("Livingstone") pursuant to that certain Engagement Agreement between the Debtors and Livingstone dated as of February 22, 2024 ("Livingstone Engagement Agreement"), to market and solicit offers to purchase the Sale ~~Property~~Assets [Dkt No. 174] (the "Livingstone Retention Order").

**G.**    **Sale ~~Property~~Assets**.  The Sale ~~Property consists~~Assets consist of the assets and property of the ~~estate~~estates of the Debtors as specifically described in the Asset Purchase Agreement, but not the Excluded Assets as defined therein.

**H.**    **Entry of Sale Procedures Order**.  The Sale Procedures Order: (i) authorized and approved the Approved Bidding Procedures; (ii) determined the stalking horse bid to constitute

the Stalking Horse Bid under the Approved Bidding Procedures; (iii) approved the form asset purchase agreement for bidders to submit in competition with the Stalking Horse Bid; (iv) scheduled an auction (the "Auction") and the Sale Hearing; (v) established procedures for the assumption and assignment of the Assumed ~~Executory~~ Contracts~~/Leases~~, and for noticing and determining the cure amount necessary to enable the Debtors to consummate the proposed assumption and assignment of the Assumed Executory Contract/Leases (the "Cure Costs"); (vi) approved the form and matter of notice of all procedures, protections, schedules, agreements and relating hearings (the "Notices"); (vii) established deadlines for submitting bids ("Bid Deadline"); (viii) stated the parameters of acceptable bids ("Qualified Bids"); (ix) delineated the requirements to participate as a bidder at the Auction ("Qualified Bidders"); (x) set forth the criteria for determining the successful bid ("Prevailing Bid") and the back-up bid ("Back-Up Bid"); (xi) and granted certain related relief.

    **I.**    **Compliance with Sale Procedures Order**.  The Approved Bidding Procedures were substantively and procedurally fair to all parties.  As demonstrated by (i) the testimony and other evidence proffered or adduced at the Sale Hearing, and (ii) the representations of counsel made on the record at the Sale Hearing, the Debtors have conducted the Sale Process in compliance with the Sale Procedures Order and the Approved Bidding Procedures, and the Auction was duly noticed and conducted in a non-collusive, fair and good faith manner.  The Debtors and their professionals have actively marketed the Sale ~~Property~~Assets, including the initiation of teaser letters to hundreds of prospective suitors; obtained non-disclosure agreements from approximately ~~_____~~eighty-one (81) prospective suitors; created and made available a virtual due diligence room containing comprehensive financial and other information regarding the Debtors; conducted management meetings with prospective suitors; and otherwise enabled

prospective suitors to conduct due diligence. Accordingly, the Sale Process was conducted in compliance with the Sale Procedures Order, and has afforded prospective suitors a full and fair opportunity to participate in the sale process and make higher and better offers.

J.    **Notice**. As evidenced by the certificates of service previously filed with the Court [Dkt. Nos. 93, 126, 127, 177, and 192]: (i) proper, timely, adequate and sufficient notice of the Motion, the Sale Hearing, the Sale, the assumption and assignment procedures for the Assumed ~~Executory~~ Contracts/~~Leases~~ (including the objection deadline and the outstanding amounts with respect to any Cure Costs), has been provided in accordance with sections 102(1), 363 and 365 of the Bankruptcy Code and Bankruptcy Rules 2002, 6004 and 6006 and in compliance with the Sale Procedures Order, (ii) such notice was good and sufficient, and appropriate under the particular circumstances, and (iii) no other or further notice of the Motion, the Sale Hearing, the Sale, or the assumption and assignment of the Assumed ~~Executory~~ Contracts/~~Leases~~ is or shall be required.

K.    **Auction**. At or prior to the Bid Deadline, the Debtors received one (1) Qualified Bid from ~~Hoffman Dairy, LLC~~the Purchaser, in addition to the Stalking Horse Bid, and conducted the Auction on May ~~28~~29, 2024, culminating in the Asset Purchase Agreement of the Purchaser being deemed the Prevailing Bid, and the asset purchase agreement submitted by BAB Project O, LLC, an Illinois limited liability company (the "Stalking Horse"), being designated as the Back-Up Bid.

L.    **Corporate Authority**. The Debtors: (i) have full corporate power and authority to execute the Asset Purchase Agreement and all other documents contemplated thereby, and the Sale of the Sale ~~Property~~Assets by the Debtors have been duly and validly authorized by all necessary corporate action of the Debtors, (ii) have all of the corporate power and authority

6

necessary to consummate the transactions contemplated by the Asset Purchase Agreement, and (iii) have taken all corporate action necessary to authorize and approve the Asset Purchase Agreement and the consummation by the Debtors of the transactions contemplated thereby. No consents or approvals, other than those expressly provided for in the Asset Purchase Agreement or this Sale Approval Order, are required for the Debtors to consummate such transactions.

**M.** **Opportunity to Object**. A fair and reasonable opportunity to object or be heard with respect to the Motion and the Sale has been afforded to all interested persons and entities, including: (i) the Office of the United States Trustee for Region 11; (ii) counsel for BMO Harris Bank N.A; (iii) counsel for CIBC; (iv) counsel for the Committee; (v) counsel for the Purchaser; (vi) counsel for the Stalking Horse; (vii) all entities reasonably known by the Debtors (or itstheir representatives and retained professionals) to have an Interest in the Sale PropertyAssets; (viiviii) all parties to the Debtors' contracts and leases; (viiiix) the District Director of the Internal Revenue Service for the Northern District of Illinois; (ixx) the Office of the Attorney General of Illinois; (xxi) all taxing authorities identified in the bankruptcy schedules filed in this proceeding; (xixii) all equity security holders of the Debtors; and (xii(xiii) all entities filing notices of appearance or requests for notice under Bankruptcy Rule 2002 in this Bankruptcy Case; and (xiv) all parties receiving the Summary Sale Notice and the Assumption Notice.

**N.** **Sale in Best Interest**. Consummation of the Sale of the Sale PropertyAssets to the Purchaser pursuant to the Asset Purchase Agreement is in the best interests of the Debtors, their creditors, their estates and other parties in interest.

**O.** **Sound Business Justification**. Sound business reasons exist for the Sale. Entry into the Asset Purchase Agreement constitutes the Debtors' exercise of sound business judgment and such act is in the best interests of the Debtors, their estateestates, and all parties in interest.

The Court finds that the Debtors have articulated good and sufficient business reasons justifying the Sale. Such business reasons include: (i) the Asset Purchase Agreement constitutes the highest and best offer for the Sale ~~Property~~Assets; (ii) the Asset Purchase Agreement and the closing thereon will present the best opportunity to realize the value of the Sale ~~Property~~Assets as a going concern, and avoid the decline and devaluation of the Sale ~~Property~~Assets; and (iii) under the circumstances of ~~this~~the Chapter 11 Cases, the Debtors are unable to propose a plan of reorganization that would be confirmable prior to the expiration of debtor-in-possession financing or that would meet the requirements of section 1129 of the Bankruptcy Code.

P. **Arm's-Length Sale**. The Asset Purchase Agreement was negotiated, proposed and entered into by the Debtors and the Purchaser without collusion, in good faith, and from arm's-length bargaining positions. Neither the Debtors nor the Purchaser have engaged in any conduct that would cause or permit the Asset Purchase Agreement to be avoided under section 363(m) or (n) of the Bankruptcy Code.

Q. **Successful Bidder; Highest and Best Value**. After conclusion of the Auction, the Debtors determined, in accordance with their business judgment, and in consultation with the Constituent Parties, that the Asset Purchase Agreement was (i) a Qualified Bid and (ii) the highest and best bid for the Sale ~~Property~~Assets made at the Auction. As a result, the Debtors declared the Purchaser the Prevailing Bidder for the Sale ~~Property~~Assets in accordance with the terms of the Sale Procedures Order. The Debtors conducted a fair and open Sale Process. The Sale Process, the Approved Bidding Procedures, and the Auction were non-collusive, duly noticed and provided a full, fair, and reasonable opportunity for any person to comply with the Approved Bidding Procedures and to make an offer to purchase the Sale ~~Property~~Assets. The process conducted by the Debtors pursuant to the Approved Bidding Procedures resulted in the

highest or best value for the Sale ~~Property~~Assets for the Debtors and their estates, and any other transaction would not have yielded as favorable an economic result.

    **R.**    **Good Faith Purchaser**.  The Purchaser is a good faith purchaser for value and, as such, is entitled to all of the protections afforded under section 363(m) of the Bankruptcy Code and any other applicable or similar bankruptcy and non-bankruptcy law.  The Purchaser has been and will be acting in good faith within the meaning of section 363(m) of the Bankruptcy Code in closing the transactions contemplated by the Asset Purchase Agreement.

    **S.**    **Fair Consideration**.  The consideration provided by the Purchaser for the Sale ~~Property~~Assets pursuant to the Asset Purchase Agreement: (i) is fair and reasonable, (ii) is the highest and best offer for the Sale ~~Property~~Assets, (iii) will provide a greater  recovery for the Debtors' creditors than would be provided by any other practical available alternative, and (iv) constitutes reasonably equivalent value and fair consideration under the Bankruptcy Code and under the laws of the United States, any state, territory, possession or the District of Columbia.

    **T.**    **Free and Clear Sale; Purchaser's Reliance**.  The Debtors may sell the Sale ~~Property~~Assets free and clear of all Interests (other than title exceptions and other Permitted Encumbrances as defined in the Asset Purchase Agreement) because, with respect to each creditor asserting a lien, claim, encumbrance, or interest, one or more of the standards set forth in Bankruptcy Code § 363(f)(1)-(5) has been satisfied.  Those holders of Interests who did not object or withdrew objections to the Sale are deemed to have consented to the Sale pursuant to section 363(f)(2) of the Bankruptcy Code.  Those holders of Interests who did object fall within one or more of the other subsections of section 363(f) of the Bankruptcy Code.  The Purchaser would not have entered into the Asset Purchase Agreement and would not consummate the transactions contemplated thereby if the Sale of the Sale ~~Property~~Assets were not free and clear

9

of all Interests (other than Permitted Encumbrances), or if the Purchaser would, or in the future

could, be liable for any such Interests (other than Permitted Encumbrances), including, as

applicable, certain liabilities related to the business of the Debtors ("Business") that will not be

assumed by the Purchaser, as described in the Asset Purchase Agreement.  A sale of the Sale

~~Property~~Assets other than one free and clear of all Interests (other than Permitted Encumbrances)

would adversely impact the Debtors, their estates, and their creditors, and would yield

substantially less value for the Debtors' ~~estate~~estates, with less certainty than provided under the

Sale. The Purchaser has relied upon this Sale Approval Order to provide the Purchaser, with

good and marketable title to and possession of the Sale ~~Property~~Assets free and clear of all

Interests (including, without limitation, any potential derivative, vicarious, transferee, or

successor liability Interests or Claims), except as set forth in the Asset Purchase Agreement.

      **U.**      **Transfer Free and Clear of Liabilities**.  Except as provided in the Asset

Purchase Agreement, the (i) transfer of the Sale ~~Property~~Assets to the Purchaser and (ii)

assignment to the Purchaser of the Assumed ~~Executory~~ Contracts/Leases, will not subject the

Purchaser to any liability whatsoever prior to the Closing Date or by reason of such transfer

under the   Bankruptcy Code, the laws of the United States including under applicable

environmental statutes, regulations or ordinances ("Federal Environmental Laws"), the laws of

any state, territory, or possession (including under applicable environmental statutes, regulations

or ordinances, the "State Environmental Laws" and together with the Federal Environmental

Laws, the "Environmental Laws"), or the District of Columbia, based, in whole or in part,

directly or indirectly, on any theory of law or equity, including, without limitation, any theory of

equitable law, including, without limitation, any theory of antitrust, successor or transferee

liability.

10

V. **Assumption of Executory Contracts and Unexpired Leases**. The Debtors have demonstrated that it is an exercise of their sound business judgment to assume and assign the Assumed ~~Executory~~ Contracts/~~Leases~~ to the Purchaser in connection with the consummation of the Sale, and the assumption and assignment of the Assumed ~~Executory~~ Contracts/~~Leases~~ is in the best interests of the Debtors, their ~~estate~~estates, and their creditors.  The Assumed ~~Executory~~ Contracts/~~Leases~~ being assigned to the Purchaser are an integral part of the Sale ~~Property~~Assets being purchased by the Purchaser and, accordingly, such assumption and assignment of Assumed ~~Executory~~ Contracts/~~Leases~~ is reasonable, enhances the value of the Debtors' estates, and does not constitute unfair discrimination. The assumption and assignment of the Assumed ~~Executory~~ Contracts/~~Leases~~ is to occur on, or substantially contemporaneously with, the closing of the transactions under the Asset Purchase Agreement (the "Closing" or the "Closing Date").

W. **Cure/Adequate Assurance**.  Except as provided below in this paragraph W, ~~Seller~~the Debtors, in accordance with the Asset Purchase Agreement, ~~has~~have or will, either by agreement or otherwise, (i) cured, or have provided adequate assurance of cure, of any default existing prior to the Closing under any of the Assumed ~~Executory~~ Contracts/~~Leases~~, within the meaning of section 365(b)(l)(A) of the Bankruptcy Code (including the Cure Costs), and (ii) provided compensation or adequate assurance of compensation to any party for any actual pecuniary loss to such party resulting from a default prior to the date hereof under any of the Assumed ~~Executory~~ Contracts/~~Leases~~ within the meaning of section 365(b)(l)(B) of the Bankruptcy Code.  The Purchaser has provided adequate assurance of future performance of and under the Assumed ~~Executory~~ Contracts/~~Leases~~ within the meaning of section 365(b)(l)(C) of the Bankruptcy Code.  With respect to Added Contracts and Additional Contracts (as each of these terms is defined in the Asset Purchase Agreement), the Purchaser shall be solely

11

responsible for all Cure Costs relating thereto without offset against the Cash Component (as defined under the Asset Purchase Agreement).

**X.**    **Prompt Consummation**.  The Sale of the Sale ~~Property~~Assets must be approved and consummated promptly in order to preserve the value of the Sale ~~Property~~Assets. Time is of the essence in consummating the Sale, and the Debtors and the Purchaser intend to close the sale as soon as possible in accordance with the Asset Purchase Agreement.

**Y.**    **No Intentional Fraudulent Transfer**.  The Asset Purchase Agreement was not entered into for the purpose of hindering, delaying or defrauding creditors under the Bankruptcy Code or under the laws of the United States, any state, territory, possession or the District of Columbia.

**Z.**    **Purchaser Not an Insider and No Successor Liability**.  The Purchaser was not and is not an "insider" or "affiliate" of the Debtors, as those terms are defined in the Bankruptcy Code, and no common identity of incorporators, directors or stockholders exists between Purchaser and the Debtors.  Pursuant to the Asset Purchase Agreement, the Purchaser is not purchasing all of the Debtors' assets because the Purchaser is not purchasing any of the Excluded Assets, and the Purchaser is not holding itself out to the public as a continuation of the Debtors. The Sale does not amount to a consolidation, merger or de facto merger of the Purchaser and the Debtors and/or the Debtors' estates, there is not substantial continuity between the Purchaser and the Debtors, there is no continuity of enterprise between the Debtors and the Purchaser, the Purchaser is not a mere continuation of the Debtors or the Debtors' estates, and the Purchaser does not constitute a successor to the Debtors or the Debtors' estates.

**AA.**    **Legal, Valid Transfer**.  Upon the payment of the ~~purchase price~~Purchase Price under the Asset Purchase Agreement at Closing, the transfer of the Sale ~~Property~~Assets to the

Purchaser will be a legal, valid, and effective transfer of the Sale ~~Property~~Assets, and will vest the Purchaser with all right, title, and interest of the Debtors to the Sale ~~Property~~Assets free and clear of all Interests, except as set forth in the Asset Purchase Agreement or this Sale Approval Order. The consummation of the Sale is legal, valid, and properly authorized under all applicable provisions of the Bankruptcy Code, including, sections 105(a), 363(b), 363(f), 363(m), 365(b) and 365(f) and all of the applicable requirements of such sections have been complied with in respect of the Sale.

**BB.** **Asset Purchase Agreement Not Modified**. The terms of the Asset Purchase Agreement, including any amendments, supplements, and modifications thereto, are fair and reasonable in all respects, and the terms of this Sale Approval Order shall not modify the terms of the Asset Purchase Agreement unless expressly provided herein.

**CC.** **No *Sub Rosa* Plan**. The Sale does not constitute a *sub rosa* chapter 11 plan for which approval has been sought without the protections that a disclosure statement would afford. The Sale neither impermissibly restructures the rights of the Debtors' creditors, nor impermissibly dictates a liquidating plan of reorganization for the Debtors.

**DD.** **No Liability for Excluded Assets or Excluded Liabilities**. By consummating the Sale and the transactions contemplated by the Asset Purchase Agreement, neither the Purchaser nor any of the Sale ~~Property~~Assets will be subject to any claim, liability or obligation arising out of, or relating to, any Excluded Asset or any ~~Excluded Liability~~excluded liability as set forth in paragraph 5 of the Asset Purchase Agreement, including, without limitation, under the Bankruptcy Code, any environmental law, or any other laws of the United States, any state, territory, possession or the District of Columbia (collectively, the "Excluded Liabilities").

EE.    **Personal Identification Information**.  Elise Frejka, Esq. has been appointed as consumer privacy ombudsman ("CPO") in the Chapter 11 Cases, evidenced by that certain: (ai) Order Directing the United States Trustee to Appoint a Consumer Privacy Ombudsman entered May 1, 2024 [Dkt. No. 90]; (bii) Amended Notice of Appointment of Consumer Privacy Ombudsman Pursuant to § 332 dated May 10, 2024 [Dkt. No. 120] and (ciii) Acceptance of Appointment and Verified Statement of Elise S. Frejka, CIPP/US dated May 10, 2024 [Dkt. No. 121].  On June 3, 2024, the CPO caused to be filed that certain Report of the Consumer Privacy Ombudsman (the "CPO Report") [Dkt. No. 209], which is incorporated into this Sale Approval Order [Dkt. No. _____]. The CPO Report contains various recommendations in connection with the sale of personally identifiable information ("PII"). In the CPO Report, the CPO makes recommendations for the transfer and use of the PII and concludes that if those recommendations are incorporated into this Sale Approval Order, they will strike an appropriate balance between the privacy rights of consumers and practical considerations associated with the Sale. Debtors and Purchaser have agreed to abide by the recommendations set forth by the CPO in the CPO Report with respect to the transfer and use of the PII.

FF.    **Objections**. The Sale Objections consist of the following filed objections: (i) Docket No. 180 filed by Americredit Financial Services, Inc. d/b/a GM Financial ("GM financial"); (ii) Docket No. 183 filed by Wheaton Retail Wheaton, Illinois; (iii) Docket No. 193 filed by Banc of America Leasing & Capital, LLC ("BOA"); (iv) Docket No. 197 filed by Schererville Main Street, LLC; (v) Docket No. 199 filed by Daimler Truck Financial Services USA LLA ("Daimler"); (vi) Docket No. 204 filed by the Committee; (vii) Docket No. 208 filed by AMS Mechanical Systems; (viii) Docket No. 211 filed by Ecolab, Inc. and (ix) Docket No. 212 filed by The Travelers Indemnity Company ("Travelers").

14

**[TO FOLLOW]**

      **GG.**   **Legal and Factual Bases**. The legal and factual bases set forth in the Motion and at the Sale Hearing establish just cause for the relief granted herein.

**NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED EFFECTIVE IMMEDIATELY THAT**:

**General Provisions**

      1.    The Motion is GRANTED and APPROVED to the extent provided herein.

      2.    All objections to the Motion or the relief requested therein, including but not limited to the Sale Objections, that have not been withdrawn, waived, or settled, and all reservations of rights included therein, are overruled on the merits and denied with prejudice.

**Approval of the Sale of the Sale ~~Property~~Assets**

      3.    The Asset Purchase Agreement including any amendments, supplements and modifications thereto, and all of the terms and conditions therein, is hereby approved in all respects.

      4.    Pursuant to 11 U.S.C. § 363(b), the transfer of the Sale ~~Property~~Assets to the Purchaser free and clear of all Interests (except those specifically permitted by the Asset Purchase Agreement), and the transactions contemplated thereby are approved in all respects. Notwithstanding anything contained in this Sale Approval Order or the Asset Purchase Agreement to the contrary, the Sale ~~Property~~Assets shall specifically exclude the following assets secured by liens in favor of the following parties:  BMO Bank N.A. ("BMO"), BOA, and Daimler ~~Truck Financial Services USA LLC ("Daimler")~~.

BMO:

| Unit # | VIN | Year | Mileage | Purchased date | Make |
|--------|-----|------|---------|----------------|------|
| 682 | 4UZAC2G76PCUE8852 | 2023 | 36792 | 1/18/2023 | FREIGHTLINER |
| 685 | 4UZAC2G71PCUE8855 | 2023 | 38819 | 1/20/2023 | FREIGHTLINER |
| 686 | 4UZAC2G73PCUE8856 | 2023 | 25415 | 1/20/2023 | FREIGHTLINER |
| 687 | 4UZAC2G75PCUE8857 | 2023 | 50757 | 2/15/2023 | FREIGHTLINER |
| 266 | 1FVACWFC9PHNZ7360 | 2023 | 17166 | 2/20/2023 | Freightliner |
| 267 | 1FVACWFC1PHUE8128 | 2023 | 17087 | 2/20/2023 | Freightliner |
| 268 | 1FVACWFC3PHUE8129 | 2023 | 9662 | 2/20/2023 | Freightliner |

BOA:

| Unit # | VIN | Year | Mileage | Purchased date | Make |
|--------|-----|------|---------|----------------|------|
| 667 | 4UZAC2GA8NCNR4490 | 2022 | 75,985 | 3/31/2022 | FREIGHTLINER |

Daimler:

| Unit # | VIN | Year | Mileage | Purchased date | Make |
|--------|-----|------|---------|----------------|------|
| 681 | 4UZAC2G74PCUE8851 | 2023 | 23653 | 4/21/2023 | FREIGHTLINER |
| 683 | 4UZAC2G78PCUE8853 | 2023 | 23753 | 4/21/2023 | FREIGHTLINER |
| 688 | 4UZAC2G77PCUE8858 | 2023 | 25657 | 4/25/2023 | FREIGHTLINER |
| 678 | 4UZAC2G74PCUE8848 | 2023 | 25232 | 6/8/2023 | FREIGHTLINER |
| 689 | 4UZAC2G79PCUE8859 | 2023 | 50091 | 3/15/2023 | FREIGHTLINER |

5.      Except as otherwise specifically provided in the Asset Purchase Agreement, the Purchaser shall not be liable for any claims against the Debtors or any of their predecessors or affiliates or any other third party whatsoever, and the Purchaser shall have no successor or vicarious liabilities of any kind or character (including, without limitation, any products liability claims with respect to any Sale ~~Property~~Assets, inventory, or other assets sold, shipped or delivered prior to the Closing), whether known or unknown as of the Closing, now existing or hereafter arising, whether fixed or contingent, with respect to the Debtors or the Business or any

16

obligations of, or claims against, the Debtors or any of their predecessors or affiliates or any other third party whatsoever arising at any time, including, but not limited to, liabilities on account of any taxes arising, accruing, or payable under, out of, in connection with, or in any way relating to the Sale ~~Property~~Assets prior to the Closing.

6.       The transactions contemplated by the Asset Purchase Agreement are undertaken by the Purchaser in good faith, as that term is used in section 363(m) of the Bankruptcy Code, and accordingly, the reversal or modification on appeal of the authorization provided herein by this Sale Approval Order to consummate the Sale shall not affect the validity of the Sale to the Purchaser. The Purchaser is a purchaser in good faith of the Sale ~~Property~~Assets, and is entitled to all of the protections afforded by section 363(m) of the Bankruptcy Code.

7.       As a good faith purchaser of the Sale ~~Property~~Assets, the Purchaser has not entered into an agreement with any other bidders at the Sale, and has not colluded with any of the other bidders, potential bidders or any other parties interested in the Sale ~~Property~~Assets, and therefore neither the Debtors nor any successor in interest to the Debtors' ~~estate~~estates shall be entitled to bring an action against the Purchaser, and the Sale may not be avoided pursuant to section 363(n) of the Bankruptcy Code.

**Sale and Transfer of Sale ~~Property~~Assets**

8.       Pursuant to section 363(b) of the Bankruptcy Code, the Debtors are hereby authorized to transfer the Sale ~~Property~~Assets to the Purchaser and consummate the Sale in accordance with, and subject to the terms and conditions of, the Asset Purchase Agreement and this Sale Approval Order, and to transfer and assign all right, title and interest (including common law rights) to all Sale ~~Property~~Assets, to be conveyed in accordance with, and subject to the terms and conditions of, the Asset Purchase Agreement, and are further authorized and

17

directed to execute and deliver, and are empowered to perform under, consummate and implement, the Asset Purchase Agreement, together with all additional instruments and documents that may be reasonably necessary or desirable to implement the Asset Purchase Agreement, including, without limitation, any related documents, exhibits and schedules, and to take all further actions as may be reasonably requested by the Purchaser for the purposes of assigning, transferring, granting, conveying and conferring to the Purchaser or reducing to possession, the Sale ~~Property~~Assets, or as may be necessary or appropriate to the performance of the Debtors' obligations as contemplated by the Asset Purchase Agreement. Adam Kraber, or any duly authorized representative of the Debtors, is hereby authorized to execute any and all documents reasonably necessary to consummate the Sale.

9. Pursuant to sections 363(b) and 363(f) of the Bankruptcy Code and upon payment of the amounts due at Closing by the Purchaser under the Asset Purchase Agreement in accordance with this Sale Approval Order, the Sale ~~Property~~Assets shall be transferred to the Purchaser upon the Closing Date free and clear of all Interests (except the Assumed Liabilities and Permitted Encumbrances) of any kind or nature whatsoever including, but not limited to, Interests in respect of the following: (a) any labor agreements; (b) all mortgages, deeds of trust, liens and security interests; (c) any pension, welfare, compensation or other employee benefit plans, agreements, practices and programs, including, without limitation, any pension plan of the Debtors; (d) any other employee, worker's compensation, occupational disease or unemployment or temporary disability related claim, including, without limitation, claims that might otherwise arise under or pursuant to (i) the Employee Retirement Income Security Act of 1974, as amended, (ii) the Fair Labor Standards Act, (iii) Title VII of the Civil Rights Act of 1964, (iv) the Federal Rehabilitation Act of 1973, (v) the National Labor Relations Act, (vi) the Worker

Adjustment and Retraining Act of 1988, (vii) the Age Discrimination and Employee Act of 1967 and Age Discrimination in Employment Act, as amended, (viii) the Americans with Disabilities Act of 1990, (ix) the Consolidated Omnibus Budget Reconciliation Act of 1985, (x) the Illinois Worker Adjustment and Retraining Notification Act, (xi) state discrimination laws, (xii) state unemployment compensation laws or any other similar state laws, or (xiii) any other state or federal benefits or claims relating to any employment with the Debtors or any of its affiliates or predecessors; (e) any bulk sales or similar law; (f) any tax statutes or ordinances, including, without limitation, the Internal Revenue Code of 1986, as amended; (g) any theories of successor or products liability; and (h) any Environmental Laws.  Nothing in this Sale Approval Order shall be construed to: (1) release, nullify, or enjoin a Governmental Authority from enforcing any Environmental Laws under which a purchaser of property would otherwise be liable as a current owner or operator after the date of purchase, or (2) permit, in any circumstances, a Governmental Authority to obtain from the Purchaser penalties arising under Environmental Laws prior to the Closing Date.  For purposes of clarification, any employee medical claims which are incurred prior to the Closing (regardless of when such claims are presented for payment) shall be claims against the bankruptcy ~~estate~~estates of the Debtors, and not the Purchaser, and the Purchaser shall be responsible only for such claims which are incurred after the Closing.  All such Interests of any kind or nature whatsoever including but not limited to the Interests of CIBC Bank USA, an Illinois state charted bank, shall attach (effective upon the transfer of the Sale ~~Property~~Assets to the Purchaser) to the proceeds of the Purchase Price without further act or deed or order of Court, with the same force, validity, priority and effect, if any, as the Interests formerly had against the Sale ~~Property~~Assets, subject to the Debtors' ability to challenge the extent, validity, priority and effect of the Interests unless subject to and as otherwise provided in any other order

19

of this Court in the Chapter 11 Cases.  Additionally, for the avoidance of doubt, Purchaser shall have no liability, obligation, or responsibility whatsoever to the Debtors, Governmental Authority or any other Person with respect to, or in connection with, any Excluded Asset or any Excluded Liability of any kind or character, whether known or unknown, as of the Closing Date, whether fixed or contingent, including, without limitation, any liability or other obligation arising under the Bankruptcy Code, any Environmental Laws, or any other laws of the United States, any state, territory, possession or the District of Columbia.

10.    The following ~~secured claims shall be paid in full at closing:  (a) Banc of America Leasing & Capital – claim nos. 3 and 4 - and listed in the bankruptcy schedules of the Debtors at Section 2.2 of Schedule D in the amount of $1,184,728.58; (b) GM Financial listed in the bankruptcy schedules of the Debtors at Section 2.7 of Schedule D in the amount of $44,854.92; and (c) TSC Equipment Finance LLC listed in the bankruptcy schedules of the Debtors at section 2.8 of Schedule D in the amount of $235,749.04 (collectively, the "Allowed Secured Claims").~~ claimants asserting secured claims shall be provisionally paid at Closing, without prejudice to the right of any entity to object to the parties in interest to assert objections to the validity, enforceability, priority, or extent of the liens, security interests or claims of such claimants, or the value of the collateral securing such claims on or before July 31, 2024:  (a) BOA in the agreed amount of $1,116,592.58 as payment in full for, and in satisfaction of any Interests on, all assets comprising the Sale Assets but not the vehicle identified as unit number 667 in paragraph 4 of this Sale Approval Order;[3] (b) Americredit Financial Services, Inc. d/b/a

---

[3] BOA retains its lien rights in unit 667 and shall have the right to amend its claim to reflect the remaining deficiency balance it is owed, plus retain its rights to a claim for the post-petition transfer paid to the Debtors for the payment reversal.

GM Financial in the amount of $45,196.55 as payment in full of its secured claim on a Chevy vehicle, VIN No. 1GB5YLE71NF2750275052; and (c) TSC Equipment Finance LLC in the amount of $235,749.04 as payment in full of its secured claim on vehicles with VIN Nos. 4UZAC2GA5NCNR4494, 4UZAC2GA7NCNR4495, and 4UZAC2GA7NCNR4498 (collectively, the "Provisionally Allowed Secured Claims"). On or before July 8, 2024, holders of Provisionally Allowed Secured Claim secured by a lien shall supplement their proofs of claim with evidence necessary to establish the value of their respective collateral. A status hearing on the Provisionally Allowed Secured Claims shall be set for August 7, 2024, at 11:00 a.m., without further notice. The Debtors shall cause the service of this Sale Approval Order on the holders of the Provisionally Allowed Secured Claims on the later of June 7, 2024, or two business days after entry of this Sale Approval Order, by overnight courier. Provisionally Allowed Secured Claims may be subject to rescission or allowed indefeasibly, in each instance in whole or in part, upon further of the Bankruptcy Court.

11.    At Closing, the Debtors shall pay Daimler in the agreed amount of $300,000.00, as payment in full for, and in satisfaction of all Interests on, all assets comprising the Sale Assets but not the vehicles identified as unit numbers 678, 681, 683, 688, and 689 in paragraph 4 of this Sale Approval Order.[4]

12.    11. With respect to the Interests of the following secured creditors pending the allowance of their respective claims and as adequate protection for such interests, the Debtors shall establish an earmarked reserve from the Sale proceeds (the "Secured Creditors Reserve") in the amounts set opposite each such creditor to which their Interests shall attach without further

---

[4] Daimler retains its lien rights in units 678, 681, 683, 688, and 689, provided however, upon sale or disposition of the foregoing vehicles, Daimler shall be deemed to have conclusively and irrevocably waived any claim of deficiency against the Debtors' estates and any other entity.

13220201326705v32

order of Court or act or deed:  (a) ~~Associated Material Handling Solutions - $366,000.00; (b)~~ ~~Daimler Truck Financial Services USA LLC - $335,000.00; (c~~) First Commonwealth Equipment Finance - $318,147.50; and (~~d~~b) Wells Fargo Equipment Finance, Inc. - $71,695.93 (collectively, the "Pending Secured Claims").  The holders of the Pending Secured Claims shall file proofs of claim, supporting documentation, and evidence necessary to establish the value of their respective collateral on or before ~~June~~ July 8, 2024.  All persons desiring to object to one or more of the Pending Secured Claims, the validity, priority or extent of liens, security interests, or claims related to the Pending Secured Claims, the value of the collateral for the Pending Secured Claims, ~~or the application of section 363(f) with respect to the Pending Secured Claims,~~ shall file such objections on or before ~~June 30~~July 31, 2024.  A status hearing on the Pending Secured Claims shall be set for ~~July 10~~August 7, 2024 at 11:00 a.m., without further notice.  The Debtors shall cause the service of this Sale Approval Order on the holders of the Pending Secured Claims on ~~or before~~the later of June 7, 2024, or two business days after entry of this Sale Approval Order, by overnight courier.

13.    ~~12.~~  On the Closing Date, this Sale Approval Order will be construed and constitute for any and all purposes a full and complete general assignment, conveyance and transfer of the Sale ~~Property~~Assets or a bill of sale transferring good and marketable title in such Sale ~~Property~~Assets to the Purchaser, free and clear of all Interests.  On the Closing Date, and subject to section 365 of the Bankruptcy Code, this Sale Approval Order also shall be construed and constitute for any and all purposes a complete and general assignment of all right, title and interest of the Debtors to the Purchaser in Assumed ~~Executory~~ Contracts/Leases, subject to the Asset Purchase Agreement, and shall be deemed to satisfy conclusively the Debtors' requirement

22

to obtain the entry of an executory contract approval order as required under the Asset Purchase Agreement.

14.    ~~13.~~ All entities who are presently, or on the Closing Date may be, in possession of some or all of the Sale ~~Property~~Assets are hereby directed to surrender possession of the Sale ~~Property~~Assets to the Purchaser on the Closing Date.

15.    ~~14.~~ Except as expressly permitted by the Asset Purchase Agreement or this Sale Approval Order, all Persons, including, but not limited to, all debt security holders, equity security holders, governmental, tax, and regulatory authorities, lenders, trade, products liability and other creditors, receiving notice of the Motion and holding Interests of any kind or nature whatsoever against or in the Debtors or the Sale ~~Property~~Assets (whether legal or equitable, secured or unsecured, matured or unmatured, contingent or non-contingent, senior or subordinated, now existing or hereinafter arising), arising under or out of, in connection with, or in any way relating to, the Debtors, the Sale ~~Property~~Assets, or the transfer of the Sale ~~Property~~Assets to the Purchaser, hereby are forever barred, estopped, and permanently enjoined from asserting against the Purchaser, its successors or assigns, its property, or the Sale ~~Property~~Assets, such persons' Interests, without further notice, act or deed.

16.    ~~15.~~ On the Closing Date of the Sale, each of the Debtors' creditors is authorized and directed to execute such documents and take all other actions as may be necessary to release its Interests in the Sale ~~Property~~Assets, if any, as such Interests may have been recorded or otherwise exist, except as to Sale ~~Property~~Assets being transferred subject to Permitted Encumbrances.

17.    ~~16.~~ Subject to the terms and conditions of this Sale Approval Order and the Asset Purchase Agreement, the transfer of the Sale ~~Property~~Assets to the Purchaser pursuant to the

23

Asset Purchase Agreement constitutes a legal, valid, and effective transfer of the Sale ~~Property~~Assets, and shall vest the Purchaser with all right, title, and interest of the Debtors in and to the Sale ~~Property~~Assets free and clear of all Interests of any kind or nature whatsoever.

**Assumption and Assignment of Assumed ~~Executory~~ Contracts~~/Leases~~**

18. ~~17.~~ Pursuant to sections 105(a) and 365 of the Bankruptcy Code, as set forth in the Sale Procedures Order and subject to and conditioned upon the terms of the Asset Purchase Agreement and the Closing of the Sale, the Debtors' assumption and assignment to the Purchaser, and the Purchaser's assumption on the terms set forth in the Asset Purchase Agreement, of the Assumed ~~Executory~~ Contracts~~/Leases~~ is hereby approved, and the requirements of section 365(b)(l) of the Bankruptcy Code with respect thereto are hereby deemed satisfied.

19. ~~18.~~ The Debtors are hereby authorized and directed in accordance with sections 105(a), 363 and 365 of the Bankruptcy Code to (a) assume and assign to the Purchaser, effective upon the Closing Date of the Sale, the Assumed ~~Executory~~ Contracts~~/Leases~~ free and clear of all Interests of any kind or nature whatsoever (other than Permitted Encumbrances) and (b) execute and deliver to the Purchaser such documents or other instruments as may be necessary to assign and transfer the Assumed ~~Executory~~ Contracts~~/Leases~~ to the Purchaser.

20. ~~19.~~ The Assumed ~~Executory~~ Contracts~~/Leases~~ shall be transferred to, and remain in full force and effect for the benefit of, the Purchaser in accordance with their respective terms, notwithstanding any provision in any such Assumed ~~Executory~~ Contracts~~/Leases~~ (including those of the type described in sections 365(b)(2) and (f) of the Bankruptcy Code) that prohibits, restricts, or conditions such assignment or transfer.  Pursuant to section 365(k) of the Bankruptcy

Code, the Debtors shall be relieved from any further liability with respect to the Assumed ~~Executory~~ Contracts/~~Leases~~ after such assignment to and assumption by the Purchaser.

21. ~~20.~~ All amounts that must be paid and obligations that must be otherwise satisfied, pursuant to sections 365(b)(1)(A) and (B) of the Bankruptcy Code, in connection with the assignment and assumption of the Assumed ~~Executory~~ Contracts/~~Leases~~, including Cure Costs and other cure obligations that are required to be cured pursuant to the Bankruptcy Code to effect the assignment and obtain this Sale Approval Order (without giving effect to any acceleration clauses or any default provisions of the kind specified in section 365(b)(2) of the Bankruptcy Code) shall be ~~cured~~paid and satisfied by the Debtors as provided in the Asset Purchase Agreement at the Closing, or as otherwise agreed by the Purchaser and counter-party to any such Assumed Executory Contracts/Lease. All defaults or other obligations of the Debtors under the Assumed ~~Executory~~ Contracts/~~Leases~~ arising or accruing on or after the Petition Date to the Closing Date (without giving effect to any acceleration clauses or any default provisions of the kind specified in section 365(b)(2) of the Bankruptcy Code) shall be cured by the Debtors at the Closing Date, or as otherwise agreed by the Debtors and counter-party to any such Assumed Executory Contracts/Lease, to the extent required by the Bankruptcy Code. Except as set forth in the Asset Purchase Agreement with respect to the assumed Cure Costs, Assumed Liabilities, and other cure obligations relating to Added Contracts and/or Additional Contracts for which the Purchaser shall be responsible, the Purchaser shall have no liability or obligation to cure executory contracts or unexpired leases defaults accruing prior to the Closing Date. The Debtors shall have no liability or obligation under the Assumed Contracts accruing on or after the Closing Date. Notwithstanding any language in this paragraph to the contrary, the Purchaser shall not be responsible for any taxes and tax payments related to the Sale ~~Property~~Assets.

25

22. 21. Each non-Debtor party or third-party beneficiary to any Assumed ~~Executory~~ Contracts~~/Leases~~ is hereby forever barred, estopped, and permanently enjoined from asserting against the Debtors or the Purchaser, or the property of either of them, any default existing as of the date of the Closing Date of the Sale.

23. 22. Within ten (10) business days following the Closing Date, the Debtors shall file with the Court a notice setting forth those Assumed ~~Executory~~ Contracts~~/Leases~~ actually assumed and assigned to Purchaser pursuant to the terms of the Asset Purchase Agreement and this Sale Approval Order.

24. 23. The Debtors are hereby authorized to transfer the PII to the Purchaser subject to the terms hereof.  Debtors and Purchaser shall comply with the recommendations set forth by the CPO in the CPO Report with respect to the transfer and use of the PII.

**Additional Provisions**

25. 24. The consideration provided by the Purchaser for the Sale ~~Property~~Assets under the Asset Purchase Agreement shall be deemed to constitute reasonably equivalent value and fair consideration under the Bankruptcy Code and under the laws of the United States, any state, territory, possession, or the District of Columbia, and the Sale and the transactions consummated in connection therewith are not, and shall not be, avoidable under the Bankruptcy Code or any such laws.

26. 25. Subject to the terms of this Sale Approval Order and the Asset Purchase Agreement, which is hereby approved in all respects by this Sale Approval Order, the Purchaser shall pay to the Debtors at Closing the Purchase Price.  Effective upon the transfer of the Sale ~~Property~~Assets to the Purchaser, all Interests of any kind or nature whatsoever (other than Permitted Encumbrances) shall attach to the proceeds of the Purchase Price with the same force,

26

validity, priority and effect, if any, as Interests formerly had against the Sale ~~Property~~Assets,
subject to the Debtors', the Committee's, or any other party's ability to challenge the extent,
validity, priority and effect of the Interests (including the value of any collateral with respect
thereto) unless subject to and as otherwise provided in any other order of this Court in this
Bankruptcy Case.

27. ~~26.~~ This Sale Approval Order: (a) shall be effective as a determination that, upon
payment by Purchaser of the Purchase Price under the Asset Purchase Agreement in accordance
herewith, all Interests of any kind or nature whatsoever existing as to the Debtors or the Sale
~~Property~~Assets prior to the Closing Date have been unconditionally released, discharged and
terminated, and that the conveyances described herein have been effected, and (b) shall be
binding upon and shall govern the acts of all entities, including without limitation, all filing
agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds,
registrars of deeds, administrative agencies, governmental departments, secretaries of state,
federal, state, and local officials, and all other persons and entities who may be required by
operation of law, the duties of their office, or contract, to accept, file, register or otherwise record
or release any documents or instruments, or who may be required to report or insure any title or
state of title in or to any of the Sale ~~Property~~Assets.  Each and every federal, state and local
governmental agency or department is hereby directed to accept any and all documents and
instruments necessary and appropriate to consummate the transactions contemplated by the Asset
Purchase Agreement.  The Purchaser and the Debtors shall take such further steps and execute
such further documents, assignments, instruments and papers as shall be reasonably requested by
the other to implement and effectuate the transactions contemplated in this paragraph.  All
Interests of record as of the date of this Sale Approval Order shall be forthwith removed and

stricken as against the Sale ~~Property~~Assets (other than Permitted Encumbrances). All entities described in this paragraph are authorized and specifically directed to strike all such recorded Interests against the Sale ~~Property~~Assets from their records, official and otherwise.

28. ~~27.~~ If any entity that has filed statements or other documents or agreements evidencing Interests in any of the Sale ~~Property~~Assets does not deliver to the Debtors or the Purchaser prior to the Closing Date, in proper form for filing and executed by the appropriate parties, termination statements, instruments of satisfaction, releases of liens and easements, and any other documents necessary for the purpose of documenting the release of all interests and other interests that the entity has or may assert with respect to any of the Sale ~~Property~~Assets, the Debtors and/or the Purchaser and their respective agents are hereby authorized to execute and file, register, or record such statements, instruments, releases and other documents on behalf of such person or entity with respect to any of the Sale ~~Property~~Assets.

29. ~~28.~~ To the extent provided by section 525 of the Bankruptcy Code, no Governmental Authority may deny, revoke, suspend or refuse to renew any permit, license, or similar grant relating to the operation of the Sale ~~Property~~Assets sold, transferred, or conveyed to the Purchaser on account of the filing or pendency of this Bankruptcy Case or the consummation of the Sale contemplated by the Asset Purchase Agreement.

30. ~~29.~~ As specifically provided in the Asset Purchase Agreement, the Debtors will cooperate with the Purchaser and the Purchaser will cooperate with the Debtors to ensure that the transaction contemplated in the Asset Purchase Agreement is consummated, and the Debtors will make such modifications or supplements to any bill of sale or other document executed in connection with the Closing to facilitate such consummation as contemplated by the Asset

Purchase Agreement, as may be reasonably requested by the Purchaser pursuant to the terms of the Asset Purchase Agreement.

31.   ~~30.~~ The Purchaser shall have no liability or responsibility for any liability or other obligation of the Debtors, or any third party whatsoever arising under or related to Excluded Assets, Excluded Liabilities or the Sale ~~Property~~Assets other than for the Assumed Liabilities and the Assumed ~~Executory~~ Contracts~~/Leases~~ to the extent provided under the Asset Purchase Agreement.   Without limiting the generality of the foregoing, and except as otherwise specifically provided in the Asset Purchase Agreement, the Purchaser shall not be liable for any claims against the Debtors or any of their predecessors or affiliates or any third party whatsoever, and the Purchaser shall have no successor liabilities (including, without limitation, product liability with respect to any assets sold, shipped or delivered prior to the Closing Date) of any kind or character whether known or unknown as of the Closing Date, now existing or hereafter arising, whether fixed or contingent, with respect to the Debtors or any obligations of the Debtors arising prior to the Closing Date, including, but not limited to, liabilities on account of any taxes arising, accruing, or payable under, out of, or in connection with, or in any way relating to the operation of the Business prior to the Closing Date, and all parties are hereby forever barred, estopped and permanently enjoined from asserting any such claims against the Purchaser, its successors and assigns or against the Sale ~~Property~~Assets.

32.   ~~31.~~ Except for the Assumed Liabilities and the Assumed ~~Executory~~ Contracts~~/Leases~~ as set forth in the Asset Purchase Agreement, under no circumstances whatsoever shall the Purchaser be deemed a successor of or to the Debtors for any Interests against or in the Debtors or the Sale ~~Property~~Assets or the Excluded Assets of any kind or nature whatsoever.  Except for the Assumed Liabilities and the Assumed ~~Executory~~ Contracts~~/Leases~~ as

29

set forth in the Asset Purchase Agreement, the sale, transfer, assignment and delivery of the Sale PropertyAssets and the Assumed Executory Contracts/Leases shall not be subject to any Interests, and Interests of any kind or nature whatsoever shall remain with, and continue to be obligations of, the Debtors or such other applicable Person.  All persons holding Interests against or in the Debtors or the Sale PropertyAssets of any kind or nature whatsoever shall be, and hereby are, forever barred, estopped, and permanently enjoined from asserting, prosecuting, or otherwise pursuing such Interests of any kind or nature whatsoever against the Purchaser, its officers, directors, shareholders and professionals, its property, its successors and assigns, or the Sale PropertyAssets with respect to any Interests of any kind or nature whatsoever (other than Permitted Encumbrances) such person or entity had, has, or may have against or in the Debtors, its estatetheir estates, officers, directors, shareholders, or the Sale PropertyAssets.  Following the Closing Date, no holder of an Interest in the Debtors shall interfere with the Purchaser's title to, or use and enjoyment of, the Sale PropertyAssets and the Assumed Executory Contracts/Leases based on or related to such Interest, or any actions that the Debtors or any third party may take in the Chapter 11 Cases.

33.   32. This Court shall retain jurisdiction to enforce and implement the terms and provisions of the Asset Purchase Agreement, all amendments thereto, any waivers and consents thereunder, and of each of the agreements executed in connections therewith in all respects, including to: (a) compel delivery of the Sale PropertyAssets to the Purchaser free and clear of Interests (other than Permitted Encumbrances), or compel the performance of other obligations owed by the Debtors; (b) compel delivery of the Purchase Price or performance of other obligations owed to the Debtors; (c) resolve any disputes arising under or related to the Asset Purchase Agreement, the Cure Costs, and adequate assurance of future performance of the

30

Assumed ~~Executory~~ Contracts/~~Leases~~; (d) interpret, implement, and enforce the provisions of this Sale Approval Order; (e) protect the Purchaser against (i) claims made related to any of the Excluded Liabilities, (ii) any claims of successor or products liability related to the Sale ~~Property~~Assets or Assumed ~~Executory~~ Contracts/~~Leases~~ or any of the Excluded Assets, or (iii) any claims of Interests (other than Permitted Encumbrances) asserted in the Debtors or the Sale ~~Property~~Assets, of any kind or nature whatsoever; and (f) to require delivery of any Sale ~~Property~~Assets or proceeds thereof by the Debtors to Purchaser, or of any Excluded Assets or proceeds thereof by Purchaser to the Debtors or their designee or successor.

34.    ~~33.~~ The terms and provisions of the Asset Purchase Agreement and this Sale Approval Order shall be binding in all respects upon, and shall inure to the benefit of, the Debtors and ~~its~~their respective affiliates, successors and assigns, ~~its estate~~their estates, and ~~its~~their creditors, the Purchaser, and its respective affiliates, successors and assigns, and any affected third parties, including, but not limited to, all Persons asserting Interests in the Sale ~~Property~~Assets to be sold to the Purchaser pursuant to the Asset Purchase Agreement, notwithstanding any subsequent appointment of any trustee(s) under any chapter of the Bankruptcy Code, as to which trustee(s) such terms and provisions likewise shall be binding.

35.    ~~34.~~ The failure to specifically identify any particular provisions of the Asset Purchase Agreement in this Sale Approval Order shall not diminish or impair the effectiveness of such provision, it being the intent of the Court that the Asset Purchase Agreement be authorized and approved in its entirety.

36.    ~~35.~~ The Asset Purchase Agreement and any related agreements, documents or other instruments may be modified, amended or supplemented by the parties thereto, in a writing signed by both parties, and in accordance with the terms thereof, without further order of the

~~13220201~~326705v~~3~~2

Court, provided that any such modification, amendment or supplement does not have a material adverse effect on the Debtors' estates.

37. ~~36.~~ Nothing contained in any order entered in the Chapter 11 Cases subsequent to entry of this Sale Approval Order, nor in any chapter 11 plan confirmed in the Chapter 11 Cases, shall conflict with or derogate from the provisions of the Asset Purchase Agreement or the terms of this Sale Approval Order.

38. ~~37.~~ Notwithstanding the provisions of Bankruptcy Rules 6004(h), 6006(d) and 7062, or any provisions of the Local Rules, this Sale Approval Order shall not be stayed after the entry hereof, but shall be effective and enforceable immediately upon entry, and the fourteen (14) day stay provided in the Bankruptcy Rules 6004(h) and 6006(d) is hereby expressly waived and shall not apply. Time is of the essence and the Debtors, and the Purchaser may close the Sale as soon as practicable. Any party objecting to this Sale Approval Order must exercise due diligence in filing an appeal and pursuing a stay within the time prescribed by law and prior to the Closing, or risk its appeal being foreclosed as moot.

39. ~~38.~~ The provisions of this Sale Approval Order are nonseverable and mutually dependent.

40. ~~39.~~ To the extent applicable, the automatic stay pursuant to section 362 of the Bankruptcy Code is hereby lifted or otherwise modified with respect to the Debtors to the extent necessary, without further order of the Court (a) to allow Purchaser to give the Debtors any notice provided for in the Asset Purchase Agreement, and (b) to allow Purchaser to take any and all actions permitted by the Asset Purchase Agreement.  ·

41. ~~40.~~ The Sale shall not be subject to any bulk sales laws.

42.    ~~41.~~ The Debtors and each other Person having duties or responsibilities under the Asset Purchase Agreement or this Sale Approval Order, and their respective agents, representatives, and attorneys, are authorized and empowered to carry out all of the provisions of the Asset Purchase Agreement, to issue, execute, deliver, file and record, as appropriate, the Asset Purchase Agreement, and any related agreements, and to take any action contemplated by the Asset Purchase Agreement or this Sale Approval Order, and to issue, execute, deliver, file and record, as appropriate, such other contracts, instruments, releases, deeds, bills of sale, assignments, or other agreements, and to perform such other acts as are consistent with, and necessary or appropriate to, implement, effectuate and consummate the Asset Purchase Agreement and this Sale Approval Order and the transactions contemplated thereby and hereby, all without further application to, or order of, the Court.  Without limiting the generality of the foregoing, this Sale Approval Order shall constitute all approvals and consents, if any, required by applicable business corporation, trust and other laws of applicable governmental units with respect to the implementation and consummation of the Asset Purchase Agreement and this Sale Approval Order and the transactions contemplated thereby and hereby.

43.    ~~42.~~ Upon Closing, the Debtors are authorized and directed to pay Livingstone, and Livingstone is entitled to receive, on a final allowed basis, a broker commission pursuant to the Livingstone Engagement Agreement and the Livingstone Retention Order in an amount to be calculated by the Debtors at Closing after consultation with the Constituent Parties.  Other than the payments to Livingstone, the Provisionally Allowed Secured Claims, ~~and amounts~~payments arising in the ~~Approved Budget~~ordinary course as administrative claims prior to Closing, and payments pursuant to the Court's monthly interim compensation order, the balance of the Sale

33

proceeds shall be held in the bank accounts of the Debtors at CIBC, and be expended only after further Order of Court.

44.    43. The Debtors are authorized to return all security deposits received from bidders other than the Prevailing Bidder and the Back-Up Bidder.

45.    44. This Sale Approval Order shall have no effect on, and shall not be deemed a termination of, any rights of the Official Committee of Unsecured Creditors or any other party in interest pursuant to paragraph 25 of the Final Order Authorizing (A) Secured Post-Petition Financing on a Super Priority Basis Pursuant to 11 U.S.C. § 364, (B) Use of Cash Collateral Pursuant to 11 U.S.C. § 363 and (C) Grant of Adequate Protection Pursuant to 11 U.S.C. §§ 363 and 364 (Docket No. 109, the "Final DIP Order"), and the Challenge Period Termination Date currently in place, subject to further extension in accordance with the Final DIP Order, shall be unaffected by this Sale Approval Order.

46.    45. To the extent that any provision of this Sale Approval Order conflicts with the Asset Purchase Agreement, this Sale Approval Order shall control.

47.    46. The Asset Purchase Agreement of the Back-Up Bid, as modified at the Auction to add an allocation paragraph and reserve certain rights with respect to executory contracts and unexpired leases, shall remain binding and in full force and effect in accordance with the Sale Procedures Order. In the event the Purchaser defaults in the performance of its obligations under the Asset Purchase Agreement then, in such event, in accordance with the Approved Bidding Procedures, the Seller is authorized to close on the Back-Up Bid without further order of Court. In such event, the terms and conditions of this Sale Approval Order shall apply to such Back-Up Bid and a closing therein shall take place in accordance with the Sale Procedures Order.

47.   Debtors and Purchaser shall comply with the recommendations set forth by the CPO in the CPO Report with respect to the transfer and use of the PII.

48.   The Labrynth Reservation of Rights be and is hereby approved, subject to entry by separate order.

49.   Notwithstanding anything to the contrary contained in this Sale Approval Order, the Asset Purchase Agreement, or asset purchase agreement submitted by the Stalking Horse, any and all insurance policies issued by Travelers or its affiliates shall not constitute executory contracts and shall neither be assumed nor assigned by the Debtors. Exhibit H to the Asset Purchase Agreement and the asset purchase agreement submitted by the Stalking Horse is hereby conclusively deemed amended to reflect this paragraph 49 without further act, deed, or order.

50.   Notwithstanding anything to the contrary contained in this Sale Approval Order, the Asset Purchase Agreement, or asset purchase agreement submitted by the Stalking Horse, the Purchaser or Stalking Horse, as the case may be, shall provide the Debtors, the Committee, CIBC, and their respective counsel, access to the Sale Assets for the purposes of valuation, appraisals, allocation of the purchase price, and related matters upon reasonable notice and during normal business hours. The provisions of this paragraph are in addition to any access rights granted in the Purchase Agreement and the asset purchase agreement submitted by the Stalking Horse.

*The Remainder of this Page Intentionally Left Blank*
*Paragraph 51 to follow*

51.     The Purchaser shall be entitled to take title to the Sale Assets through one or more affiliated entities with the full benefits and protections of this Sale Approval Order being afforded to such affiliated entities.


Dated:  Chicago, Illinois
      June ___, 2024                _____

                                      HONORABLE DAVID D. CLEARY
                                      UNITED STATES BANKRUPTCY JUDGE


This Order Prepared by:


HOWARD L. ADELMAN, ESQ. (ARDC# 0015458)
HENRY B. MERENS, ESQ. (ARDC #6181695)
ADAM P. SILVERMAN, ESQ. (ARDC #6256676)
ALEXANDER F. BROUGHAM, ESQ. (ARDC #6301515)
ADELMAN & GETTLEMAN, LTD.
53 West Jackson Blvd., Suite 1050
Chicago, Illinois 60604
Tel (312) 435-1050
Fax (312) 435-1059
**Counsel for the Debtors and Debtors in Possession**

1322020 1326705v3 2

Document comparison by Workshare 10.0 on Tuesday, June 4, 2024 8:09:50 PM

| Input: | |
|---|---|
| Document 1 ID | iManage://INTERWOVEN/worksite/1322020/3 |
| Description | #1322020v3<worksite> - ODI - 363 Sale Order - Filed 5.31.2024 |
| Document 2 ID | iManage://INTERWOVEN/worksite/1326705/2 |
| Description | #1326705v2<worksite> - ODI - 363 Sale Order - Revsied 6.4.2024 |
| Rendering set | Standard |

| Legend: | |
|---|---|
| Insertion | |
| Deletion | |
| Moved from | |
| Moved to | |
| Style change | |
| Format change | |
| Moved deletion | |
| Inserted cell | |
| Deleted cell | |
| Moved cell | |
| Split/Merged cell | |
| Padding cell | |

| Statistics: | |
|---|---|
| | Count |
| Insertions | 250 |
| Deletions | 244 |
| Moved from | 2 |
| Moved to | 2 |
| Style changes | 0 |
| Format changes | 0 |
| Total changes | 498 |